# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

AMERICAN BAR ASSOCIATION, *et al.*,

Plaintiffs,

v.

UNITED STATES DEPARTMENT OF
EDUCATION, *et al.*,

Defendants.

Civil Action No. 16-2476-RDM

## DEFENDANTS' COMBINED MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56 and Local Rule 7(h), defendants the United States Department of Education, and Betsy DeVos, in her official capacity as Secretary of Education ("defendants") move for summary judgment on all claims in the plaintiffs' Complaint, ECF No. 1. The grounds for this motion are set forth in the accompanying memorandum of supporting points and authorities, which also serves as an opposition to plaintiffs' Motion for Summary Judgment, ECF No. 17. A proposed order is attached.

Dated: July 31, 2017

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director

*/s/ Julie S. Saltman*
JULIE S. SALTMAN (DC 4975015)
Trial Attorney

United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, D.C. 20530
Tel.: (202) 532-4252
Fax: (202) 616-8470
Email: julie.saltman@usdoj.gov

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICAN BAR ASSOCIATION, *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 16-2476-RDM |
| UNITED STATES DEPARTMENT OF EDUCATION, *et al.*, | |
| Defendants. | |

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTORITIES IN
SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT AND IN
OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

INTRODUCTION................................................................................................................1

BACKGROUND................................................................................................................2

    I.    Statutory and Regulatory Background...........................................................2

        A.    The Statute ..............................................................................................2

        B.    Notice of Proposed Rulemaking..............................................................3

        C.    The Final PSLF Rule ...............................................................................5

        D.    Operation of the PSLF Program ..............................................................7

    II.    Plaintiffs' Claims ............................................................................................9

    III.    Statement of Proceedings ...............................................................................12

STANDARD OF REVIEW ...............................................................................................13

ARGUMENT ....................................................................................................................13

    I.    Plaintiffs' APA Claims Fail Because They Do
Not Challenge Final Agency Action...............................................................13

    II.    The ABA's Claims Must Be Dismissed Because Its Injuries Fall Outside the
Zone of Interests .............................................................................................20

    III.    Record Evidence Demonstrates that the Department's Interpretation is
Reasonable Under the APA..............................................................................22

    IV.    Plaintiffs Fail to Demonstrate a Denial of Due Process...................................31

CONCLUSION .................................................................................................................33

# TABLE OF AUTHORITIES

## Cases

*Air Courier Conference of Am. v. Postal Workers*,
  498 U.S. 517 (1991) ............................................................................25

*American Farm Bureau v. U.S. E.P.A.*,
  121 F. Supp. 2d 84 (D.D.C. 2000) .....................................................26

*Bark v. U.S. Forest Serv.*,
  37 F. Supp. 3d 41 (D.D.C. 2014) ........................................................18

*Bd. of Regents of State Colls. v. Roth*,
  408 U.S. 564 (1972) ............................................................................36

*Bennett v. Spear*,
  520 U.S. 154 (1997) .....................................................................18, 20

*Buckingham v. Sec'y of U.S. Dep't of Agric.*,
  603 F.3d 1073 (9th Cir. 2010)............................................................36

*Camp v. Pitts*,
  411 U.S. 138 (1973) ............................................................................17

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ............................................................................17

*Chabad Lubavitch of Litchfield Cty., Inc. v. Litchfield Historic Dist. Comm'n*,
  768 F.3d 183 (2d Cir. 2014)................................................................25

*Chao (Holdings) Inc. v. DHS.*,
  769 F.3d 1127 (D.C. Cir. 2014) ..........................................................29

*Crowley Caribbean Transprt, Inc. v. Pena*,
  37 F.3d 671 (D.C. Cir. 1994) ..............................................................33

*Ctr for Reprod. Law & Policy v. Bush*,
  304 F.3d 183 (2d Cir. 2002)................................................................26

*Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*,
  452 F.3d 798 (D.C. Cir. 2006) ...........................................18, 20, 21, 23

*Cty. of Los Angeles v. Shalala*,
  192 F.3d 1005 (D.C. Cir. 1999) ..........................................................35

*FCC v. Fox TV Stations, Inc.*,
   556 U.S. 502 (2009) .................................................................................. 34

*Food & Water Watch v. EPA*,
   5 F. Supp. 3d 62 (D.D.C. 2013) ............................................................... 20

*Fox v. Clinton*,
   684 F.3d 67 (D.C. Cir. 2012) .................................................................... 34

*Friedman v. FAA.*,
   841 F.3d 537 (D.C. Cir. 2016) .................................................................. 23

*Fund for Animals v. Babbitt*,
   903 F.Supp. 96 (D.D.C.1995) ................................................................... 17

*Gilbert v. Homar*,
   520 U.S. 924 (1997) .................................................................................. 36

*Historic Eastern Pequots v. Salazar*,
   934 F. Supp. 2d 272 (D.D.C. 2013) .......................................................... 27

*Lexmark Int'l v. Static Control Components, Inc.*,
   134 S. Ct. 1377 (2014)............................................................................... 25

*Mathews v. Eldridge*,
   424 U.S. 319 (1976) .................................................................................. 36

*Metro. Stevedore Co. v. Rambo*,
   521 U.S. 121 (1997) .................................................................................. 29

*Nat'l Ass'n of Home Builders v. Norton*,
   415 F.3d 8 (D.C. Cir. 2005)....................................................................... 22

*NB ex rel. Peacock v. District of Columbia*,
   794 F.3d 31 (2015) .................................................................................... 36

*Pac. Gas & Elec. Co. v. Fed. Power Comm'n*,
   506 F.2d 33 (D.C. Cir. 1974) .................................................................... 23

*Philip Morris USA Inc. v. FDA*,
   202 F. Supp. 3d 31 (D.D.C. 2016) ............................................................ 21

*PPG Indus., Inc. v. United States*,
   52 F.3d 363 (D.C. Cir. 1995) .................................................................... 35

*Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n,*
    324 F.3d 726 (D.C. Cir. 2003) ..................................................................18

*Sierra Club v. Mainella,*
    459 F.Supp.2d 76 (D.D.C.2006) ..............................................................17

*Skidmore v. Swift & Co.,*
    323 U.S. 134 (1944) .................................................................................29

*United States v. Mead Corp.,*
    533 U.S. 218 (2001) .................................................................................29

*Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.,*
    454 U.S. 464 (1982) .................................................................................25

*Warth v. Seldin,*
    422 U.S. 490 (1975) .................................................................................25

## **Statutes**

20 U.S.C. § 1087e(m)..........................................................................6, 25

20 U.S.C. § 1087e(m)(1)(A) ....................................................................7

20 U.S.C. § 1087e(m)(3)(B) ...............................................................7, 10

20 U.S.C. § 1087e(m)(B)(i) ...................................................................27

20 U.S.C. § 1098a ....................................................................................8

20 U.S.C. § 1098a(b)................................................................................8

20 U.S.C. §1087c(a) .................................................................................6

28 U.S.C. § 2401(a)................................................................................27

5 U.S.C. § 704........................................................................................18

5 U.S.C. § 706(2) ...................................................................................16

## **Rules**

Fed. R. Civ. P. 56 ...................................................................................17

Fed.R.Civ.P. 56(a)..................................................................................17

**Regulations**

34 C.F.R. § 685.219 ............................................................................................*passim*

34 C.F.R. § 685.219(b)(5) ........................................................................................ 10

34 C.F.R. § 685.219(c) ............................................................................................. 19

34 C.F.R. § 685.219(c)(1) ......................................................................................... 13

34 C.F.R. § 685.219(e)(3) ......................................................................................... 24

34 C.F.R. §685.219(b) .............................................................................................. 28

34 CFR § 685.219(a) ................................................................................................ 25

Federal Perkins Loan Program, Federal Family Education Loan Program, and William D.
    Ford Federal Direct Loan Program,
    73 Fed. Reg. 37,694 (July 1, 2008) ....................................................*passim*

