# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| AMERICAN BAR ASSOCIATION, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF EDUCATION, *et al.*, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 16-2476-RDM <br> ) <br> ) <br> ) <br> ) <br> ) |

### PLAINTIFFS' MOTION TO ALLOW FOR EXTRA-RECORD REVIEW OR, IN THE ALTERNATIVE, TO ALLOW FOR JUDICIAL NOTICE

Pursuant to the Administrative Procedure Act, 5 U.S.C. § 701, *et seq.*, Plaintiffs, the American Bar Association ("ABA") and Geoffrey Burkhart, Michelle Quintero-Millan, Jamie Rudert, and Kate Voigt (the "Individual Plaintiffs") respectfully move that the Court allow for extra-record review or judicial notice of documents evidencing communications by Defendant, the United States Department of Education (the "Department" or "ED"). Specifically, Plaintiffs request that the Court allow for extra-record review or judicial notice of two email communications between the Department and its Public Service Loan Forgiveness ("PSLF") servicer, the Pennsylvania Higher Education Assistance Agency ("PHEAA"), which does business as FedLoan Servicing. These documents are included as Exhibits B and C to the accompanying Memorandum of Points and Authorities.

As explained in the accompanying Memorandum of Points and Authorities, the Court's consideration of these documents is warranted because they provide irrefutable evidence of the Department's changed interpretations of the relevant statutory and regulatory terms at issue in this case. In their combined cross-motion for summary judgment and opposition to Plaintiffs' motion

for summary judgment, Defendants deny that these changes of interpretation took place.  A proposed order is attached hereto.

Dated:  August 21, 2017

>Respectfully submitted,
>
> /s/ Chong S. Park
>
>Chong S. Park (D.C. Bar No. 46050)
>John T. Dey (D.C. Bar No. 1029475)
>Edward F. Roche (D.C. Bar No. 1029012)
>ROPES & GRAY LLP
>2099 Pennsylvania Avenue, NW
>Washington, D.C. 20006
>(202) 508-4600
>Chong.Park@ropesgray.com
>
>*Attorneys for Plaintiffs*

## LOCAL CIVIL RULE 7(m) STATEMENT

Undersigned counsel for Plaintiffs conferred in good faith with counsel for Defendants regarding the substance of this motion.  Defendants oppose the motion.

> /s/     Chong S. Park
>
>Chong S. Park (D.C. Bar No. 46050)
>John T. Dey (D.C. Bar No. 1029475)
>Edward F. Roche (D.C. Bar No. 1029012)
>ROPES & GRAY LLP
>2099 Pennsylvania Avenue, NW
>Washington, D.C. 20006
>(202) 508-4600
>Chong.Park@ropesgray.com

## CERTIFICATE OF SERVICE

      I hereby certify that on this 21st day of August, 2017, I electronically filed the foregoing motion with the Clerk of the Court using the Court's electronic filing system, which will send a notice of electronic filing to all Counsel of Record.

                                                                                                                    /s/     *Chong S. Park*

                                                                                                                Chong S. Park

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN BAR ASSOCIATION, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF EDUCATION, *et al.*,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)  Civil Action No. 16-2476-RDM<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO ALLOW FOR EXTRA-RECORD REVIEW OR, IN THE ALTERNATIVE, TO ALLOW FOR JUDICIAL NOTICE**

**INTRODUCTION**

Plaintiffs challenge as arbitrary and capricious Defendant the U.S. Department of Education's ("ED" or "Department") change of interpretation of statutory and regulatory provisions specifying the types of employment that qualify for the Public Service Loan Forgiveness ("PSLF") program. Among those challenged changes of interpretation include the Department's adoption of a "primary purpose" standard for the provision of "public interest law services," and the Department's new requirement that "public education" services be provided in a "school or school-like setting." *See* Memorandum in Support of Plaintiffs' Motion for Summary Judgment ("Pls.' Mot.") at 31-32. In its opposition to Plaintiffs' motion for summary judgment ("Dep't Opp'n"), the Department denies that these changes of interpretation ever took place, and instead claims that its determinations were "made in individual, informal, interim, nonprecedential adjudications." *See* Dep't Opp'n at 22-25. However, email communications from the Department, which Plaintiffs obtained only since the Department filed its opposition, show unequivocally that the Department did, in fact, adopt and apply its new interpretations on a systematic basis, not just with respect to its decisions regarding Plaintiffs' employment eligibility

1

for the PSLF program.

