**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICAN BAR ASSOCIATION, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF EDUCATION, *et al.*,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No. 16-2476-TJK |

**PLAINTIFF JAMIE RUDERT'S MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF HIS MOTION TO ALTER OR AMEND THE JUDGMENT**

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

FACTUAL BACKGROUND ........................................................................................... 1

ARGUMENT .................................................................................................................... 3

I.   THE COURT SHOULD RECONSIDER ITS GRANT OF SUMMARY
     JUDGMENT AGAINST MR. RUDERT ............................................................... 3

     A.   Rule 59(e) Standard ..................................................................................... 4

     B.   The Evidence is Newly Discovered and Outcome Determinative, and Could
          Not Have Been Discovered Earlier Despite Mr. Rudert's and Counsel's
          Exercise of Reasonable Diligence ............................................................... 4

          1.   The Evidence is Newly Discovered and Highly Relevant to the Case's
               Outcome .......................................................................................... 4

          2.   Mr. Rudert's and Counsel's Efforts to Obtain Evidence Constituted
               Reasonable Diligence ..................................................................... 8

               a.   Mr. Rudert Undertook Extensive Efforts to Uncover the Reason Behind His
                    Retroactive Denial ........................................................... 9

               b.   Counsel Specifically Sought Records Pertaining to the Department's
                    Rationale for Reversing Its Position on the PSLF Eligibility of VVA as an
                    Employer ......................................................................... 11

     C.   The Unique and Extraordinary Circumstances of This Case Justify Relief for
          Mr. Rudert .................................................................................................. 15

II.  THE COURT'S REVIEW OF EXTRA-RECORD EVIDENCE IS AGAIN
     WARRANTED ...................................................................................................... 17

III. THE COURT SHOULD RULE IN MR. RUDERT'S FAVOR ON THE
     PROCEDURAL APA CLAIM (COUNT I), AND SHOULD NOT GRANT
     SUMMARY JUDGMENT IN THE DEPARTMENT'S FAVOR ON MR.
     RUDERT'S OTHER CLAIMS .............................................................................. 18

CONCLUSION ............................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bain v. MJJ Prods., Inc.*,
   751 F.3d 642 (D.C. Cir. 2014) ................................................................................9

*Computer Prof'ls for Soc. Responsibility v. U.S. Secret Serv.*,
   72 F.3d 897 (D.C. Cir. 1996) ................................................................................16

*Duckworth v. United States*,
   808 F. Supp. 2d 210 (D.D.C. 2011) .........................................................................8

*Goldstein v. Treasury Inspector Gen. for Tax Admin.*,
   278 F. Supp. 3d 131 (D.D.C. 2017) .........................................................................9

*Good Luck Nursing Home, Inc. v. Harris*,
   636 F.2d 572 (D.C. Cir. 1980) ........................................................................15, 16

*Niedermeier v. Office of Baucus*,
   153 F. Supp. 2d 23 (D.D.C. 2001) ...........................................................................4

*Salazar ex rel. Salazar v. Dist. of Columbia*,
   633 F.3d. 1110 (D.C. Cir. 2011) ............................................................................15

**Statutes**

Administrative Procedure Act, 5 U.S.C. § 500 *et seq.*..................................................8

20 U.S.C. § 1087e(m) ................................................................................................2

Pennsylvania Right-to-Know Law, 65 P.S. § 67.101, *et seq.* .....................................11

**Other Authorities**

U.S. Const. amend. V ...............................................................................................20

34 C.F.R. § 685.219 ...................................................................................................2

Fed. R. Civ. P. 59(b) ..................................................................................................4

Fed. R. Civ. P. 59(e) ..................................................................................................4

Fed. R. Civ. P. 60(b) ..................................................................................................4

Fed. R. Civ. P. 60(b)(2) ...........................................................................................4, 9

Fed. R. Civ. P. 60(b)(6)..........................................................................................................4, 15, 16

## INTRODUCTION

Plaintiff Jamie Rudert requests that the Court alter or amend its recent summary judgment ruling.  Newly discovered evidence has been obtained that now answers the question—as raised by this Court itself in the summary judgment hearing—whether the retroactive denial of Mr. Rudert's Public Service Loan Forgiveness ("PSLF") eligibility as a former employee of Vietnam Veterans of America ("VVA") was based on the imposition of a "primary purpose" standard.  Following the Court's issuance of the summary judgment ruling, a former colleague of Mr. Rudert reached out and provided a letter in which the U.S. Department of Education ("Department") demonstrates that the denial of her PSLF eligibility as a former VVA employee was based on the application of the "primary purpose" interpretation.  This denial letter from the Department—which was issued six months after the parties completed summary judgment briefing in this case—was heretofore unknown and unavailable to Mr. Rudert.  Accordingly, as set forth below, the Court should consider this extra-record evidence and now grant summary judgment in favor of Mr. Rudert—consistent with the reasoning and analysis the Court employed in ruling in favor of the other Individual Plaintiffs in this action.

## FACTUAL BACKGROUND

On February 22, 2019, the Court issued an Order granting summary judgment in this case on behalf of Defendants, the Department and Secretary of Education Betsy DeVos, against Plaintiff Jamie Rudert.  (ECF No. 48).  Central to the Court's reasoning in its Opinion was the Court's finding that the evidence did not support Mr. Rudert's argument that the Department's retroactive denial of his eligibility for the PSLF program—when he was working for his former employer, VVA—resulted from the Department's changed interpretation of the program's employment eligibility criteria as laid out in the governing statute and regulation.  *See* Mem.