Federal Perkins Loan Program, Federal Family Education Loan Program, and William D.
    Ford Federal Direct Loan Program,
    73 Fed. Reg. 63,232 (Oct. 23, 2008) ...................................................*passim*

Federal Perkins Loan Program, Federal Family Education Loan Program, and William D.
    Ford Federal Direct Loan Program,
    74 Fed. Reg. 55,972 (Oct. 29, 2009) .......................................................... 11

Student Assistance General Provisions, Federal Family Education Loan Program, and
    William D. Ford Federal Direct Loan Program,
    80 Fed. Reg. 67,204 (Oct. 30, 2015) .......................................................... 11

William D. Ford Federal Direct Loan Program,
    77 Fed. Reg. 76,414 (Dec. 28, 2012) .......................................................... 11

## INTRODUCTION

Plaintiffs are the American Bar Association ("ABA") and four individual lawyers who work in organizations that they think should qualify them for participation in the Public Service Loan Forgiveness Program ("PSLF" or "PSLF Program").  The PSLF Program was enacted in 2007, and provides forgiveness of the remaining balance of a borrower's student loans if the borrower has made 120 qualifying payments after October 1, 2007 towards their student debt while employed at a qualifying public service organization.  Because less than ten years have passed since the program's creation and no borrowers have yet made the required 120 payments, no one is yet eligible to apply for forgiveness under the PSLF, including the individual plaintiffs.

The Department of Education (Department) has created a system by which individuals can obtain provisional guidance on whether their employers are qualifying employers for PSLF as they work towards making the 120 qualifying payments.  Under this system, individuals file an Employment Certification Form ("ECF"), and FedLoan Servicing—which provides services for this program under a contract with the Department—responds with a notification regarding the employer's status.  The notification contains language explaining that it does not represent a final decision, and in the event the employer is found not to qualify, the notice explains that the borrower may reapply and submit additional supporting evidence.

Plaintiffs mischaracterize these notices as final agency action which reflect a change in the Department's policy in an attempt to challenge the Department's discretionary decisions under its regulations.  However, plaintiffs' case is largely based on misdirection.  They attempt to create final agency action and changes in agency policy

where there are none.  The record demonstrates that the Department has consistently

applied its policies regarding the PSLF under its regulations since 2008.  Though the

Department's contractor has made occasional errors in individual notifications to

borrowers, it has corrected those errors.  Moreover, it has provided borrowers, and

organizations like the ABA, ample opportunities to seek reconsideration of its decisions.

Accordingly, plaintiffs' claims lack merit, and the Court should grant summary judgment

in defendants' favor.

## BACKGROUND

I.      **Statutory and Regulatory Background**

       **A.  The Statute**

       The College Cost Reduction and Access Act of 2007 ("CCRAA") amended the

Higher Education Act of 1965 to add a new Public Service Loan Forgiveness Program

("PSLF") to the William D. Ford Direct Loan ("Direct Loan") Program. [1]  Federal

Perkins Loan Program, Federal Family Education Loan Program, and William D. Ford

Federal Direct Loan Program, 73 Fed. Reg. 37,694, 37,695 (July 1, 2008), AR 4.

Specifically, the CCRAA amended 20 U.S.C. § 1087e(m) to include language directing

the Secretary of Education to "cancel the balance of interest and principal due . . . on any

eligible Federal Direct Loan not in default" for borrowers who meet certain eligibility

requirements.  To qualify for loan forgiveness under the PSLF Program, a borrower must

(1) have made 120 monthly payments on an eligible loan after October 1, 2007 under

designated repayment plans; (2) be employed in a public service job at the time of

---

[1] The Direct Loan Program provides subsidized and unsubsidized loans to students and
their parents to pay for the costs of attendance at qualifying institutions of higher
education.  20 U.S.C. §1087c(a).

forgiveness; and (3) be employed in a public service job at the time each of the 120

monthly payments were made, and at the time of applying for forgiveness.  20 U.S.C.

§ 1087e(m)(1)(A), (B).  The statute defines a "public service job" as "a full-time job" in

categories such as government, military service, law enforcement, public health, public

education, public interest law services, social work in a public family service agency, and

other types of jobs typically associated with serving the public interest.[2]  20 U.S.C. §

1087e(m)(3)(B).

### B.  Notice of Proposed Rulemaking

The Department issued a Notice of Proposed Rulemaking ("NPRM") on July 1,

2008 to "implement the basic statutory framework for the public service loan forgiveness

---

[2] The full statutory definition of public service job is as follows:

> (i) a full-time job in emergency management, government (excluding time
> served as a member of Congress), military service, public safety, law
> enforcement, public health (including nurses, nurse practitioners, nurses in
> a clinical setting, and full-time professionals engaged in health care
> practitioner occupations and health care support occupations, as such
> terms are defined by the Bureau of Labor Statistics), public education,
> social work in a public child or family service agency, public interest law
> services (including prosecution or public defense or legal advocacy on
> behalf of low-income communities at a nonprofit organization), early
> childhood education (including licensed or regulated childcare, Head Start,
> and State funded prekindergarten), public service for individuals with
> disabilities, public service for the elderly, public library sciences, school-
> based library sciences and other school-based services, or at an
> organization that is described in section 501(c)(3) of Title 26 and exempt
> from taxation under section 501(a) of such title; or
> (ii) teaching as a full-time faculty member at a Tribal College or
> University as defined in section 1059c(b) of this title and other faculty
> teaching in high-needs subject areas or areas of shortage (including nurse
> faculty, foreign language faculty, and part-time faculty at community
> colleges), as determined by the Secretary.

20 U.S.C. § 1087e(m)(3)(B)(i), (ii).

program." 73 Fed. Reg. 37,704, AR 13.  As required by 20 U.S.C. § 1098a, the

Department developed the proposed regulations by using a negotiated rulemaking

committee which included representatives of the organizations and individuals that have

an interest in the Direct Loan Program.[3]  As part of this process, the Department aimed to

make clear who would qualify for loan forgiveness based on their public service work.

The negotiated rulemaking committee engaged in "much discussion concerning the many

types of public service jobs that might qualify a borrower for public service loan

forgiveness." *Id*. The committee and the Department determined that, rather than

"defin[ing] specific job types that might qualify," "it would be clearer and more efficient

to define the types of organizations that would qualify as eligible employers" for

purposes of PSLF.  *Id*.  Therefore, the Department proposed that under the PSLF "base

eligibility for the forgiveness" be based "*on the type of organization* that employs the

borrower," rather than on whether a specific employment position met the definition of

"public service jobs."  *Id*. (emphasis added).

Accordingly, the Department proposed defining "public service job" as (1) "A

full-time job in a number of public service occupations and fields"; (2) "a full-time job at

a non-profit organization that satisfies the requirements of a section 501(c)(3) of the"

Internal Revenue Code; or (3) "a full-time faculty member at a Tribal college or

university . . . or other faculty teaching in high-needs areas."  *Id*.  The Department also

proposed defining "employee or employed" as "an individual who is hired and paid by a

public service organization."  *Id*.  And, the Department proposed defining a "public

---

[3] If the negotiated rulemaking committee reaches a consensus on the text of the proposed regulations, the published proposed regulations must conform to that agreement.  20 U.S.C. § 1098a(b).

4

service organization" as (1) "A Federal, State, local, or Tribal government organization, agency, or entity"; (2) "A public child or family service agency"; (3) "A non-profit organization that qualifies under section 501(c)(3)"; (4) "a Tribal college or university"; or, as is most relevant to this case, (5) "a private organization that" provides "public services," which the agency enumerates (and which includes as a public service "public interest law"), and that is "not a business organized for profit, a labor union, a partisan political organization, or an organization engaged in religious activities." *Id.* at 37,705, AR 14. "Public interest law" was defined to refer to "legal services provided by a public service organization that are funded in whole or in part by a local, State, Federal, or Tribal government." *Id.* The negotiated rulemaking committee approved the proposed regulations by consensus.