The relevant extra-record evidence, which is in the Department's possession by virtue of its employees having participated in the communications, is:

A. February 23, 2017 Email Exchange between ED and FedLoan Servicing (attached hereto as **Exhibit B**).

B. July-August 2014 Email Exchange between ED and FedLoan Servicing (attached hereto as **Exhibit C**).

Plaintiffs obtained these extra-record documents in response to a public records request submitted pursuant to the Pennsylvania Right-to-Know Act ("RTKL"), 65 P.S. § 67.101, *et seq.* *See* Declaration of Edward F. Roche ¶¶ 4-6, attached hereto as **Exhibit A**. The Pennsylvania Higher Education Assistance Agency ("PHEAA"), which does business as FedLoan Servicing, contracts with the Department to provide services related to the administration of the PSLF program. *See* Pls.' Mot. at 3; Dep't Opp'n at 1. The extra-record documents reveal communications between the Department and FedLoan Servicing that include discussions of the Department's adoption of its new "primary purpose" and "public education" interpretations.

Plaintiffs respectfully move the Court to review these communications as extra-record evidence. These documents arose after the Department's actions, more clearly explain those actions, and demonstrate the incorrect nature of the Department's decisions.[1] In the alternative, Plaintiffs move the Court to take judicial notice of these documents as public records.

---

[1] Plaintiffs maintain, as argued in their combined response in opposition to the Department's motion for summary judgment and reply in support of Plaintiffs' motion for summary judgment, that sufficient evidence exists in the record to demonstrate the Department's change of interpretation. Plaintiffs' Combined Response in Opposition to Defendants' Motion for Summary Judgment and Reply in Support of Plaintiffs' Motion for Summary Judgment ("Pls.' Reply") at 16-21. However, to the extent the Court finds the record evidence inconclusive on this question, Plaintiffs request that the Court consider in tandem with such evidence the extra-record evidence presented here.

**ARGUMENT**

I.   **THE COURT SHOULD CONSIDER EXTRA-RECORD EVIDENCE TO AID ITS REVIEW**

The Department's communications with FedLoan Servicing should be reviewed as extra-record evidence. These communications speak directly to a question of central importance in this case, namely, whether the Department changed its interpretations of relevant statutory and regulatory provisions that define qualifying employment for the PSLF program. The Department denies that these changes took place, and instead claims that they were made in "individual, informal, interim, nonprecedential adjudications." Dep't Opp'n at 25; *see id.* at 28-29 ("[T]he notices and letters were individualized, non-final determinations, which the Court should not review as statements of the agency's generally applicable policy in administering the PSLF."). The newly uncovered documents, however, reveal just the opposite: they show that the Department adopted new interpretations and applied them on a universal basis. Because this evidence assists in explaining the record before the Court, demonstrates that the Department failed to follow proper procedures in adopting the new interpretations, and pertains to a case in which relief is at issue, the Court should consider it as extra-record evidence that is highly relevant to its review.

The default rule in cases involving challenges to agency action under the Administrative Procedure Act ("APA") is that a court's review is normally limited to the administrative record. *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985). However, in *Esch v. Yeutter*, 876 F.2d 976 (D.C. Cir. 1989), the D.C. Circuit set forth a list of situations in which a court may consider extra-record evidence to aid its review. Among these, as relevant to this case, are "when agency action is not adequately explained in the record before the court"; "in cases where evidence arising after the agency action shows whether the decision was correct or

3

not"; and "in cases where relief is at issue." *Id.* at 991. Although the application of the *Esch* factors has since been limited to those cases in which plaintiffs "challenge gross procedural deficiencies—such as where the administrative record itself is so deficient as to preclude effective review," *Hill Dermaceuticals, Inc. v. FDA*, 709 F.3d 44, 47 (D.C. Cir. 2013), they are nonetheless applicable here. This is because the extra-record evidence that Plaintiffs have uncovered contains "background information . . . needed to determine whether the agency considered all the relevant factors" and because "the agency failed to explain administrative action so as to frustrate judicial review." *Silver State Land, LLC v. Beaudreau*, 59 F. Supp. 3d 158, 163-64 (D.D.C. 2014) (internal quotation marks and citations omitted).

The communications between the Department and FedLoan Servicing demonstrate conclusively that the Department changed its interpretations to add a "primary purpose" requirement for all qualifying public service organizations and a "school or school-like setting" limitation to the definition of "public education." In addition, they reveal that the Department failed to follow adequate process and procedure in doing so.