1

Opinion (ECF No. 49), at 38-39.[1]  During oral argument, the Court pressed Mr. Rudert's counsel to explain how the evidence demonstrated that the Department had changed its interpretation to deny him eligibility.  The Court ultimately asked whether it could infer that the Department had reversed Mr. Rudert's eligibility determination by applying the (now vacated) "primary purpose" standard.  The evidence available at the time, while suggestive of this possibility, was insufficient to reach this conclusion.

Since the Court entered judgment, however, Mr. Rudert has discovered new evidence squarely answering the Court's question in the affirmative.  This evidence—a March 2018 letter from the Department's PSLF servicer, FedLoan Servicing, to one of Mr. Rudert's former VVA colleagues, Amanda Radke, retroactively denying the PSLF eligibility of her VVA employment—was neither known nor available to Mr. Rudert prior to judgment, despite his and counsel's extensive efforts to obtain any and all evidence explaining the reason for the shift in the Department's position regarding VVA's eligibility.  The reasoning in the letter is more detailed than the explanation Mr. Rudert received for his denial in August 2016.  At that time, the Department informed Mr. Rudert that his VVA employment did not qualify because VVA "do[es] not provide [] services outright" to disabled veterans.  AR 331.  The subsequent letter to Ms. Radke, whose period of employment at VVA overlapped entirely with that of Mr. Rudert,

---

[1] Mr. Rudert maintains that the evidence before the Court prior to judgment was sufficient to demonstrate that the Department changed its interpretation of the relevant eligibility criteria, thus resulting in the retroactive denial of his PSLF eligibility, and that regardless of whether the Department's interpretation reflected a change in its approach, the interpretation was not consistent with the terms of the PSLF statute, 20 U.S.C. § 1087e(m), and regulation, 34 C.F.R. § 685.219.  Mr. Rudert also maintains that even under the interpretation the Department provided to him personally, his employment qualified; that he did not forfeit the argument that his employment qualified under the interpretation the Department provided to him; and that the Department's retroactive denial of his payment credits while employed at VVA denied him a constitutionally protected property interest.  Even so, Mr. Rudert brings this motion to provide previously unavailable but conclusive evidence demonstrating that a change of interpretation was indeed the impetus for his denial.

stated that her VVA employment did not qualify because VVA does not "provide[] services directly to individuals with disabilities *as part of its primary purpose.*"  This letter thus flatly exposes the Department's earlier explanation as nothing more than a variant of the Department's unlawfully adopted "primary purpose" standard that the Court vacated in its Order.[2]

## ARGUMENT

## I.   THE COURT SHOULD RECONSIDER ITS GRANT OF SUMMARY JUDGMENT AGAINST MR. RUDERT

The new evidence Mr. Rudert has discovered proves that the Department applied an unlawfully changed interpretation of the qualifying criteria for the PSLF program when the Department determined that VVA was no longer a public service organization under the program's governing regulation.  This change resulted in the Department retroactively stripping Mr. Rudert and his former VVA colleagues of their years of payment credits accumulated toward obtaining loan forgiveness under the PSLF program.

The Court should alter or amend its judgment with respect to Mr. Rudert because the evidence is newly discovered despite the high level of diligence Mr. Rudert and counsel exercised in attempting to obtain information regarding why the Department reversed its position.  In addition, in light of the evidence's plain import—that the reason for the Department's reversal was its adherence to a changed interpretation that this Court has found to be arbitrary and capricious and has vacated—letting the judgment stand as is would result in a grave injustice to Mr. Rudert and others who relied on assurances that their employment at VVA rendered them eligible to participate in PSLF.

---

[2] *See* Mem. Opinion at 31-35 (ECF No. 49) (finding that the Department changed its interpretation in reaching the "primary purpose" standard that it applied to two of the other Individual Plaintiffs in this case, Geoffrey Burkhart and Michelle Quintero-Millan); *id.* at 41-42 (holding that the Department did not follow the procedures the Administrative Procedure Act requires when adopting the "primary purpose" standard).

### A.     Rule 59(e) Standard

Rule 59(e) specifies no requirements or guidelines to determine whether a motion brought under this rule should be granted.  The rule states simply that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment," a requirement Mr. Rudert has met here.[3]  In practice, however, courts have looked to the reasons listed under Rule 60(b) as permissible grounds for granting relief from a final judgment, order, or proceeding when considering Rule 59(e) motions.  *See, e.g.*, *Niedermeier v. Office of Baucus*, 153 F. Supp. 2d 23, 29 (D.D.C. 2001) (considering a Rule 59(e) motion for which the plaintiff relied on new evidence introduced after the entry of judgment).[4]  At least two of those reasons apply here.  The first is that Mr. Rudert's motion is based on newly discovered evidence that could not have been discovered at an earlier date despite the exercise of reasonable diligence.  *See* Fed. R. Civ. P. 60(b)(2).  The second is that the extraordinary circumstances of this case justify the granting of relief.  *See* Fed. R. Civ. P. 60(b)(6).