### C. The Final PSLF Rule

The Department issued a final rule on the PSLF program on October 23, 2008. Federal Perkins Loan Program, Federal Family Education Loan Program, and William D. Ford Federal Direct Loan Program, 73 Fed. Reg. 63,232 (Oct. 23, 2008), AR 36-63; *see also* 34 C.F.R. § 685.219. The commenters on the proposed rule—primarily "law schools, law students, legal aid centers, clinics, and associations, public interest attorneys and public defenders"—"overwhelmingly supported" the PSLF "because it would provide relief to borrowers who chose charity and other public service and nonprofit employment," and because it helped "talented employees in critical jobs" to choose to do work "that supports our society's well-being." 73 Fed. Reg. 63,240, AR 44.

Among other issues, commenters asked the Department to clarify its definition of "public service organization." 73 Fed. Reg. 63,242, AR 46. The Department addressed

these comments, explaining that the definition it set forth for "public service organization" "is derived from the statutory definition of 'public service job' in [20 U.S.C. § 1087e(m)(3)(B)], and is intended to identify broad categories of eligible jobs rather than define specific jobs under those categories." *Id.* The Final Rule, which resulted in the publication of 34 C.F.R. § 685.219, therefore clarified that a "public service organization" refers to: (1) Federal, State, local, or Tribal government entities; (2) public child or family service agencies; (3) non-profit organizations under section 501(c)(3) of the Internal Revenue Code, excluding certain religious organizations; (4) Tribal colleges or universities; and (5) private organizations that provide public services, which the regulation lists. [4]  34 C.F.R. § 685.219.  The Department further clarified that "[n]on-profit organizations that do not qualify under section 501(c)(3)" of the IRC "may nonetheless qualify as a private organization that provides qualifying public services." 73 Fed. Reg. 63,243, AR 47.

---

[4] The regulations fully describe a private organization that may qualify as a public service organization for purposes of PSLF as one that

> (i) Provides the following public services: Emergency management, military service, public safety, law enforcement, public interest law services, early childhood education (including licensed or regulated child care, Head Start, and State funded pre-kindergarten), public service for individuals with disabilities and the elderly, public health (including nurses, nurse practitioners, nurses in a clinical setting, and full-time professionals engaged in health care practitioner occupations and health care support occupations, as such terms are defined by the Bureau of Labor Statistics), public education, public library services, school library or other school-based services; and
>
> (ii) Is not a business organized for profit, a labor union, a partisan political organization, or an organization engaged in religious activities, unless the qualifying activities are unrelated to religious instruction, worship services, or any form of proselytizing.

34 C.F.R. § 685.219(b)(5).

Thus, the Department provided guidance on which types of employers fall within the broad categories of employers defined as "public service organizations." In issuing the Final Rule, the Department recognized that it might need to make individual determinations regarding the eligibility of some private or for-profit organizations that might receive some government funding in exchange for providing some public services. The Department emphasized that it "continue[d] to believe that the term 'public sector jobs' does not encompass every job." *Id.* Rather, the "nature of the employer and the funding source of salaries are appropriate considerations."[5] *Id.*

### D.  Operation of the PSLF Program

The PSLF Program "was established to encourage individuals to work in public service by forgiving the remaining balance of their Direct Loans after they have made 120 qualifying payments while employed by a qualifying employer." AR 169. To count as qualifying payments for PSLF, loan payments must be made under specified qualifying repayment plans. AR 170-71. For purposes of the PSLF Program, a "qualifying payment" is one made after October 1, 2007; received no later than 15 days after it was due; for the full amount due that month; made under a qualifying repayment plan; and made while the borrower was employed full-time by a qualifying employer, as described in 34 C.F.R. § 685.219. AR 172. As the agency explains in its Frequently

---

[5] Since publication of the final rule in 2008, the Department has amended 34 C.F.R. §685.219 three times. Federal Perkins Loan Program, Federal Family Education Loan Program, and William D. Ford Federal Direct Loan Program, 74 Fed. Reg. 55,972 (Oct. 29, 2009), AR 64-99; William D. Ford Federal Direct Loan Program, 77 Fed. Reg. 76,414 (Dec. 28, 2012, AR 100-101; and Student Assistance General Provisions, Federal Family Education Loan Program, and William D. Ford Federal Direct Loan Program, 80 Fed. Reg. 67,204 (Oct. 30, 2015), AR 102-141. The claims in this case do not implicate the regulatory changes made in those revisions to the final rule.

Asked Questions on the PSLF, "[t]he specific job that [a borrower] perform[s] does not matter," because eligibility turns on whether the borrower is "employed by an eligible public service organization."  AR 175.  For example, a borrower who is employed full-time by a company that is doing work for a qualifying PSLF employer under a contract, but whose actual employer is not a qualifying PSLF employer, will not be eligible for PSLF.  AR 176.

A borrower may request guidance prior to the end of the ten-year period on whether she has performed qualifying public service and made qualifying payments by submitting a PSLF Employment Certification Form ("ECF") with the agency.  AR 178. The Department encourages borrowers to submit an ECF annually while working towards making the full 120 payments, so that they may "receive feedback on the eligibility of [their] employment and payments on an ongoing basis."  AR 178.  However, a borrower is not required to file interim ECFs to ultimately qualify for loan forgiveness, nor are the Department's responses to ECFs a determination of loan forgiveness.  The Department's PSLF servicer—FedLoan Servicing—reviews the ECF and "tell[s] [the borrower] how many qualifying payments . . . have [been] made toward PSLF."  *Id.*  The PSLF servicer also evaluates whether a borrower's employer is a qualified employer for PSLF purposes "based on the information provided on the [ECF]."  *Id.*  The servicer tells the borrower that if it is unable to make that determination based on the information provided, it may request "additional documentation about your qualifying employment." *Id.*  The Department advises that borrowers should be able to "demonstrate that [their] employer[s] meet[] the definition of [] public service organization[s]."  *Id.*  If FedLoan Servicing is unable to make that determination, "at least one Department of Education

manager performs an additional review and, if necessary, consults with the Department's Office of General Counsel" before making a final determination as to the employer's status and responding to the borrower.  AR 335.

Once a borrower has made 120 qualifying payments, she may submit an application for PSLF and an ECF to verify that she is employed with a qualifying public service organization.  AR 179.  The borrower must be employed by a qualifying public service organization at the time she submits the application for loan forgiveness and when the balance on the loan is forgiven.  34 C.F.R. § 685.219(c)(1).

## II.    Plaintiffs' Claims

The plaintiffs are the ABA and four individual borrowers who have submitted ECFs regarding their eligibility for PSLF ("individual plaintiffs").  Two of the individual plaintiffs have claimed PSLF credit for periods in which they worked for the ABA. Three of the individual plaintiffs—Mr. Rudert, Mr. Burkhart, and Ms. Voigt—received incorrect notices in response to the ECFs they filed which indicated that their employers—Vietnam Veterans of America ("VVA"), the ABA, and the American Immigration Lawyers Association ("AILA") respectively—were qualifying employers for purposes of PSLF.  AR 214-15, 277-78, 282-83, 335-36.  However, in response to subsequent ECFs filed by these three individual plaintiffs, the Department corrected its earlier mistake and notified the borrowers that their employers were not qualifying employers for purposes of PSLF.