In an email exchange that occurred on February 23, 2017, FedLoan Servicing employee Kimberly Myers wrote to the Department in an effort to obtain clarity about a new "primary purpose" standard FedLoan Servicing had been instructed to apply to private organizations that provide PSLF-qualifying public services. Ms. Myers observed that the Department had indicated in response letters to three such organizations that "the organization's 'primary purpose' has to be to provide one of the qualifying services." Ex. B at 1. She proceeded to relay FedLoan Servicing's "concern[] as to whether or not this guidance is *directly conflicting with how we have been evaluating certain organizations*." *Id.* (emphasis added). As Ms. Myers recounted, FedLoan Servicing and the Department "together" had previously determined that another

organization qualified for PSLF as a not-for-profit organization that provided public health services, even though FedLoan Servicing believed the organization's primary purpose was to provide health insurance to its members. *Id.* Accordingly, she "want[ed] to ensure that [FedLoan Servicing is] *still ok to approve organizations . . . on the basis that they employ an eligible position.*" *Id.* (emphasis added). In response, a Department employee, Ian Foss, explained that, unless a "*significant* part of what [the organization does] is employ individuals who provide actual health care to people they insure," the organization would not qualify, and therefore concluded that "we need to do a retraction in this case." *Id.* He then asked Ms. Myers to "comb through all those organizations that we've approved under 'public health' and provide us a list, *like you've done for public education and public interest legal* [*sic*] *services.*" *Id.* (emphasis added).

This exchange provides clear evidence that the Department adopted its "primary purpose" standard as a new interpretation of the regulation's requirements for "public service organizations," in conflict with its prior interpretation and guidance provided to FedLoan Servicing, which contained no such limiting requirement. As a result, it instructed FedLoan Servicing to retract prior notices of approval for those organizations that did not meet the new (and still undefined) "primary purpose" test.

Another email exchange from July and August 2014 similarly provides insight into the Department's change of interpretation, this time with respect to the definition of "public education." In this exchange, FedLoan Servicing employee Diane Freundel wrote to the Department seeking an explanation in response to a borrower inquiry as to why the borrower's employer did not qualify as a "private non-profit providing public education." Ex. C at 1. Ms. Freundel wrote to the Department: "I know we've discussed that public education must be

structured and pedagogical in nature; however, I can't find anything definitive that indicates such. *I reviewed the statute, the regulations, the preamble to both the NPRM and the final rules, and can't find anything that defines public education.*" *Id.* (emphasis added). Several weeks later, the same Department employee, Mr. Foss, replied, reporting that the Department had "*settled . . . on a definition of public education!* For PSLF, public education services are those that provide educational enrichment or support *directly to students or their families in a school or school-like setting*." *Id.* (emphasis added). Based on this new definition, he informed Ms. Freundel that the Department agreed that the organization in question did not qualify. *Id.*

The 2014 email exchange makes clear that the Department had not previously adopted its limiting definition for "public education." In other words, it created and applied a new interpretation to trump its prior interpretation of that term.

Defendants argue repeatedly that the Department did not change any of its interpretations, and that the administrative record contains no evidence of it having done so. *See, e.g.*, Dep't Opp'n at 30 ("there was no about face by the agency with respect to any policy or interpretation"); *id.* ("the Department's interpretation of the statute and the regulations has been consistent and unchanged"); *id.* ("Plaintiffs' claim that the Department acted retroactively without statutory authorization is . . . premised on the erroneous assertions that the Department changed its policy, which . . . is not supported by any record evidence"). Relatedly, they argue that the Department's decisions are individualized determinations that cannot be read to have broader applicability. *See id.* at 29 (contending that the Department's letters to Plaintiffs "do not purport to set forth a policy that would apply to any other decision by the agency"). While Plaintiffs maintain that there exists sufficient evidence in the record to demonstrate otherwise, *see* Pls.' Reply at 16-21, to the extent the Court remains skeptical, these additional

communications between the Department and its PSLF servicer should erase any doubts. They flatly contradict the Department's arguments about the nature of the its actions, thus revealing the truth about the new interpretations, which the Department "failed to explain," apparently in order "to frustrate judicial review." *Silver State Land*, 59 F. Supp. 3d at 164. The consideration of these documents therefore will "enable judicial review to become effective." *Calloway v. Harvey*, 590 F. Supp. 2d 29, 38 (D.D.C. 2008) (quoting *Esch*, 876 F.2d at 991)).