### B.     The Evidence is Newly Discovered and Outcome Determinative, and Could Not Have Been Discovered Earlier Despite Mr. Rudert's and Counsel's Exercise of Reasonable Diligence

#### 1.     The Evidence is Newly Discovered and Highly Relevant to the Case's Outcome

The evidence Mr. Rudert seeks to introduce is a denial letter from FedLoan Servicing to

---

[3] Mr. Rudert brings forth this motion within the required 28-day timeframe after the Court entered judgment on February 22, 2019.  (ECF No. 48).

[4] Rule 60(b)(2) allows for relief from a final judgment for "newly discovered evidence that, with reasonable diligence, could not have been discovered *in time to move for a new trial under Rule 59(b)*."  Fed. R. Civ. P. 60(b)(2) (emphasis added).  Rule 59(b), in turn, provides that a "motion for a new trial must be filed *no later than 28 days after the entry of judgment*."  Fed. R. Civ. P. 59(b) (emphasis added).  Thus, it would appear that the discovery of highly relevant new evidence within the 28-day period, regardless of whether it could have been discovered with reasonable diligence at an earlier time, is sufficient to merit consideration of a Rule 59(e) motion.  However, in deference to the way Rule 59(e) has been applied in prior cases and in an abundance of caution, Mr. Rudert assumes that the reasonable diligence requirement applies here, where the new evidence was discovered within 28 days of the entry of judgment.

his former VVA colleague, Amanda Radke, dated March 20, 2018.  *See* Ex. 1 to Decl. of

Amanda Radke ("Radke Decl."), attached hereto as Ex. B.   Similar to the explanation the

Department ultimately provided Mr. Rudert in August 2016, the letter sent to Ms. Radke claimed

that the Department "could find no evidence that [VVA] provides services directly to individuals

with disabilities . . . ."  *Id.*; *see* AR 331 (Department letter to Representative Eleanor Holmes

Norton explaining the reason for Mr. Rudert's denial as VVA not providing services to disabled

veterans "outright").  But this time, *unlike* the explanation provided to Mr. Rudert, Ms. Radke's

denial letter contained an important additional detail:  that the Department could find no

evidence that VVA provided such services directly "as part of its *primary purpose*."  Ex. 1 to

Radke Decl. (emphasis added).

Mr. Rudert was not made aware of the letter's existence until February 26, 2019, a few

days *after* the Court granted summary judgment on behalf of the Department on his claims.  *See*

Decl. of Jamie Rudert ("Rudert Decl.") ¶ 9, attached hereto as Ex. A.  He and Ms. Radke were

not in regular contact after her departure from VVA in June 2015, and their last interaction prior

to late February 2019 had been a chance encounter in 2017, well before Ms. Radke received her

denial letter.  *Id.* ¶ 7; Radke Decl. ¶ 9.  Accordingly, Mr. Rudert did not know that Ms. Radke—

or, for that matter, any other former VVA colleague—had ever received such a letter.   Rudert

Decl. ¶ 10.   Ms. Radke was aware of the pendency of Mr. Rudert's lawsuit against the

Department at the time she received her denial letter, and decided to await the case's outcome in

the hope that the PSLF eligibility of the loan payments Mr. Rudert made while at VVA would be

restored, and by extension, that such an outcome would apply to herself and others at VVA who

the Department had denied.  Radke Decl. ¶ 11.

Crucially, Ms. Radke was not aware that the reason Mr. Rudert received for his denial

differed in any significant way from the explanation she had received.  *Id.* ¶ 8.  Indeed, she was

not aware that the Department had provided Mr. Rudert *any* reason for his denial.  *Id.*  Mr.

Rudert no longer worked for VVA at the time he received his denial letter, and was not in regular

contact with Ms. Radke.  Rudert Decl. ¶¶ 3, 7.  Ms. Radke contacted Mr. Rudert after he shared

on social media a news report of the Court's decision, and only then did she share a copy of her

denial letter with Mr. Rudert.  *Id.* ¶¶ 8-9; Radke Decl. ¶ 13.

Ms. Radke's denial letter is a critical piece of evidence that would have been outcome

determinative for Mr. Rudert had it been discovered prior to the Court's entry of judgment.  It

provides the heretofore missing link proving that the Department's requirement that services to

individuals with disabilities and the elderly be provided "outright" or "directly" was, in fact, an

application of the arbitrarily and capriciously adopted, and now vacated, "primary purpose"

standard.  At oral argument on the parties' cross-motions for summary judgment, the Court

pointedly asked Mr. Rudert's counsel whether the "outright" or "directly" standard could be an

application of the "primary purpose" standard.  Oral Arg. Tr. at 48:23-49:12 (ECF No. 46).

Without this crucial missing evidence, counsel was not able to answer the question definitively.

*See id.*

The relative timing of the Department's communications to Mr. Rudert and Ms. Radke is

important to reaching this conclusion.  The Department first notified Mr. Rudert of its reversal in

April 2016, but provided no reasoning behind its decision except to state that VVA did not

qualify as a public service organization because VVA did not "provide a qualifying service."