Ms. Voigt wrote a letter to the Department concerning its determination that AILA was not a qualifying employer for purposes of PSLF.  AR 334.  The Department responded by letter on December 10, 2014.  *Id.*  It noted that Ms. Voigt had sent an email

to the Department in 2012 to seek guidance on whether the AILA was a qualifying

employer.  The Department explained that, in its preliminary review of AILA's status in

2012, the Department believed that AILA was a not-for-profit organization that provided

public interest law services, which would qualify it as a public service organization.  *Id.*

The Department explained that in 2014, another employee of AILA submitted an ECF

that revealed that AILA is a private not-for-profit organization, rather than a section

501(c)(3) not-for-profit organization.  *Id.*  In light of that the Department considered

whether AILA could qualify as a private organization that provides public services.  *Id.*

The Department determined, however, that because AILA did not provide "public

education" or directly provide public interest law services, so it was not a qualifying

employer for purposes of PSLF.  AR 335.

Mr. Rudert also wrote a letter to the Department, via FedLoan Servicing,

challenging the Department's decision that his former employer, VVA, was not a

qualifying organization for purposes of PSLF.  AR 284-289.  He also contacted the

Department via U.S. Representative Eleanor Holmes Norton, who forwarded his ECF and

an explanation of his complaint.  AR 320.  The Department wrote a letter to

Representative Norton explaining that VVA did not qualify due to their funding source

and the fact that they do not directly provide services to Vietnam Veterans.  AR 330-31.

The Department explained that Mr. Rudert's previous ECF for VVA had been "approved

in error."  AR 331.

Ms. Quintero-Milan filed three simultaneous ECFs in 2015 to determine the

eligibility of her then-current employer and her two previous employers, one of which

was PROBar, a program run by the ABA.  AR 217-18.  Ms. Quintero-Milan received

10

notice that her work at the ABA did not qualify her for PSLF, but that her current

employer and previous employer were qualifying employers for purposes of PSLF.  AR

237-39

On April 7, 2016, Jack L. Rives, the Executive Director of the ABA, wrote a letter

to the Department requesting a meeting to discuss recent letters from the Department's

servicer stating that the ABA was not a qualifying employer for purposes of PSLF.  AR

187.  Mr. Rives met with Department staff on April 18, 2016 "to discuss the

administration of the" PSLF Program.  AR 188.  In his May 20, 2016 letter to the

Department, he explained his disagreement with the Department's preliminary

determination that the ABA is not a qualifying employer.  *Id*.  He framed the agency's

position as resulting from a "new method of evaluating" eligibility, and describes it as the

Department having "reversed course."  *Id*.  However, in its responsive letter on June 21,

2016, the Department noted that it considered whether the ABA qualified as an eligible

employer under the definitions set forth in 34 C.F.R. 685.219(b).  AR 190.  The

Department noted that, at the April 16 meeting, its representatives "agreed to review any

additional information that the ABA would like to submit to . . . reconsider [its]

determination."  *Id*.  However, the Department noted that it "checked with FedLoan

Servicing, and they have no record of receiving any additional information from the

ABA."  *Id*.  Although the Department did receive "additional information regarding the

ABA from an individual borrower," the Department found that it did not demonstrate that

the ABA was a qualified employer for PSLF purposes.  *Id*.  As the Department explained,

"[t]o date, no documentation from the ABA or from a PSLF applicant demonstrates that

the primary purpose of the ABA is to provide 'public interest law services' [as] the term

is defined in the PSLF regulations." AR 190-91. The Department also stated that it "regret[ted] that some borrowers were incorrectly notified that full-time ABA employment qualified them for PSLF." AR 191.

Staff from the ABA and the Department met again on September 19, 2016 "to discuss [the ABA's] concerns with the Department's administration of the PSLF Program." *Id.* As a result of these discussions, the Department agreed to provide more detailed information on the PSLF webpage that would be helpful to borrowers and to revise borrower notifications to provide more detailed written explanations of adverse or changed decisions. AR 192. The Department again reconsidered the ABA's eligibility as a qualifying employer, but found that the evidence supported its previous decision. *Id.*

## III.    Statement of Proceedings

Plaintiffs filed their Complaint on February 3, 2017. ECF No. 1. They allege five causes of action against the Department. Count I challenges the Department's alleged change in interpretation as arbitrary and capricious under 5 U.S.C. § 706(2). *Id.* ¶¶ 183-92. Count II alleges that the Department made "new or revised" interpretations of statutory terms defining the term "public service job," without meeting the APA's procedural notice requirements. *Id.* ¶¶ 193-200. Count III alleges that Defendants acted retroactively in violation of the APA. *Id.* ¶¶ 201-208. Count IV challenges the Department's determinations that the individual plaintiffs' employers were not qualifying employers for purposes of PSLF as violating 5 U.S.C. § 706(2). *Id.* ¶¶ 209-216. Count V challenges the Departments' determinations that the individual plaintiffs' employers were not qualifying employers as violating the Due Process Clause of the Fifth Amendment to

the U.S. Constitution.  *Id.* ¶¶ 217-220.  Plaintiffs moved for summary judgment on all of

their claims on May 24, 2017.  *See* Pls.' Mot. for Summ. J. ("Pls.' Mot."), ECF No. 17.

## STANDARD OF REVIEW

The parties have cross-moved for summary judgment under Fed. R. Civ. P. 56.

"[T]he [c]ourt's review" of Counts I through IV of plaintiffs' complaint alleging claims

under the APA "is limited to the administrative record." *Fund for Animals v. Babbitt*, 903

F.Supp. 96, 105 (D.D.C.1995) (citing *Camp v. Pitts*, 411 U.S. 138, 142 (1973)).  In

reviewing such claims, and the Court's role is limited to "determin[ing] whether or not as

a matter of law the evidence in the administrative record permitted the agency to make

the decision it did," *see Sierra Club v. Mainella*, 459 F.Supp.2d 76, 90 (D.D.C.2006)

(citations omitted).  Summary judgment on Count V of plaintiffs' Complaint should be

granted where the pleadings and evidence show "that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P.

56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## ARGUMENT

I.   **Plaintiffs' APA Claims Fail Because They Do Not Challenge Final Agency Action**

Plaintiffs' APA claims are all premised on the same incorrect assumption that the

Department's responses to plaintiffs' ECFs are final statements of agency policy or final

determinations of the individuals' eligibility for loan forgiveness, rather than interim,

non-binding, individualized determinations made under the agency's long-standing

policy set forth in its 2008 Final Rule.  Plaintiffs cannot prevail on their claims under the

APA (Counts I through IV of the Complaint), because they have failed to identify final

agency action – a prerequisite for an APA claim.  Accordingly, defendants are entitled to summary judgment on Counts I through IV of plaintiffs' complaint.

The APA provides a cause of action for judicial review of "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704.  Absent final agency action, there can be no cause of action under the APA.  *See Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 731 (D.C. Cir. 2003) ("If there was no final agency action here, there is no doubt that [Plaintiffs] would lack a cause of action under the APA."); *Bark v. U.S. Forest Serv.*,37 F. Supp. 3d 41, 50 (D.D.C. 2014) ("[W]here there is no final agency action, a plaintiff simply has no cause of action under the APA.").