Moreover, the communications expose the lack of *any* proper procedure pursued by the Department in changing its interpretations. In both exchanges, Mr. Foss indicated that he had consulted the Department's general counsel, who signed off on the new standards. *See* Ex. B at 1; Ex. C at 1. But these types of closed-door deliberations in determining a widely applicable policy hardly amount to the minimum level of notice required under the APA, much less notice-and-comment rulemaking. *See Chrysler Corp. v. Brown*, 441 U.S. 281, 316 (1979) ("In enacting the APA, Congress made a judgment that notions of fairness and informed administrative decisionmaking require that agency decisions be made only after affording interested persons notice and an opportunity to comment."); *Batterton v. Marshall*, 648 F.2d 694, 704 (D.C. Cir. 1980) ("Section 553 was enacted to give the public an opportunity to participate in the rule-making process. It also enables the agency promulgating the rule to educate itself before establishing rules and procedures which have a substantial impact on those who are regulated.") (citation omitted). The communications prove that the Department did not "consider[] all the relevant factors" when it changed its interpretations. *Silver State Land*, 59 F. Supp. 3d at 164.

Given its position that there was no change of interpretation, the Department should have included these documents as part of the administrative record. There is no question that the communications were in the Department's possession, as they involved communications to and

7

from Department employees. And it is clear from the face of the documents that they were before the Department at the time it made its changes of interpretation. "[A]n agency may not skew the record in its favor by excluding pertinent but unfavorable information." *Fund for Animals v. Williams*, 391 F. Supp. 2d 191, 197 (D.D.C. 2005). Especially because the Department challenges the level of support in the record for Plaintiffs' claims that it changed its interpretations, it may not "exclud[e] from that record information in its own files which has great pertinence to the proceeding in question." *Envtl. Def. Fund, Inc. v. Blum*, 458 F. Supp. 650, 661 (D.D.C. 1978).

For all these reasons, admitting the Department's communications with FedLoan Servicing as extra-record evidence is warranted and would substantially aid the Court's review of the Department's actions. These additional documents fill any gaps that may exist in the administrative record, and they demonstrate the failure of the Department to engage in any proper reasoning or to follow required procedures before changing its interpretations. In addition, the allowance of extra-record evidence is warranted by the urgent nature of Plaintiffs' requests for relief. *Esch*, 876 F.2d at 991. As a result of the Department's actions, the ABA continues to suffer adverse impacts on its ability to recruit and retain talented employees to carry out its public service mission. Pls.' Mot. at 34. The Individual Plaintiffs have been retroactively stripped of payment credits toward obtaining loan forgiveness, and some remain unsure as to whether they can remain safely in their positions without falling further behind. *Id.* at 34-36. Defendants should not be allowed simply to claim that they made no changes of interpretation and thereby escape review of their unlawful actions. The Court should consider the Department's communications with FedLoan Servicing as extra-record evidence.

## II.   THE COURT SHOULD TAKE JUDICIAL NOTICE OF THE DEPARTMENT'S COMMUNICATIONS WITH FEDLOAN SERVICING, WHICH ARE PUBLIC RECORDS

In addition to the reasons set forth above, the Court may review the Department's communications with FedLoan Servicing under the doctrine of judicial notice.  Because the documents were obtained pursuant to Pennsylvania's RTKL, they may be judicially noticed as matters of public record.  *See* Fed. R. Evid. 201(b); *In re Am. Apparel, Inc. S'holder Litig.*, 855 F. Supp. 2d 1043, 1064 (C.D. Cal. 2012) (taking judicial notice of documents obtained by plaintiffs through a Freedom of Information Act ("FOIA") request).  Courts may also take judicial notice of documents so obtained in actions arising under the APA.  *See Menominee Indian Tribe of Wis. v. Dept. of Interior*, No. 09-C-496, 2010 WL 4628916, *4-6 (E.D. Wis. Nov. 4, 2010) (taking judicial notice of extrinsic evidence in case involving APA challenge); *Cf. Cnty. of San Miguel v. Kempthorne*, 587 F. Supp. 2d 64, 73-78 (D.D.C. 2008) (allowing supplementation of the administrative record with documents obtained through a FOIA request).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion to allow for extra-record review or, in the alternative, to allow for judicial notice.

Dated:  August 21, 2017

                                            Respectfully submitted,

                                          /s/     *Chong S. Park*

Chong S. Park (D.C. Bar No. 46050)
John T. Dey (D.C. Bar No. 1029475)
Edward F. Roche (D.C. Bar No. 1029012)
ROPES & GRAY LLP
2099 Pennsylvania Avenue, NW
Washington, D.C. 20006
(202) 508-4600
Chong.Park@ropesgray.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of August, 2017, I electronically filed the foregoing Memorandum of Points and Authorities with the Clerk of the Court using the Court's electronic filing system, which will send a notice of electronic filing to all Counsel of Record.

                                               /s/    *Chong S. Park*

                                                   Chong S. Park