AR 277, 282 (April 19 & 21, 2016 notices to Jamie Rudert from FedLoan Servicing).  The

Department finally provided Mr. Rudert an explanation of sorts in August 2016, stating that

VVA did not provide disability-related services "outright" to Vietnam veterans.  AR 331 (August

8, 2016 letter from the Department to Rep. Norton).   Concurrently, the Department was developing and beginning to apply, on a broad basis, its new "primary purpose" standard.  The Department first articulated this standard in a June 2016 letter to the American Bar Association ("ABA"), and reaffirmed the standard in a subsequent letter to the ABA in December 2016.  *See* AR 190-91 (June 21, 2016 letter from Lynn Mahaffie to Jack Rives); AR 192-93 (December 1, 2016 letter from Ted Mitchell to Jack Rives).   Shortly thereafter, the Department changed its official guidance to FedLoan Servicing to apply the "primary purpose" standard in evaluating all private, non-501(c)(3) not-for-profit organizations.   *See* Pls.' Suppl. Mot. for Extra-Record Review, Ex. C (ECF No. 35-3) (July 2017 email between FedLoan Servicing employees noting that updates to FedLoan Servicing's procedural manual were needed to account for the fact that, "[a]s of February 23, 2017, [the Department's Federal Student Aid office] advised [that] a private not-for-profit (non-501(c)(3)) organization should be evaluated based on [its] 'primary purpose'").   And by mid-2017, the Department updated its website to include the "primary purpose" standard, and released a new version of the ECF containing the same.  *See* Pls.' Reply at 18-19 n.6 (ECF No. 25); Pls.' Reply in Supp. of Mot. for Extra-Record Review at 5 (ECF No. 32).   Ms. Radke subsequently received her denial letter in March 2018, but instead of simply parroting the reason provided to Mr. Rudert for VVA's ineligibility, as one might expect, the Department informed Ms. Radke that VVA did not directly provide services to disabled individuals "as part of its *primary purpose*."  Ex. 1 to Radke Decl. (emphasis added).

This revised articulation leaves no doubt that the Department's denial of VVA's eligibility as a public service organization—and thus necessarily, the Department's retroactive denial of Mr. Rudert's PSLF eligibility for the period of time when he was a VVA employee— was indeed precipitated by a change in the Department's interpretation of the regulation's

eligibility criteria for private, non-501(c)(3) not-for-profit organizations. This Court has invalidated that change, which required that all such organizations provide a qualifying public service as the organization's "primary purpose," as an arbitrary and capricious change of interpretation that the Department adopted without following the requirements of the Administrative Procedure Act, 5 U.S.C. § 500 *et seq. See* Order (ECF No. 48); Mem. Opinion at 39-42 (ECF No. 49). Had the newly discovered evidence been available prior to the Court's entry of judgment, Mr. Rudert would have prevailed on his summary judgment claim, as did the other Individual Plaintiffs whose eligibility was denied under the "primary purpose" standard.

### 2. Mr. Rudert's and Counsel's Efforts to Obtain Evidence Constituted Reasonable Diligence

In order to satisfy the "reasonable diligence" requirement when seeking relief from judgment on the basis of newly discovered evidence, the movant must demonstrate that he was "justifiably ignorant of the [newly discovered] evidence despite due diligence." *Duckworth v. United States*, 808 F. Supp. 2d 210, 216 (D.D.C. 2011) (internal citations omitted). As detailed below, Mr. Rudert and counsel spent a great deal of time and resources to uncover the Department's rationale for denying VVA's status as a PSLF-qualifying employer, and the impetus for that change. Mr. Rudert and counsel pursued this information in spite of the fact that the Department was responsible for compiling and certifying a comprehensive administrative record that should have reflected these points. Moreover, Ms. Radke's denial letter did not even exist until several months after the parties completed their briefing on summary judgment in September 2017, and after Plaintiffs twice moved the Court to consider extra-record evidence that emerged primarily from counsel's public records requests. In light of the Department's obstructive behavior (necessitating Mr. Rudert's and counsel's extensive efforts to obtain relevant information) and the timing of when Ms. Radke received her letter and ultimately

informed Mr. Rudert about its existence, Mr. Rudert's ignorance of the new evidence was justified.[5]

Importantly, courts have deemed the pursuit of a public records request for the evidence at issue as an exercise in reasonable diligence.  In *Goldstein*, for example, the court credited the movant's obtaining of evidence through a Freedom of Information Act ("FOIA") request as an exercise in reasonable diligence, even though the movant knew of the evidence's prior existence and had constructive possession of it at an earlier date.  *See* 278 F. Supp. 3d at 136.  In the present case, neither Mr. Rudert nor counsel had prior knowledge of the evidence's existence, yet counsel nonetheless pursued a wide-reaching public records request seeking documents addressing the eligibility of VVA as a provider of public service for individuals with disabilities and the elderly and the application of the "primary purpose" standard to all non-501(c)(3) not-for-profit organizations, including VVA.  That the most relevant types of documents were not forthcoming speaks much more directly to the Department's and FedLoan Servicing's lack of interest in transparency regarding their actions rather than any deficiency in diligence on the part of Mr. Rudert or counsel.

a.    Mr. Rudert Undertook Extensive Efforts to Uncover the Reason Behind His Retroactive Denial

Immediately upon receiving notice of his denial in April 2016, Mr. Rudert went to great