Agency action is final when two separate conditions are satisfied: "[f]irst, the action must mark the 'consummation' of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature." *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 452 F.3d 798, 806 (D.C. Cir. 2006) (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)).  Second, "the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'"

Plaintiffs are challenging the Department's responses to plaintiffs' ECFs as final agency action; however these responses fail both prongs of the test set forth in *Bennett*.  First, these interim responses fall well short of being the "consummation" of the agency's decision-making process.  The Department created a process by which borrowers may receive provisional guidance from the agency during the at-least-ten-year process of qualifying for PSLF by filing ECFs and receiving notification of the borrower's qualifying payments to date.  Significantly, during the rulemaking process for the PSLF

14

rule, the Department declined to accept the recommendation of some of the negotiated rulemaking committee members and certain commenters that it create a process to provide provisional certifications during the 120-month payment period.  73 Fed. Reg. 37,705, AR 14; 73 Fed. Reg. 63,241-42, AR 45-46.  Reflecting the concern that "borrowers should not be left in the dark regarding whether they would qualify for loan forgiveness by applying and documenting their eligibility after 10 years of service and repayment," 73 Fed. Reg. 63,241, AR 45, the commenters pushed the Department to incorporate into the regulations a system to certify eligibility along the way.  The Department did not adopt the suggestion and instead committed to "continue to examine ways to assist borrowers who are interested in, or already employed in public service, to determine and document their eligibility for the loan forgiveness program."  *Id*.  The Department discussed how it would develop an application form to be used by borrowers at the time they apply for loan forgiveness that would document all the necessary information to establish eligibility, including employer information.  *Id*.  The Department further made clear that it "expects the borrower to collect and retain the necessary records that support the borrower's eligibility for this benefit."  73 Fed. Reg. 63,242, AR 46.

Consistent with this regime, the ECF forms that borrowers may submit before they file their loan forgiveness application merely provide provisional guidance on the borrower's progress to making 120 qualifying payments.  Borrowers are under no obligation to file ECFs before they apply for PSLF at the end of the 120-payment process.  When a borrower files an ECF, it is the borrower's duty to provide enough evidence to show that her employer is a "public service employer" for purposes of the PSLF program, but the decision is interlocutory and subject to change.  34 C.F.R. §

15

685.219(c) provides that a borrower is not eligible for loan forgiveness until she had made 120 qualifying payments and applied while still working at a qualifying organization. Thus if a borrower were to make all 120 qualifying monthly payments, and leave her qualifying job before she filed her application, she would not be eligible for PSLF, regardless of any responses to ECFs she may have received informing her that her employer qualified. *Id.*; *see also* AR 177 ("To be eligible for forgiveness after making 120 qualifying [monthly] payments, you must be employed full-time by a qualif[ied] employer . . . at the time you apply for loan forgiveness, and at the time you receive loan forgiveness."). Thus, the Department does not make a final determination on eligibility for PSLF until the borrower files her application for PSLF with a final ECF after making 120 qualifying payments. Accordingly, because the notices in response to the individual plaintiffs' ECFs that plaintiffs challenge are all interlocutory and non-final, these notices cannot meet the first prong of the *Bennett* test. This alone is fatal to plaintiffs' APA claims.

The notices do not meet the second prong of the *Bennett* test either, because the notices are non-binding and non-preclusive. Courts rely on "two lines of inquiry" in determining whether agency action is "one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow." *See Bennett*, 520 U.S. at 177-78. Under the first, Courts may look to the effects of the agency's action, which warrants consideration of whether the action has "(1) imposed any rights and obligations or (2) genuinely left the agency and its decisionmakers free to exercise discretion." *Food & Water Watch v. EPA*, 5 F. Supp. 3d 62, 81 (D.D.C. 2013) (quoting *Ctr. for Auto Safety*, 452 F.3d at 806). The second line of inquiry—which looks to the agency's expressed

intentions—"entails [] consideration of three factors: (1) the agency's own characterization of the action; (2) whether the action was published in the Federal Register or the Code of Federal Regulations; and (3) whether the action has binding effects on private parties or on the agency." *Id*. at 81-82, (footnote omitted) (citing *Ctr. for Auto Safety*, 452 F.3d at 806-07).[6]

Under either line of inquiry, the Department's notices in response to plaintiffs' ECFs fall well short of determining rights or obligations or creating legal consequences for borrowers or third parties. As demonstrated above, the notices provide provisional guidance, but they are non-binding on the agency and in fact, explain that they leave the agency free to reconsider its position, and to change its determination if the borrower provides evidence of eligibility. Indeed, the ECFs and notices on their face reveal that neither results in a final determination by the agency. The ECF form asks the borrower to certify that she understands that the "Department will only determine whether I have

---

[6] Plaintiffs argue that if "the Department's determinations have a practical 'binding effect,' they may be considered final." Pls.' Mot. at 17, citing *Philip Morris USA Inc. v. FDA*, 202 F. Supp. 3d 31, 46 (D.D.C. 2016). Their reliance on this case is misplaced. First, unlike the Department in the instant case, the agency in *Philip Morris* did "not seriously argue that the" published, generally applicable policy guidance at issue "[wa]s anything other than 'the consummation of the agency's decisionmaking process.'" *Id*. at 46. Moreover, the agency action at issue in *Philip Morris* was a final version of policy guidance, which included a statement of enforcement guidelines for the policy. 202 F. Supp. 3d at 43-44. Thus, it was not an individualized determination, as in this case, but instead set forth a generally applicable statement of agency policy including guidance on regulated entities' duties under the statute. *Id*. at 46-47. The Court noted that "[n]on-legislative agency statements of the type at issue here generally do not qualify as final agency action," but that they "can, as a practical matter, have a binding effect" which leads to a decision that they are final. *Id*. at 46. The Court decided that because the guidance "pose[d] an immediate and significant practical hardship to plaintiffs" it was appropriate for judicial review. *Id*. at 47-48. By contrast, in this case, the notices are explicitly not the consummation of the agency's decision-making process. Moreover, they do not have an immediate or significant practical effect on plaintiffs, because plaintiffs' eligibility for PSLF has not yet been finally determined.

fulfilled all of the requirements to be eligible for PSLF after I have made all 120 qualifying payments and have submitted my loan forgiveness application" and that "I may only qualify for Public Service Loan Forgiveness after I have made 120 separate, on-time, qualifying monthly payments . . . ." *See, e.g.,* AR 195.  Moreover, the Department's notices in response to plaintiffs' ECFs all explain that "[b]ased on what [they] submitted" each plaintiff's "employer does not *appear to qualify* for PSLF."  AR 237, 251-52, 277, 325 (emphasis added).  The notices invite the borrowers to "review the employment requirements and reapply if [they] can provide additional information to show that [their] employment qualifies."  *Id.*  Further, the notices make crystal clear that "[a] final determination on [a borrower's] eligibility for forgiveness will occur upon receipt of [a borrower's] application."  *See, e.g.,* AR 197.  Nor are these responses to individual ECF forms the type of records that would be published in the Federal Register, and they are not.

The fact that plaintiffs may have relied upon the individual ECF responses they received, *see* Pl.'s Mot. at 16, though unfortunate, does not make any consequences that flow from that reliance *legal* consequences for purposes of establishing final agency action.  "[I]f the practical effect of the agency action is not a certain change in the legal obligations of a party, the action is non-final for the purpose of judicial review."  *Nat'l Ass'n of Home Builders v. Norton*, 415 F.3d 8, 15 (D.C. Cir. 2005).  The notices do "not establish a 'binding norm," that the Department must apply in future determinations, and they are "not finally determinative of the issues or rights to which [they are] addressed," so their practical effect is not of the type that provides for judicial review of an otherwise

non-final action under the APA.  *See Ctr. for Auto Safety*, 452 F.3d at 806-07 (citing *Pac. Gas & Elec. Co. v. Fed. Power Comm'n*, 506 F.2d 33, 48 (D.C. Cir. 1974)).

Nor does the tentative and non-final nature of the notices "contravene[] the entire rationale for the program," by creating ongoing uncertainty for borrowers.  *See* Pls.' Mot. at 18.  As explained above, in promulgating the Final Rule in 2008, the Department deliberately decided not to create provisional certifications, to leave the agency discretion to reconsider its position in light of new evidence before making a final decision on eligibility in response to a borrower's PSLF application.  The Department explained that this was in fact consistent with the statute and the way in which the Department administers other loan programs.[7]   73 Fed. Reg. 63,241-63,242, AR 45-46.