---

[5] Indeed, the D.C. Circuit has held that even in cases in which the moving party *is* aware of the existence of "newly discovered" evidence at an earlier date, such awareness does not necessarily preclude the treatment of such evidence as "newly discovered" under Rule 60(b)(2).  *See Bain v. MJJ Prods., Inc.*, 751 F.3d 642, 647 (D.C. Cir. 2014) ("mere awareness of evidence during trial, standing alone, [does not] categorically preclude[] later treating the evidence as 'newly discovered' under Rule 60(b)(2)").  "[E]vidence that was lost, hidden, or unavailable during trial could qualify as 'newly discovered evidence' when later found, even if the evidence was known to the movant at the time of trial."  *Id.*  However, "a party's prior knowledge of the evidence can affect a court's assessment of whether the party had exercised reasonable diligence in seeking out the evidence."  *Goldstein v. Treasury Inspector Gen. for Tax Admin.*, 278 F. Supp. 3d 131, 139 (D.D.C. 2017) (citing *Bain*, 751 F.3d at 647).  Mr. Rudert had *no* prior knowledge of the evidence at issue here, so the evidence's treatment as newly discovered is well grounded.

lengths to ascertain the reasoning behind the Department's sudden reversal of position, as the notices contained no explanation whatsoever.  *See* AR 277 (April 19, 2016 notice stating "Organization Does Not Qualify"); AR 282 (April 21, 2016 letter stating only that "the organization does not provide a qualifying service").  His extensive efforts are well documented in the record before the Court.  *See* Pls.' Mot. Summ. J. at 21 (ECF No. 17) & Ex. B (Decl. of Jamie Rudert) ¶ 13 (ECF No. 17-2) (explaining that Mr. Rudert called FedLoan Servicing on multiple occasions after receiving his denial letter, submitted a complaint to the Consumer Financial Protection Bureau, and contacted the office of U.S. Representative Eleanor Holmes Norton, all in an attempt to understand the Department's reasoning for revoking its approval of VVA as a qualifying public service organization); AR 284-331 (Mr. Rudert's correspondence with FedLoan Servicing and the office of Rep. Norton seeking answers for why his period of employment at VVA was denied PSLF eligibility).

At each turn, the Department and FedLoan Servicing failed to provide any clear answer to his inquiries, until finally, in August 2016, in response to an inquiry from Rep. Norton's office, an employee of the Department's Federal Student Aid ("FSA") office explained that the Department had determined that VVA "facilitate[d] the provision of disability-related services to Vietnam Veterans," but that VVA "d[id] not provide the services outright."  AR 331.  (In its cross-motion for summary judgment, the Department restated its position by claiming that VVA "facilitated the provision of disability-related services to Vietnam Veterans, rather than provide them *directly*."  Dep't Mot. Summ. J. at 28 (ECF No. 22) (emphasis added).)  FSA provided no explanation for the Department's change in position other than to claim that Mr. Rudert's prior ECF submissions had been "approved in error."  AR 331.

At the time Mr. Rudert received his denial notice, he had already left VVA to begin

working with his current employer, Paralyzed Veterans of America ("PVA").  Rudert Decl. ¶ 3.

Mr. Rudert did not keep in regular contact with his former VVA colleagues following his

departure from the organization.  *Id.* ¶ 7.  Accordingly, he was not aware that any of his former

colleagues had subsequently received denial notices following the receipt of his own.  *Id.* ¶ 10.

> b.     Counsel Specifically Sought Records Pertaining to the
>        Department's Rationale for Reversing Its Position on the PSLF
>        Eligibility of VVA as an Employer

In addition to Mr. Rudert's efforts to obtain answers from the Department, and as

indicated in the record, counsel pursued its own public records requests seeking any and all

documents that would illuminate the Department's reasons for shifting its position with respect

to VVA.  After the Department certified a surprisingly limited administrative record and denied

the plain fact that it had changed its interpretations of the relevant statutory and regulatory PSLF

eligibility standards at issue in this case, counsel submitted two public records requests to the

Pennsylvania Higher Education Assistance Agency ("PHEAA"), which does business as

FedLoan Servicing, pursuant to Pennsylvania's Right-to-Know ("RTK") Law, 65 P.S. § 67.101,

*et seq.*  *See* Mem. Opinion at 49 n.16 (ECF No. 49); Pls.' Mot. for Extra-Record Review, Ex. A

(Decl. of Edward Roche) ¶ 4 (ECF No. 24-1) ("First Roche Decl."); Pls. Suppl. Mot. for Extra-

Record Review, Ex. B (Decl. of Edward Roche) ¶ 3 (ECF No. 35-2) ("Second Roche Decl.").

The first of these requests, submitted on May 30, 2017, sought, among other items,

> All written communications, and all notes or summaries of oral communications, with the
> Department of Education ***regarding the process for determining whether a non-***
> ***501(c)(3) organization qualifies as "[a] private organization that [provides] . . . public***
> ***service for individuals with disabilities and the elderly"*** for the purposes of the PSLF
> program

and

> All written communications, and all notes or summaries of oral communications, with the
> Department of Education ***regarding whether . . . Vietnam Veterans of America qualifies***

> ***as "[a] private organization that [provides] . . . public service for individuals with disabilities and the elderly"*** for the purposes of the PSLF program.