Plaintiffs' reliance on *Friedman v. FAA.*, 841 F.3d 537 (D.C. Cir. 2016) is misplaced.  Pls. Mot. at 19.  There, the agency stated to an individual that it would deny his request if he did not agree to provide certain information related to his request within

---

[7] To the extent plaintiffs argue that the June 21, 2016 letter from Deputy Assistant Secretary Lynn Mahaffie, AR 190-91, and the December 1, 2016 letter from Under Secretary Ted Mitchell, AR 192-93, regarding the ABA's status as a qualifying employer are final agency action, these letters fail the *Bennett* test for the same reasons.  The Department met and corresponded with representatives of the ABA and heard their concerns regarding the Department's preliminary determination that the ABA does not qualify as a public service organization for purposes of the PSLF program.  *See* AR 190-93.  However, the letters make clear that these decisions were preliminary: they are based on the information received at the time regarding the ABA's eligibility.  AR 190, 193.  The June 2016 letter invites the ABA to submit additional evidence to demonstrate eligibility, and both letters note that the ABA did not submit additional evidence for the Department to consider leading up to the letter.  *Id.*  In fact, in reconsidering the ABA's eligibility leading up to the June 21, 2016 letter, the Department considered evidence submitted by an individual borrower rather than the ABA, though they still found the evidence did not demonstrate that the ABA was a qualifying public service organization.  AR 190.  However, if a borrower did submit evidence demonstrating the ABA's eligibility, the Department could change its determination because the decisions described in the letters are non-final and non-binding.

60 days. *Id*. at 542.  After learning that the individual did not intend to provide the information, the agency stated that it was unable to proceed with deciding the individual's request and set no timetable to do so.  In that case, the Court held that the agency prevented the plaintiff "from obtaining any explicitly final determination on his application and thwarting the Court's interest in reviewing those agency actions that, in practical effect" meet the second prong of the *Bennett* test.  *Id.*  By contrast, in this case, the Department has committed explicitly to making a final decision on each of the individual plaintiffs' eligibility for PSLF when he or she files an application and submits with it documentation showing that he or she made 120 qualifying payments and is otherwise eligible for PSLF.  73 Fed. Reg. 63,242, AR 46.  Section 685.219 provides that, "[i]f the Secretary determines that the borrower does not meet the eligibility requirements for" PSLF, the Secretary will "notif[y] the borrower that the application has been denied, provide[] the basis for the denial, and inform[] the borrower that the Secretary will resume collection of the loan."  34 C.F.R. § 685.219(e)(3).  Accordingly, rather than "seek[ing] to avoid judicial review," *Friedman*, at 543, the Department has identified the final agency action in the PSLF program that could be reviewed under the APA, and it is undisputed that no final decision on any plaintiffs' application is at issue in this case.

## II.     The ABA's Claims Must Be Dismissed Because Its Injuries Fall Outside the Zone of Interests

The Court should dismiss the ABA from this lawsuit, because its asserted injuries do not fall within the zone of interests of the CCRAA and 34 C.F.R. § 685.219.[8]  The

---

[8] Although previously analyzed as a "prudential standing" consideration, the Supreme Court has since clarified that "zone of interests" is more appropriately considered a

zone of interests test "serve[s] to limit the role of the courts in resolving public disputes," by asking "whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Warth v. Seldin*, 422 U.S. 490, 500 (1975).  Thus, even when the Article III standing requirements have been met, a plaintiff still must "establish that the injury he complains of (*his* aggrievement, or the adverse effect *upon him*) falls within the 'zone of interests' sought to be protected by the statut[e] [or constitutional guarantee] whose violation forms the legal basis for his complaint." *Air Courier Conference of Am. v. Postal Workers*, 498 U.S. 517, 523–524 (1991) (emphasis in original); *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 475 (1982) (test applies to claims under the Constitution).

The statute and regulations that create the PSLF are intended to provide student debt relief to borrowers who choose to work full-time in public service organizations. The Department's regulations at 34 CFR § 685.219(a) state that the PSLF "is intended to encourage individuals to enter and continue in full-time public service employment by forgiving the remaining balance of their Direct loans after they satisfy the public service and loan payment requirements of this section."  The corresponding statutory provision, 20 U.S.C. § 1087e(m), does not mention public service organizations.  The agency action plaintiffs have identified as the subject of their challenges—the notices responding to the individual plaintiffs' ECFs—were filed by, and may only be filed by, individual

---

question of whether "the plaintiff has adequately pled a claim." *Chabad Lubavitch of Litchfield Cty., Inc. v. Litchfield Historic Dist. Comm'n*, 768 F.3d 183, 201 (2d Cir. 2014) (citing *Lexmark Int'l v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1387–88 (2014)).

borrowers in order to obtain preliminary determinations about the individual's progress toward qualifying for loan forgiveness.  Any benefit or harm the ABA derives from this program is incidental to the benefit incurred by the individual borrowers that the ABA employs.  That the ABA corresponded with the Department regarding its eligibility as a qualifying public service employer in no way creates a cause of action for the ABA.  In fact, in response to those letters (and additional evidence submitted not by the ABA but by an individual borrower), the Department reconsidered "the eligibility of employees of the [ABA] for PSLF."  AR 192.

The Department also agreed to add information to its website and "enhance communication with borrowers," to provide more information to the individuals to whom the Department directs correspondence as part of this program.  AR 192.  The question of the ABA's status as a qualifying public service organization only has legal effect for individual borrowers.  The ABA's alleged injuries are not those which Congress sought to address in passing the CCRAA.  Accordingly, the ABA's claims should be dismissed for falling outside the zone of interests.  *See American Farm Bureau v. U.S. E.P.A.*, 121 F. Supp. 2d 84, 95 (D.D.C. 2000) (plaintiff falls outside zone of interests "if the plaintiff is only an incidental beneficiary of a statutory provision."); *c.f. Ctr for Reprod. Law & Policy v. Bush*, 304 F.3d 183, 196 (2d Cir. 2002) (plaintiffs cannot make their claims actionable "merely by attaching them to a third party's due process interests.").

### III.   Record Evidence Demonstrates that the Department's Interpretation is Reasonable Under the APA

Counts I through IV of plaintiffs' Complaint purport to challenge the Department's decision under the APA.  *See* Complaint ¶¶ 183-216.  However, the precise nature of the alleged final agency action that is the subject of plaintiffs' challenge is

elusive.  In Count I, plaintiffs challenge what they describe as the Department's "change in interpretation" of a rule, although they do not identify what the change in interpretation is or where this change is expressed.  *Id.* ¶¶ 183-92.  In Count II, plaintiffs allege that the Department "chang[ed] its interpretation" of several phrases from the definition of "public service organization" in 20 U.S.C. § 1087e(m)(B)(i), although again, they do not identify where the Department has expressed this change, or what agency decision the Court could review as reflecting a change in interpretation.  *Id.* ¶¶ 193-200.  In Count III, plaintiffs challenge the automatic operational effect of the individual plaintiffs' ECFs, but characterize it as a decision to apply a rule retroactively.  *Id.* ¶¶ 201-08.  In Count IV, plaintiffs challenge the Department's interpretation of "public service job," which the Department interpreted in promulgating its 2008 Final Rule, any APA challenge to which is untimely.  *Id.* ¶¶ 209-16.

The ambiguity in plaintiffs' claims obscures the simple fact, which is supported by record evidence, that the Department's interpretation of section 1087e(m) is set forth in the NPRM and the 2008 Final Rule, and is codified at 34 C.F.R. § 685.219.  Plaintiffs do not challenge the Final Rule in their Complaint, nor could they, because any challenge to the Final Rule would be barred by the six-year statute of limitations for claims under the APA.  *See Historic Eastern Pequots v. Salazar*, 934 F. Supp. 2d 272, 278-79 (D.D.C. 2013), citing 28 U.S.C. § 2401(a) ("every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues.").