Ex. 1 (May 30, 2017 RTK Request Form) to Decl. of John Dey ("Dey Decl."), attached hereto as Ex. C (emphasis added).  Plaintiffs submitted two of the documents PHEAA produced in response to this request to the Court as extra-record evidence.  First Roche Decl. ¶ 6; Pls.' Mot. for Extra-Record Review, Exs. B & C (ECF Nos. 24-2, 24-3).  Nonetheless, unsatisfied with the limited scope of documents PHEAA produced in response to this broad request, counsel appealed to the Pennsylvania Office of Open Records ("OOR").  First Roche Decl. ¶¶ 7-9. Despite counsel's arguments to the contrary, the OOR ruled on September 21, 2017 that PHEAA had provided a sufficient response to the request.  Second Roche Decl. ¶ 5.  As a result, counsel appealed the OOR's decision to the Pennsylvania Commonwealth Court, and concurrently submitted a second, even more detailed RTK request to PHEAA on September 29, 2017.  *Id.*; *see* Ex. 2 (Sept. 29, 2017 RTK Request Form) to Dey Decl.

As part of this second request, counsel asked that PHEAA provide, among other items,

> All written communications, both internal and with the U.S. Department of Education, ***discussing the requirement that a non-501(c)(3) organization have a particular "primary purpose"*** for the purposes of the [PSLF] program under 34 C.F.R. § 685.219. In addition to communications discussing this requirement in a general sense, documents responsive to this request should include those that discuss ***whether any particular organization meets this "primary purpose" requirement***;

> All written communications, both internal and with the U.S. Department of Education, ***regarding whether any non-501(c)(3) organization qualifies as a provider of "public service for individuals with disabilities and the elderly"*** for the purposes of the PSLF program under 34 C.F.R. § 685.219;

and

> All written communications, both internal and with the U.S. Department of Education, *regarding whether . . . **[VVA] qualifies as "[a] private organization that [provides] . . . public service for individuals with disabilities and the elderly"*** for the purposes of the PSLF program under 34 C.F.R. § 685.219.

Ex. 2 to Dey Decl. (emphasis added).  Counsel also provided specific search terms for

PHEAA to employ in conducting the search relating to VVA's qualifying status, in an effort to ensure that PHEAA did not arbitrarily limit the scope of the search it conducted for these documents. *Id.* After missing deadlines for production, PHEAA ultimately provided a larger set of documents in response to this request in November 2017, and Plaintiffs submitted two documents from this production as additional extra-record evidence for the Court to consider. Second Roche Decl. ¶¶ 6-7; Pls.' Suppl. Mot. for Extra-Record Review, Exs. C & E (ECF Nos. 35-3, 35-5).

Despite the broad nature of counsel's RTK requests, PHEAA produced no documents specifically showing when the Department added its requirement that VVA and other organizations that provide public services for the disabled and the elderly provide such services "outright" or "directly." Dey Decl. ¶ 6. Indeed, none of the documents PHEAA produced related to VVA at all, with a single exception: a February 23, 2017 email from FedLoan Servicing to the Department noting that the Department had instructed FedLoan Servicing to apply the "primary purpose" standard in denying the eligibility of employees of VVA and two other organizations. *Id.* ¶ 7. This email is among those that Plaintiffs submitted—and that the Court considered—as extra-record evidence. *See* Pls.' Mot. for Extra-Record Review, Ex. B (ECF No. 24-2). Because the available evidence did not link the application of the "primary purpose" standard to the Department's new requirement that services to individuals with disabilities and the elderly be provided "outright" or "directly," however, Plaintiffs could not then have contended with certainty that Mr. Rudert's VVA eligibility had been rescinded because of the "primary purpose" standard.[6] Indeed, the evidence available to Mr. Rudert prior

---

[6] As noted above, the Court raised this very possibility during oral argument on the parties' cross-motions for summary judgment. *See* Oral Arg. Tr. at 48:23-49:12 (ECF No. 46). Counsel agreed at that time that such a conclusion was plausible in light of the Department's application

to judgment could lend itself to one of two possible readings.  First, one might read the evidence as demonstrating that the Department's inclusion of VVA on the "primary purpose" list in its February 2017 email was in error, as it contradicted the reasoning provided to Mr. Rudert. Alternatively, one might assume that the "primary purpose" standard was being applied to VVA *in addition to* the "outright" or "directly" standard.

The Court's reasoning in its Opinion highlights the difficulty in interpreting the evidence available prior to judgment.  The Court concluded:  "[T]he purported Outright Provision of Services standard appears only to reflect a straightforward application of the regulation to Rudert's case, rather than a new interpretation, given that its plain language mandates that a qualifying organization '[p]rovide[]' particular public services."  Mem. Opinion at 39 (ECF No. 49) (quoting 34 C.F.R. § 685.219(b)).   In other words, the Court held that "provide public services *outright*" was a fair reading of the regulation's requirement that the employer "[p]rovide[] . . . public services," and that the Department could therefore have been applying the regulation consistently rather than forming a new interpretation.  *See* Mem. Opinion at 46 (ECF No. 49).  The new evidence shows this to be incorrect.  "Outright" was not being applied as a natural way to read the requirement that the organization provide public services.  Rather, it was being applied as a variant of—and precursor to—the requirement that an organization provide public services as part of its primary purpose.