As part of the rulemaking process that is not challenged in this lawsuit, Defendants made the decision to interpret the statutory phrase "public service job" such

that it would "define the types of organizations that would qualify as eligible employers for purposes of public service loan forgiveness," rather than the "specific job types that might qualify," and base eligibility for the forgiveness on the type of organization that employs the borrower."  73 Fed. Reg. 37,704, AR 13.  Defendants therefore defined what categories of employers would qualify as a "public service organization[s]" for purposes of PSLF as part of the rulemaking.  *Id.*; *see also* 34 C.F.R. §685.219(b).  The Department further defined "public service organization" as encompassing five broad categories of organizations: (1) Federal, State, local, or Tribal government entities; (2) public family service agencies; (3) 501(c)(3) non-profit organizations that are not engaged in certain religious activities; (4) Tribal colleges and universities; and (5) certain private organizations that provide a number of public services, which the agency lists.  *See id.*

Thus, plaintiffs' claim that defendants' interpretation of "public service job" is contrary to the statute, particularly in light of each individual plaintiffs' job functions, *see* Pls.' Mot. at 20-24, amounts to a challenge to the 2008 Final Rule that emphasized the type of employer over the particular job of the borrower, and is therefore time-barred. Plaintiffs cannot circumvent the statute of limitations by claiming that the agency has adopted new or changed interpretations of the statute—by arguing, as they do, that the "jobs held by the Individual Plaintiffs" and the "functions performed by the ABA" qualify under the language of the statute—particularly where they can point to no record evidence of a change in the Department's interpretation.  *See* Pls.' Mot. at 24-25. Further, plaintiffs' analysis regarding whether the Department is entitled to *Chevron* deference seems to challenge the Department's authority to define the term "public

service job," and is therefore time-barred as well, because the Department defined that term as part of its 2008 rulemaking.

To the extent what plaintiffs are challenging is the agency's interpretation of its 2008 regulations that a private organization's primary purpose must be to provide a type of the enumerated public services, that interpretation, which was made in individual, informal, interim, nonprecedential adjudications (as noted above), is entitled to deference to the extent that it is persuasive.  *See Fogo de Chao (Holdings) Inc. v. DHS.*, 769 F.3d 1127, 1136-37 (D.C. Cir. 2014) (the absence of "relatively formal administrative procedures . . . weighs against the application of *Chevron* deference; however, the "unsuitability of the *Chevron* model of review does not mean that no deference is due. . . . The Department's interpretation of the statute is entitled to respect to the extent it has the power to persuade.") (citations omitted).  Under *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944), "an agency's interpretation may merit some deference whatever its form, given the specialized experience and broader investigations and information available to the agency."  *United States v. Mead Corp.*, 533 U.S. 218, 234 (2001).  To determine the level of deference, the Court must examine "the thoroughness evident in [the agency's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control."  *Skidmore*, 323 U.S. at 140.  A "reasonable interpretation of" a statute "brings at least some added persuasive force" to an agency's decision.  *Metro. Stevedore Co. v. Rambo*, 521 U.S. 121, 136 (1997).

It is reasonable that in order to be eligible for the PSLF program, a private organization employer that "provides . . . public services," as the regulation requires, be

required to have the provision of public services be its primary purpose.  By defining

eligibility based on the nature of the borrower's employer, rather than the nature of the

work that the borrower performs, the regulation expands the pool of qualified borrowers

to include all the employees of a public service organization who have Direct Loans, no

matter their level of pay or job function, rather than just those doing "public service

jobs."  Accordingly, it is reasonable to impose the limitation that a private organization

that "provides . . . public services" must be primarily in the business of providing public

services, lest the regulation sweep too broadly to include private organizations for which

the provision of public services is only a small part of their operations.  It is also

consistent with the language of the regulation to say that a private organization that must

"provide . . . public services" must primarily provide public services.

Without this type of limitation, the regulation would contain a loophole that

would allow many people to take advantage of the PSLF who are not performing the type

of public service work Congress intended to reward.  For example, a private law firm

might employ a full-time lawyer who coordinates the firm's *pro bono* program, and

whose sole function at the firm is to provide public interest law services as part of this

program.  This borrower might apply for PSLF and argue that she works for a "private

organization" that provides "public interest law services," and that she does this work

full-time.  But if her employment were to qualify her for PSLF, under the regulatory

definition, every employee at the law firm would also work for a qualifying employer

regardless of whether they do any public interest work at all.  The same is true of a

company that has a subsidiary that provides emergency management services but does

not provide emergency management services as its primary purpose.  In the absence of

the Department's limitation, all of the company's employees who have Direct Loans would qualify for loan forgiveness, contrary to the program Congress intended to establish.

So too with the ABA and the individual plaintiffs' other employers. The Department reviewed the evidence submitted to it on behalf of the ABA, and has tentatively determined that the evidence currently before it does not demonstrate that the ABA's primary purpose is public service work. AR 191-93. If the Department ultimately makes a final determination that the ABA does qualify, all of its employees regardless of their job function will work for a qualifying employer for purposes of the PSLF Program. Because this decision would have an impact on all of the ABA's employees, the Department has made a reasonable decision—that is consistent with the intent of the statute—to look to the primary purpose of the organization to determine whether it is a qualifying employer.

In its letter to Ms. Voigt, the Department explained why AILA did not qualify based its purported educational activities: because "AILA's education activities are directed primarily to its members and to the public in general . . . and are not provided in a school or school-like setting." AR 335. It is reasonable for the Department to decline to make all of an organization's employees eligible for PSLF merely because it claims generally to educate the public and its members about its mission. Similarly, the Department's consideration of the fact that AILA employees do not provide public interest legal services, and its consequent decision that AILA could not qualify as a public service organization on the ground that it is as a professional organization whose members provide such services, is also a reasonable decision, given that the employees

27

would be the individuals who would benefit from AILA's designation as a qualifying

employer.  *See id.*  As the Department notes in its letter "AILA's 'find a lawyer' site . . .

specifically states that AILA and ailalawyer.com offer 'no legal advice,

recommendations, mediation, or counseling under any circumstance,' but merely assist

individuals in finding an attorney."  *Id.*  The Department likewise decided that VVA was

not a qualifying employer because its claim to eligibility was based on the fact that it

facilitated the provision of disability-related services to Vietnam Veterans, rather than

provide them directly.  AR 331.  The Department also considered VVA's funding source.

*Id.*

Thus, in deciding whether to confer qualification on AILA and VVA, and thereby

provide a potential benefit to all of their employees, the Department reasonably

considered whether the organizations themselves provided the qualifying public services.

Plaintiffs mischaracterize the Department's explanations in these letters to individuals as

"changed position[s]."  AR 31-33.  Rather, these letters reflect that the Department

provided an explanation of the factors it considered in making a provisional

determination with respect to the plaintiffs' eligibility for PSLF based on their

employment at private organizations that did not obviously fall within the regulatory

definition of "public service organization."  This is consistent with the Department's

explanation in the Final Rule that it would look to "appropriate considerations" to

determine which employers qualified for purposes of PSLF.  AR 73 Fed. Reg. 63,243,

AR 47.

Moreover, the notices and letters were individualized, non-final determinations,

which the Court should not review as statements of the agency's generally applicable

policy in administering the PSLF. *See Crowley Caribbean Transprt, Inc. v. Pena*, 37

F.3d 671, 677 (D.C. Cir. 1994) (declining to review a "*single-shot* non-enforcement

decision" as the "agency's statement of *general enforcement policy*.") (emphasis in

original).  Though Courts may "review agency statements that arise in all manner of

informal contexts," in order to be considered a statement of the agency's policy, such a

statement made in the course of an individualized determination should "lay out a general

policy" and "purport to speak to a broad class of parties." *Id.* at 667.  Neither the

Department's notices nor its letters to individual plaintiffs and the ABA delineate a

generally applicable policy or purport to speak to a broad class of individuals.  The

notices are largely form documents that provide boilerplate guidance on the agency's

PSLF program.  The Department's determination that a particular organization is not a

qualifying employer cannot be read to have any broader applicability, particularly here,

where the notices invite the recipient to reapply with additional evidence to support a

favorable decision.   The Department's correspondence with certain individual plaintiffs

and the ABA provide a more fulsome explanation for the Department's determination

with respect to a specific organization, including the specific factors the Department

considered in the context of reviewing that organization's status as a qualifying

employer.  But these letters do not purport to set forth a policy that would apply to any

other decision by the agency.  At most, they provide guidance on factors the agency

might consider were an employee of the same organization to file an ECF submitting new

evidence to demonstrate eligibility.