It is now clear that counsel did not receive all the documents it was due in response to its RTK requests, despite exercising more-than-reasonable diligence to obtain them.   This inadequate provision of documents occurred despite the fact that Mr. Rudert should have been

---

of the "primary purpose" standard across the board, as reflected by the Department's insertion of the requirement into the most recent version of the ECF, but could not say so definitively.  *Id.* And while the Court did not make the same direct inquiry of the Department's counsel at oral argument, the Department's counsel neither confirmed nor denied the Court's speculation.

able to rely on the Department to certify an administrative record sufficiently capturing all facts relevant to the litigation.  Instead, the Department chose to obscure its decisionmaking, leaving counsel no alternative but to pursue public records requests to prevent the Department's unlawful actions from evading the Court's review.

### C.     The Unique and Extraordinary Circumstances of This Case Justify Relief for Mr. Rudert

In addition to meriting reconsideration in light of newly discovered evidence, the Court should reconsider its grant of summary judgment against Mr. Rudert because of the extraordinary circumstances that his case presents.  Under Federal Rule of Civil Procedure 60(b)(6), a court may relieve a party from a final judgment for "any other reason that justifies relief."  This provision, on which courts rely "only sparingly," *see Salazar ex rel. Salazar v. Dist. of Columbia*, 633 F.3d. 1110, 1119-20 (D.C. Cir. 2011) (internal quotation marks and citation omitted), is nonetheless actionable "when a party timely presents a previously undisclosed fact so central to the litigation that it shows the initial judgment to have been manifestly unjust." *Good Luck Nursing Home, Inc. v. Harris*, 636 F.2d 572, 577 (D.C. Cir. 1980).  Mr. Rudert has satisfied this standard.

If allowed to stand, the judgment against Mr. Rudert would result in the Department continuing to apply an arbitrarily and capriciously adopted standard this Court has deemed unlawful as applied to the other Individual Plaintiffs in this case.  As was the case with two of the other Individual Plaintiffs, the Department initially informed Mr. Rudert that his employment qualified for the PSLF program.  In reliance on those assurances, Mr. Rudert continued dutifully in his role at VVA for nearly three-and-a-half years, accumulating mounting outstanding loan balances in the process.  *See* Mem. Opinion at 12-13 (ECF No. 49).  Subsequently, consistent with the experience of the other Individual Plaintiffs, the Department informed Mr. Rudert that it

had reversed course with respect to his employer's eligibility, thereby erasing all the payment credits he had accumulated toward forgiveness while employed at VVA and throwing his personal finances and ability to make major life decisions into disarray. *See id.* at 23-24. Despite these consistencies of experience, the Court found that Mr. Rudert's denial, unlike those of the other Individual Plaintiffs, had not been based on a change of interpretation. *See id.* at 38-39. One of the interpretation changes the Court *did* find to have occurred—and that it vacated as arbitrary and capricious—was the Department's "primary purpose" standard. *See id.* at 31-35, 41-42. The evidence Mr. Rudert has since discovered demonstrates that this invalidated standard was in fact the standard applied in his case as well. The only just conclusion, therefore, is that he is likewise entitled to relief.

The D.C. Circuit has affirmed the granting of relief pursuant to Rule 60(b)(6) even in cases where the moving party was aware of key facts prior to judgment yet failed to make them known to the court. In *Good Luck Nursing Home*, for example, the court affirmed the district court's decision granting the government's Rule 60(b)(6) motion against a nursing home for which it had initially granted summary judgment after the government subsequently demonstrated that the expenses for which the nursing home sought Medicare reimbursement were incurred in defending against a Medicare fraud claim. 636 F.2d at 577. The court observed that the district court had acted well within its discretion in granting the government's motion, and noted that the government moved for Rule 60(b)(6) relief "within three months of the original judgment"; accordingly, "[a]lthough the appellant might have been disappointed by having its initial victory so quickly snatched away, it ha[d] not been so prejudiced as to make reconsideration under the rule inappropriate." *Id. See also Computer Prof'ls for Soc. Responsibility v. U.S. Secret Serv.*, 72 F.3d 897, 903 (D.C. Cir. 1996) (reversing district court's

denial of Rule 59(e) motion, considered under Rule 60(b)(6), where the previously undisclosed evidence was central to the litigation and would have affected the outcome if the court had taken it into consideration, involved the interests of a third party, and was submitted to the district court just 18 days after its original decision).

Here, as explained above, Mr. Rudert was not aware of the existence of a key additional fact—that the Department was sending denial letters to his former VVA colleagues on the basis that VVA did not, in the Department's view, directly provide services to disabled and elderly Vietnam veterans as its "primary purpose"—until after the Court issued its Order, and he brings the present motion within 28 days of the entry of judgment.  A failure to reconsider the judgment against Mr. Rudert would result in an uneven application of justice and send an inappropriate signal to the Department that it can freely cloak its vacated standards in alternative language, and thus change the PSLF eligibility criteria without proceeding through the proper channels.