     Thus, plaintiffs cannot challenge these individualized determinations as "changed

interpretations" of a statutory or regulatory provision.  They claim the Department's

"reasoning for its about-face remains entirely undisclosed," Pls.' Mot. at 27, but that is because there was no about face by the agency with respect to any policy or interpretation. For that reason, plaintiffs' reliance on *FCC v. Fox TV Stations, Inc.*, 556 U.S. 502, 515 (2009)—a case in which the agency did not dispute that it had changed its prior policy—is misplaced. The same is true of plaintiffs' reliance on *Fox v. Clinton*, 684 F.3d 67 (D.C. Cir. 2012), a case in which "both parties agree[d]" that a letter from the Department of State office that "possessed final discretion to review the agency's denial of [the] Appellant's . . . request" was "the agency's final decision in this case." *Id*. at 73.

Nor is there any basis for plaintiffs' claim that the agency "did not use required procedures in departing from the previous interpretation," because the Department's interpretation of the statute and the regulations has been consistent and unchanged. Pls.' Mot. at 28-30. Similarly, plaintiffs claim that the Department has failed to "acknowledge a change and adequately explain it," Pls.' Mot. at 29, is based on the erroneous and unsupported assertion that "the Department certified the eligibility of the ABA and Individual Plaintiffs for the PSLF program." *Id*. at 30. The Department does not certify employers' eligibility, nor are notices in response to ECFs considered "certifications." To the contrary, the Department rejected a proposal by the negotiated rulemaking panels and commenters that it provide interim certifications as part of the PSLF, as discussed above. 73 Fed. Reg. 37,705, AR 14; 73 Fed. Reg. 63,241-42, AR 45-46.

Plaintiffs' claim that the Department acted retroactively without statutory authorization is also premised on the erroneous assertions that the Department changed its policy, which, as demonstrated above, is not supported by any record evidence. The Department's notices to plaintiffs' ECFs state on their face that "[a] final determination

of your eligibility for forgiveness will occur on receipt of your application." *See, e.g.,* AR 199.  Thus, the Department's issuance of corrective notices in response to the individual plaintiffs' subsequent ECFs do not meet any of the tests plaintiffs attempt to apply to these notifications.  *See* Pls.' Mot. at 38-42.

Accordingly, plaintiffs claims based on mischaracterizations of the Department's notices as changed interpretations, new policies that apply retroactively, and broad statements of agency policy must fail.  The Department made discretionary decisions based on its interpretation of section 685.219 to determine whether the individual plaintiffs had worked at qualifying employers.  The Department's decisions with respect to these employers—based on the rational articulated in correspondence in the record— were reasonable and consistent with the Department's regulation.  They are entitled to *Skidmore* deference, and should be upheld.[9]

## IV.    Plaintiffs Fail to Demonstrate a Denial of Due Process

Plaintiffs' claim in Count V that the Department's interim, non-binding determinations that the individual plaintiffs had not demonstrated that their employers were public service organizations amount to denials of due process is unavailing.  *See* Compl. ¶¶ 217-20.  In order to invoke the due process clause, a plaintiff must first identify a protected liberty or property interest that gives rise to procedural due process protections. *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972).  If a plaintiff satisfies this requirement, courts then apply a flexible analysis to determine, in

---

[9] To the extent the Court determines the Department's decision should be overturned, the appropriate remedy is remand.  *See Cty. of Los Angeles v. Shalala*, 192 F.3d 1005, 1011 (D.C. Cir. 1999) ("when a court reviewing agency action determines that an agency made an error of law, the court's inquiry is at an end: the case must be remanded to the agency for further action consistent with the corrected legal standards.") (quoting *PPG Indus., Inc. v. United States*, 52 F.3d 363, 365 (D.C. Cir. 1995)).

the circumstances, whether the individual has been provided notice and an opportunity to be heard regarding the Government's infringement of that protected interest. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). "[D]ue process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Gilbert v. Homar,* 520 U.S. 924, 930 (1997) (citation omitted). At bottom, the due process evaluation "is flexible and calls for such procedural protections as the particular situation demands." *Buckingham v. Sec'y of U.S. Dep't of Agric.*, 603 F.3d 1073, 1083 (9th Cir. 2010) (quoting *Mathews*, 424 U.S. at 334). Plaintiffs have failed both to identify a protected liberty or property interest and to demonstrate that, even if they had a protected interest, they had been denied due process.

In order to demonstrate a protected property interest, plaintiffs must identify a "legitimate claim of entitlement" emerging from an independent law or standard. *NB ex rel. Peacock v. District of Columbia*, 794 F.3d 31, 41 (2015) ("A 'legitimate claim of entitlement' means that a person would be entitled to receive the government benefit *assuming* she satisfied the preconditions to obtaining it."). Because the Department retains discretion to look to "appropriate considerations" to determine whether an organization is a qualifying organization, plaintiffs cannot demonstrate that "the benefit would follow from satisfaction of applicable eligibility criteria." *Id.*

Moreover, even if plaintiffs could identify a protected interest, their procedural due process claims fail in light of the Department's demonstrated willingness to reconsider its decision in light of new evidence, and because the Department's decision is not yet final. That happens if and when a borrower applies for loan forgiveness under the PSLF program, at the end of the 120-payment period. *See, e.g.*, AR 148. The plaintiffs'

reliance on interim determinations—conveyed by a document that, on its face, explained the decision was not final—does not meet the high bar for demonstrating a "legitimate claim of entitlement" to a benefit. *Id.* Contrary to plaintiffs' assertions, the record contains no evidence that the "ABA and three of the four Individual Plaintiffs had been deemed PSLF-eligible by the Department." Pls.' Mot. at 43. Moreover, the sentence plaintiffs rely on to claim that the "Department acknowledged that the ABA had previously been considered a qualifying public service organization," *id.*, actually says: "I regret that some borrowers were incorrectly notified that full-time ABA employment qualified them for PSLF." AR 191.

In fact, the notices explain that, based on the evidence plaintiffs submitted, their employers did not appear to qualify as eligible PSLF employers, but that they could submit new evidence and the Department would reconsider its determination. *See, e.g.,* AR 237. Moreover, the Department reconsidered the claims of Mr. Rudert and Ms. Voigt, who wrote letters to the Department regarding the corrective notices, and the Department met and corresponded with the ABA regarding its qualification as an eligible employer. AR 187-93. The Department has provided plaintiff with notice of its interim determination and multiple opportunities to present evidence and have that decision reconsidered – opportunities that continue to this day. Plaintiffs cannot demonstrate that their due process rights were violated simply because they do not agree with the Department's determination.

## **CONCLUSION**

For the foregoing reasons, the Court should grant summary judgment to defendants and enter final judgment in defendants' favor on plaintiffs' claims.

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director

*/s/ Julie S. Saltman*
JULIE S. SALTMAN (DC 4975015)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, D.C. 20530
Tel.: (202) 532-4252
Fax: (202) 616-8470
Email: julie.saltman@usdoj.gov

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 31, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notice of such filing to all parties.

_/s/ Julie S. Saltman_____
JULIE S. SALTMAN

35