## II.     THE COURT'S REVIEW OF EXTRA-RECORD EVIDENCE IS AGAIN WARRANTED

In its February 22 Order, the Court granted Plaintiffs' motion and supplemental motion for extra-record review.  (ECF No. 48).   Mr. Rudert thus need not repeat the same legal arguments here for why the Court should consider the extra-record evidence he now seeks to present.  The Court granted Plaintiffs' extra-record review motions in part because that evidence shed light on "the procedural—as opposed to substantive—validity of the Department's actions." Mem. Opinion at 50 (ECF No. 49).  In addition, the Court determined that the administrative record certified by the Department was "so deficient as to preclude effective review" of whether the Department changed its interpretation of the PSLF regulation.  *Id.*  That same reasoning applies here, where the Court has found that the record before it contained insufficient evidence of a change of interpretation resulting in Mr. Rudert's denial.  The Department's denial letter to

17

Ms. Radke, a former VVA employee who in fact left VVA a few months *before* Mr. Rudert departed the organization (*see* Radke Decl. ¶ 7; Rudert Decl. ¶ 6), demonstrates conclusively that the application of the "primary purpose" standard drove the Department to revoke VVA employees' eligibility for the PSLF program.  By necessity, the Department must have applied the same standard when it denied Mr. Rudert.

## III.  THE COURT SHOULD RULE IN MR. RUDERT'S FAVOR ON THE PROCEDURAL APA CLAIM (COUNT I), AND SHOULD NOT GRANT SUMMARY JUDGMENT IN THE DEPARTMENT'S FAVOR ON MR. RUDERT'S OTHER CLAIMS

Considering this new evidence, the Court should find that the Department *did* change its interpretation of the governing regulation in determining that VVA employees were not eligible for relief under the PSLF program.  Several consequences should flow from that determination.[7]

First, the Court should rule in Mr. Rudert's favor on Count I—his claim that the Department should have, and failed to, adhere to the APA's procedural requirements in adopting its new interpretation.  The Court already ruled in favor of two other Individual Plaintiffs—Mr. Burkhart and Ms. Quintero-Millan—on that exact same claim.  The Court ruled that because the "primary purpose" standard represented a change of interpretation, the Department was required to comply with certain minimal requirements under the APA.  Mem. Opinion at 39-41 (ECF No. 49).  Next, the Court found that there was "no indication in the record that, prior to issuing the denial letters to Quintero-Millan and Burkhart, the Department acknowledged that it changed its practices by adopting the Primary Purpose standard, provided a reasoned analysis for such a change, or demonstrated that it had considered the substantial reliance interests at stake." *Id.* at 41.  Thus, the Department "acted arbitrarily and capriciously when it adopted the Primary

_____

[7] The consequences described below refer only to the relief to which Mr. Rudert is entitled if the Court rules in his favor on this motion.  Mr. Rudert maintains that several other arguments support his claims, *see supra* n.1, and reserves his right to later raise those arguments on appeal.

Purpose standard without the minimum requirements of reasoned decisionmaking and determined that Quintero-Millan and Burkhart's employment did not qualify on that basis." *Id.* at 42.  The exact same reasoning applies to the Department's adoption of the "primary purpose" standard without complying with these minimal requirements and application of that standard to Mr. Rudert.

Second, the Court should amend its judgment so that it no longer grants summary judgment in the Department's favor on Mr. Rudert's remaining claims:  Counts II, III, IV, and V. The Court should refrain from reaching these counts because, as the Court noted in respect to Ms. Voigt, Ms. Quintero-Millan, and Mr. Burkhart, the Court need not reach the remaining claims after determining that the Department's actions "violated the APA's most basic procedural requirements." *Id.* at 44.  Moreover, even if the Court were inclined to reach these additional counts, the Court's ruling on each of these claims was predicated—at least in part—on the notion that Mr. Rudert failed to demonstrate any change of interpretation. *See id.* at 45 (ruling that Count II, regarding the APA's notice requirements, failed "[b]ecause the Court cannot conclude on this record that Rudert's denial letter was based on any sort of newly-adopted rule or policy change—much less a new substantive rule"); *id.* (holding that Count III, regarding retroactive agency action, failed in part because "the record does not support Rudert's claim that the Department applied or relied upon a new rule or interpretation when it determined that his employment at VVA did not qualify under the PSLF Program"); *id.* at 46 (noting, in ruling against Mr. Rudert on Count IV, regarding the divergence from the plain language of the statute and the regulation, that "in any event . . . Rudert has not demonstrated that the Department's determination of his employment eligibility reflected a new interpretation of the PSLF regulation"); *id.* at 48 (finding that Mr. Rudert's Count V due process claim failed because

the Department did not apply an unlawfully changed interpretation and made a valid determination that his employment did not qualify, and that Mr. Rudert therefore could not demonstrate entitlement to a property interest protected by the Fifth Amendment).

## CONCLUSION

For the foregoing reasons, Mr. Rudert respectfully requests that the Court grant his motion to alter or amend the judgment.


Dated: March 22, 2019

<div style="margin-left:50%">

Respectfully submitted,

 /s/     *Chong S. Park*

Chong S. Park (D.C. Bar No. 46050)
John T. Dey (D.C. Bar No. 1029475)
Edward F. Roche (D.C. Bar No. 1029012)
ROPES & GRAY LLP
2099 Pennsylvania Avenue, NW
Washington, D.C. 20006
(202) 508-4600
Chong.Park@ropesgray.com

*Attorneys for Plaintiffs*

</div>

**CERTIFICATE OF SERVICE**

I hereby certify that on this 22nd day of March, 2019, I electronically filed the foregoing

Memorandum of Points and Authorities with the Clerk of the Court using the Court's electronic

filing system, which will send a notice of electronic filing to all Counsel of Record.


                                                    */s/*     *Chong S. Park*

                                                    Chong S. Park