**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICAN BAR ASSOCIATION, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF EDUCATION, *et al.*, <br><br> Defendants. | Civil Action No. 16-2476-TJK |

**DEFENDANTS' OPPOSITION TO PLAINTIFF JAMIE RUDERT'S**
**MOTION TO ALTER OR AMEND THE JUDGMENT**

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

STATUTORY AND REGULATORY BACKGROUND ............................................... 2

FACTUAL BACKGROUND ....................................................................................... 3

PROCEDURAL BACKGROUND ............................................................................... 4

ARGUMENT ............................................................................................................... 6

I.      THE COURT SHOULD DENY PLAINTIFF RUDERT'S MOTION TO ALTER
        OR AMEND THE JUDGMENT UNDER RULE 59(e). ................................... 7

        A.      Plaintiffs Bear a Heavy Burden in Seeking Rule 59(e) Relief .............. 7

        B.      The Letter to Ms. Radke Is Not Evidence that the Department Applied the
                Primary Purpose Standard to Mr. Rudert's Application ....................... 8

        C.      Rule 59(e) Relief Is Unavailable Because Mr. Rudert Could Have Made
                This Argument Prior to Judgment ....................................................... 14

II.     PLAINTIFF RUDERT IS NOT ENTITLED TO RELIEF FROM JUDGMENT
        UNDER RULE 60. ............................................................................................ 16

CONCLUSION .......................................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*AARP v. EEOC*,
 292 F. Supp. 3d 238 (D.D.C. 2017) ........................................................................ 7

*Amor Family Broad. Grp. v. FCC*,
 918 F.2d 960 (D.C. Cir. 1991) ............................................................................... 11

*Ark Las Vegas Restaurant Corp. v. NLRB*,
 334 F.3d 99 (D.C. Cir. 2003) ................................................................................. 15

*CFTC v. McGraw Hill Cos.*,
 403 F. Supp. 2d 34 (D.D.C. 2005) ........................................................................... 7

*Chamber of Commerce of U.S. v. EPA*,
 642 F.3d 192 (D.C. Cir. 2011) ............................................................................... 15

*Ciralsky v. CIA*,
 355 F.3d 661 (D.C. Cir. 2004) ................................................................................. 7

*Cmty. Care Found. v. Thompson*,
 318 F.3d 219 (D.C. Cir. 2003) ............................................................................... 11

*Comp. Prof'ls for Soc. Responsibility v. U.S. Secret Serv.*,
 72 F.3d 897 (D.C. Cir. 1996) ................................................................................. 17

*Exxon Shipping Co. v. Baker*,
 554 U.S. 471 (2008) ................................................................................................. 8

*Firestone v. Firestone*,
 76 F.3d 1205 (D.C. Cir. 1996) ................................................................................. 7

*Foster v. Sedgwick Claims Mgmt. Servs., Inc.*,
 842 F.3d 721 (D.C. Cir. 2016) ................................................................................. 7

*Gonzalez v. Crosby*,
 545 U.S. 524 (2005) ............................................................................................... 17

*Good Luck Nursing Home, Inc. v. Harris*,
 636 F.2d 572 (D.C. Cir. 1980) ............................................................................... 17

*Habliston v. FINRA Dispute Resolution, Inc.*,
 251 F. Supp. 3d 240 (D.D.C. 2017) ......................................................... 7, 8, 11, 15

*Innovator Enters., Inc. v. Jones*,
 28 F. Supp. 3d 14 (D.D.C. 2014) ........................................................................... 15

*Int'l Ctr. for Tech. Assessment v. Leavitt,*
    468 F. Supp. 2d 200 (D.D.C. 2007) ............................................................ 13

*Johnson v. District of Columbia,*
    266 F. Supp. 3d 206 (D.D.C. 2017) ................................................. 7, 8, 11

*Kramer v. Gates,*
    481 F.3d 788 (D.C. Cir. 2007) ................................................................... 17

*Lardner v. FBI,*
    875 F. Supp. 2d 49 (D.D.C. 2012) ............................................................ 17

*Leidos, Inc. v. Hellenic Republic,*
    881 F.3d 213 (D.C. Cir. 2018) ..................................................................... 7

*Lightfoot v. District of Columbia,*
    555 F. Supp. 2d 61 (D.D.C. 2008) ............................................................ 17

*Martin v. Omni Hotels Mgmt. Corp.,*
    321 F.R.D. 35 (D.D.C. 2017) ................................................................... 7, 8

*MD Pharm., Inc. v. DEA,*
    133 F.3d 8 (D.C. Cir. 1998) ........................................................................ 9

*Menoken v. McGettigan,*
    323 F.R.D. 72 (D.D.C. 2017) ...................................................................... 7

*Mohammadi v. Islamic Republic of Iran,*
    782 F.3d 9 (D.C. Cir. 2015) ........................................................................ 7

*Niedermeier v. Office of Max S. Baucus,*
    153 F. Supp. 2d 23 (D.D.C. 2001) ........................................................... 7, 8

*Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. De C.V.,*
    247 F. Supp. 3d 76 (D.D.C. Mar. 20, 2017) ............................................ 13

*Paralyzed Veterans of Am. v. Sec'y of Veterans Affairs,*
    345 F.3d 1334 (Fed. Cir. 2003) ................................................................ 13

*Patton Boggs, LLP v. Chevron Corp.,*
    683 F.3d 397 (D.C. Cir. 2012) ..................................................................... 8

*Riggs Nat'l Corp. & Subsidiaries v. Comm'r of Internal Revenue,*
    295 F.3d 16 (D.C. Cir. 2002) .................................................................... 13

*Roane v. Gonzales,*
    832 F. Supp. 2d 61 (D.D.C. 2011) ........................................................... 13

*Senior Res. v. Martinez*,
  No. Civ.A.01-0983 (CKK), 2001 WL 34807628 (D.D.C. May 31, 2001) ................................ 9

*Stanford v. Potomac Elec. Power Co.*,
  Civ. A. No. 1:04-1461 (RBW), 2006 WL 1722329 (D.D.C. June 21, 2006) ......................... 17

*Taitz v. Obama*,
  754 F. Supp. 2d 57 (D.D.C. 2010) ........................................................................................ 18

*United States v. 8 Gilcrease Lane*,
  668 F. Supp. 2d 128 (D.D.C. 2009), *aff'd*, 638 F.2d 297 (D.C. Cir. 2011) ............................ 17

*Vernal Enters., Inc. v. FCC*,
  355 F.3d 650 (D.C. Cir. 2004) .............................................................................................. 11

*West v. Holder*,
  309 F.R.D. 54 (D.D.C. 2015) ................................................................................................ 17

**STATUTES**

20 U.S.C. § 1087e ........................................................................................................................ 2

**REGULATIONS**

34 C.F.R. § 685.219 ............................................................................................................. 3, 4, 5, 8

Federal Perkins Loan Program, Federal Family Education Loan Program, and William D.
  Ford Federal District Loan Program,
  73 Fed. Reg. 37,694 (proposed rule July 1, 2008) ................................................................. 2

## INTRODUCTION

Plaintiff Jamie Rudert brings this motion for extraordinary relief to ask the Court to reverse its correct decision to grant summary judgment to the Department of Education (the "Department") on his claims.  Mr. Rudert filed suit to challenge the Department's determination that payments he made while employed at Vietnam Veterans of America ("VVA") did not qualify for purposes of the Department's Public Service Loan Forgiveness Program ("PSLF" or "PSLF Program").  The Court granted summary judgment to three other individual Plaintiffs but granted summary judgment to Defendants on Mr. Rudert's claims.  The Department had determined Mr. Rudert's employment at VVA was not eligible for loan forgiveness because VVA only facilitated the provision of services to individuals with disabilities, rather than providing such services directly, and therefore did not provide qualifying public services itself. The Court upheld that decision as a "straightforward application" of the PSLF regulation to Mr. Rudert.  Mem. Op. at 39, ECF No. 49.

Mr. Rudert now asks the Court to reverse its decision on his claims.  The reason is a March 2018 letter—sent almost two years after Mr. Rudert's denial—to another former VVA employee, not a plaintiff in this case, in which the Department's contractor, FedLoan Servicing, mentions VVA's "primary purpose," a reference to a separate standard under the PSLF regulation that the Department never purported to rely on with respect to Mr. Rudert.  Solely on the basis of this letter, Mr. Rudert asks the Court to conclude that the Department must have been applying the so-called "primary purpose" standard when his eligibility was denied, and thus that he is entitled to the same relief as the other individual Plaintiffs.

Mr. Rudert's rank speculation does not warrant altering or amending the judgment.  The reasoning of the March 2018 letter, despite its unnecessary use of the phrase "primary purpose,"

is not inconsistent with the Department's conclusion that VVA does not provide qualifying public services because it does not provide them directly, which is a distinct inquiry that precedes the question of whether VVA's provision of qualifying public services is its primary purpose.  And even if the letter is inconsistent with that conclusion, there is no basis to conclude from the use of the phrase in a letter sent to a different borrower two years later that the Department was secretly applying the primary purpose test to *Mr. Rudert*, despite never citing or otherwise indicating that it was relying on that standard.  Finally, Mr. Rudert's motion fails for the independent reason that the evidence Plaintiffs introduced in their motions for extra-record review contained sufficient information to make this speculative and flawed argument in their earlier filings in this case.  Mr. Rudert cannot use a motion to alter or amend the judgment to raise an argument that Plaintiffs could have made, but eschewed, prior to judgment.

## STATUTORY AND REGULATORY BACKGROUND

The College Cost Reduction and Access Act of 2007 ("CCRAA") amended the Higher Education Act of 1965 to create a new Public Service Loan Forgiveness Program as part of the William D. Ford Direct Loan ("Direct Loan") Program.  Federal Perkins Loan Program, Federal Family Education Loan Program, and William D. Ford Federal Direct Loan Program, 73 Fed. Reg. 37,694, 37,695 (proposed rule July 1, 2008), AR 4.  Specifically, the CCRAA amended 20 U.S.C. § 1087e(m) to include language directing the Secretary of Education to "cancel the balance of interest and principal due . . . on any eligible Federal Direct Loan not in default" for borrowers who meet certain eligibility criteria.  Among these eligibility criteria is a requirement that a borrower be employed in a "public service job" at the time of the application for forgiveness, at the time of forgiveness, and at the time each of 120 monthly payments were made.

2

The Department subsequently developed a regulation, codified at 34 C.F.R. § 685.219, that sets forth the eligibility criteria for the PSLF program. A borrower may obtain loan forgiveness if she is not in default on the loan, has made 120 payments after October 1, 2007 under certain payment plans, and "is employed full-time by a public service organization" at the time each of the 120 payments are made, at the time of applying for loan forgiveness, and at the time of forgiveness. *Id.* § 685.219(c). The rule defines "public service organization" to include, in relevant part, a "private organization that [p]rovides" certain enumerated "public services"— including "public service for individuals with disabilities"—and that is "not a business organized for profit, a labor union, a partisan political organization, or an organization engaged in religious activities." *Id.* § 685.219(b).

## FACTUAL BACKGROUND

Between April 2012 and September 2015, Plaintiff Jamie Rudert was employed by VVA, a 501(c)(19) organization "that provides advocacy and support services to Vietnam veterans, including representing veterans seeking government benefits and services." Mem. Op. at 11-12. Mr. Rudert submitted PSLF Employment Certification Forms ("ECFs") for his employment at VVA in 2012 and 2014, and received ECF responses from FedLoan Servicing indicating that his employment with VVA qualified under the PSLF Program. *Id.* at 12.

On April 21, 2016, after submitting another ECF, Mr. Rudert was sent a letter informing him that the prior ECF responses had been issued in error and that FedLoan Servicing had "reversed [his] previously approved employment period" because VVA "does not provide a qualifying service." AR 282-83. Mr. Rudert wrote a letter to the Department, via FedLoan Servicing, challenging the Department's decision, AR 284-289, and contacted the Department via U.S. Representative Eleanor Holmes Norton, who forwarded his ECF and an explanation of

his complaint to the Department, AR 320.  In a letter dated August 8, 2016, the Department

explained to Representative Norton that VVA did not qualify as a public service organization

offering public interest legal services or services to individuals with disabilities.  AR 331.  In

particular, the Department concluded that VVA did not provide public interest legal services

because of its "funding source,"[1] and that it did not provide public services to individuals with

disabilities because it did not provide those services directly, but rather merely "facilitate[d] the

provision of disability-related services to Vietnam Veterans."  AR 331.[2]

## PROCEDURAL BACKGROUND

Plaintiffs Michelle Quintero-Millan, Geoffrey Burkhart, Kate Voigt, Jamie Rudert, and

the American Bar Association ("ABA") filed their Complaint on December 20, 2016 bringing

claims under the APA and the Due Process Clause of the Fifth Amendment, arguing that they and

the ABA's employees were wrongfully denied qualification for the PSLF Program.  On February

22, 2019, the Court issued a Memorandum Opinion and accompanying Order which granted

summary judgment to Ms. Quintero-Millan, Mr. Burkhart, and Ms. Voigt, and granted Defendants

summary judgment as to the claims of the ABA and Mr. Rudert.  Ms. Quintero-Millan and Mr.

Burkhart both had been denied eligibility for loan forgiveness for their employment with the ABA

---

[1] The Department's PSLF regulation requires that private organizations providing public interest law services be "funded in whole or in part by a local, State, Federal, or Tribal government."  34 C.F.R. § 685.219.  Mr. Rudert has not challenged that determination at any point in the litigation. *See* Mem. Op. at 38 n.12.

[2] In this motion, Mr. Rudert refers to VVA as an organization providing "public service for individuals with disabilities *and the elderly*."  Pl.'s Mem. of P. & A. in Supp. of Mot. to Alter or Amend J. ("Pl.'s Mem.") at 9, ECF No. 50 (emphasis added).  Mr. Rudert's April 1, 2016 ECF submission asserted that VVA qualified as an organization providing public interest legal services and public services for individuals with disabilities, not public services to the elderly. *See* AR 268 (in response to question "Does your employer provide any of the below services?," checking box for "Public service for individuals with disabilities," but not box for "Public service for the elderly").  The distinction between these separate categories of public services is not material to the issues presented here.

pursuant to the "primary purpose" standard, an interpretation of the PSLF regulation under which a borrower's employment with a private organization qualifies for PSLF purposes only if "the 'primary purpose' of . . . [the] employer is to provide qualifying public services." *See* Mem. Op. at 31-35. The Court held that the adoption of this standard reflected a change in how the Department interpreted the PSLF regulation, which the Department had not adequately explained or justified. *Id.* at 32-35. Accordingly, the Court concluded that Ms. Quintero-Millan and Mr. Burkhart prevailed on their APA claims. *Id.* at 39-42.

By contrast, the Court found no such change with respect to Mr. Rudert. The Department denied his request for eligibility for his tenure at VVA pursuant to the so-called "outright provision of services" standard, under which a private organization provides qualifying public services only if it "provide[s] the services outright." *Id.* at 38 (citation omitted). Given that the plain language of the PSLF regulation "mandates that a qualifying organization '[p]rovide[]' particular public services," the Court concluded that this standard was not a change in the Department's interpretation of the regulation, but rather "a straightforward application of the regulation to Rudert's case," *id.* at 39 (quoting 34 C.F.R. § 685.219(b)).

Mr. Rudert now moves to alter or amend that judgment under Federal Rules 59(e) and 60(b)(6) on the basis of an ECF response letter sent by FedLoan Servicing in March 2018—nearly two years after Mr. Rudert's denial—to Amanda M. Radke, a borrower who, like Mr. Rudert, is a former VVA employee. In that letter, FedLoan Servicing stated that a prior ECF approval Ms. Radke had received was issued in error and that her employment at VVA did not qualify either as employment at a private organization providing public interest legal services or at an organization providing services to individuals with disabilities. Specifically, the letter states that FedLoan Servicing found that VVA did not provide qualifying public interest legal services because it was

not "funded in whole or in part by a State, Federal, or Tribal government," and that it did not provide qualifying services to individuals with disabilities because there was "no evidence that [VVA] provides services directly to individuals with disabilities as part of its primary purpose." *See* Pl.'s Mem., Ex. 1 to Ex. B ("Ex. 1"), ECF No. 50-3.   Mr. Rudert argues that, based on this letter, the Court should conclude that the Department applied the primary purpose standard to him in April 2016 and thus grant him the same relief it granted the other individual Plaintiffs.

## **ARGUMENT**

Plaintiff Rudert cannot make the extraordinary showing required to alter or amend the judgment under Rule 59(e) or to obtain relief from a judgment under Rule 60(b)(6).   The sole basis for Mr. Rudert's motion is the use of the words "primary purpose" in the March 2018 letter sent to Ms. Radke.[3]   From there, Mr. Rudert speculates that the Department must have been secretly applying the primary purpose standard when it denied his eligibility two years earlier, despite the fact that the Department cited only VVA's failure to provide qualifying services outright, which the Court upheld as a straightforward application of the PSLF regulation.   The letter to Ms. Radke, however, does not in fact suggest that the primary purpose standard was ever applied to Mr. Rudert. That alone precludes relief under Rules 59(e) or 60(b)(6).   Moreover, Mr. Rudert could have made this very argument based on the extra-record evidence Plaintiffs previously put before the Court, and having failed to make an argument available to him, Mr. Rudert is barred from asserting that argument as a basis for the post-judgment relief he is requesting.

---

[3] Defendants oppose Mr. Rudert's request for the Court to consider the letter as extra-record evidence, *see* Pl.'s Mem. at 17-18, for all the reasons cited in Defendants' prior oppositions to Plaintiffs' motions for extra-record review (ECF Nos. 30, 36), *viz.* that the letter postdates the filing of this case and the alleged agency actions at issue and that it does not involve any Department personnel or concern the denial of Mr. Rudert's ECFs.   In light of the Court's ruling on Plaintiffs' prior motions for extra-record review, Defendants preserve these arguments for appeal.

## I.   THE COURT SHOULD DENY PLAINTIFF RUDERT'S MOTION TO ALTER OR AMEND THE JUDGMENT UNDER RULE 59(e).

### A.   Plaintiffs Bear a Heavy Burden in Seeking Rule 59(e) Relief.

Motions for reconsideration under Rule 59(e) "are disfavored and relief from judgment is granted only when the moving party establishes extraordinary circumstances." *Menoken v. McGettigan*, 323 F.R.D. 72, 74 (D.D.C. 2017) (quoting *Niedermeier v. Office of Max S. Baucus*, 153 F. Supp. 2d 23, 28 (D.D.C. 2001)); *see also, e.g.*, *Leidos, Inc. v. Hellenic Republic*, 881 F.3d 213, 217 (D.C. Cir. 2018).   Reconsideration "lie[s] within the discretion of the Court." *AARP v. EEOC*, 292 F. Supp. 3d 238, 241 (D.D.C. 2017), and relief should not be granted unless the moving party satisfies a "stringent" standard. *Ciralsky v. CIA*, 355 F.3d 661, 673 (D.C. Cir. 2004); *see also, e.g.*, *Mohammadi v. Islamic Republic of Iran*, 782 F.3d 9, 17 (D.C. Cir. 2015).   Specifically, the motion "need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Foster v. Sedgwick Claims Mgmt. Servs., Inc.*, 842 F.3d 721, 735 (D.C. Cir. 2016) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996)).   "The strictness with which [Rule 59(e)] motions are viewed is justified by the need to protect both the integrity of the adversarial process . . . and the ability of the parties and others to rely on the finality of judgments." *Johnson v. District of Columbia*, 266 F. Supp. 3d 206, 211 (D.D.C. 2017) (quoting *CFTC v. McGraw Hill Cos.*, 403 F. Supp. 2d 34, 36 (D.D.C. 2005)).   Mr. Rudert, as the party seeking reconsideration, bears the burden of meeting these stringent standards and establishing that relief is warranted. *Martin v. Omni Hotels Mgmt. Corp.*, 321 F.R.D. 35, 38 (D.D.C. 2017).

A Rule 59(e) motion on the basis of new evidence may only be granted if the court concludes that the new evidence justifies a change in the court's prior decision. *See, e.g.*, *Johnson*, 266 F. Supp. 3d at 212; *Habliston v. FINRA Dispute Resolution, Inc.*, 251 F. Supp. 3d 240, 246

7

(D.D.C. 2017).  Further, a Rule 59(e) motion is not a "vehicle to present a new legal theory that

was available prior to judgment."  *Patton Boggs, LLP v. Chevron Corp.*, 683 F.3d 397, 403 (D.C.

Cir. 2012).  "[M]otions for reconsideration may not be used to 'relitigate old matters, or to raise

arguments or present evidence that could have been raised prior to the entry of judgment.'"

*Habliston*, 251 F. Supp. 3d at 245 (quoting *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5

(2008)).[4]

### B.    The Letter to Ms. Radke Is Not Evidence that the Department Applied the Primary Purpose Standard to Mr. Rudert's Application.

The Court correctly concluded that Defendants were entitled to summary judgment on Mr.

Rudert's claims.  The letter to Ms. Radke—sent two years after the Department denied Mr.

Rudert's ECFs—does nothing to call that decision into question.

In justifying its decision that Mr. Rudert's employment with VVA did not qualify for PSLF

purposes, the Department explained that "while [VVA] facilitate[s] the provision of disability-

related services to Vietnam Veterans, they do not provide the services outright."  AR 331.  As the

Court accurately observed, this rationale—which it called the outright provision of services

standard—reflects a "straightforward application" of the plain language of the PSLF regulation,

Mem. Op. at 39; *id.* at 45-46, which requires that a qualifying private organization "[p]rovide[]"

an enumerated public service.  34 C.F.R. § 685.219(5).  Pursuant to that standard, the Department

correctly concluded that VVA did not provide services to individuals with disabilities, and thus

had no occasion to consider whether the provision of such services was a primary purpose of VVA.

---

[4] Plaintiff suggests that Rule 59 can be read to allow relief if new evidence is discovered within
28 days of judgment "regardless of whether it could have been discovered with reasonable
diligence at an earlier time."  Pl.'s Mem. at 4 n.4.  This Court has repeatedly held to the contrary.
*See, e.g.*, *Martin*, 321 F.R.D. at 39 ("Newly available evidence is 'evidence that is newly
discovered or previously unavailable *despite the exercise of due diligence*.'" (quoting *Niedermeier*,
153 F. Supp. 2d at 29) (emphasis added)); *Johnson*, 266 F. Supp. 3d at 211 (same).

Mr. Rudert contests that conclusion on the basis of purportedly newly discovered evidence—the March 20, 2018 letter from FedLoan Servicing to Ms. Radke.[5]   The essence of Mr. Rudert's argument is that because FedLoan Servicing used the phrase "primary purpose" in Ms. Radke's letter, it necessarily follows that the Department's reliance on the outright provision of services standard with respect to Mr. Rudert's ECF submission was a mere pretext for the Department's actual reliance on the primary purpose standard.   However, for two reasons, Ms. Radke's letter does not contradict the basis for the Court's decision regarding Mr. Rudert.

First, the letter does not conclusively prove that the Department denied Ms. Radke's eligibility for loan forgiveness on the basis of the primary purpose test.   Contrary to Plaintiff's unexplained belief that the outright provision of services standard is a "variant" of the primary purpose standard, Pl.'s Mem. at 14, the two standards are conceptually distinct, as the Court implicitly understood them to be when it evaluated the two  standards separately.   *See* Mem. Op. at 31-35, 38-39.   Each standard concerns a different prong of what the Department envisioned as

---

[5] To the extent Mr. Rudert insinuates that this document should have been included in the administrative record, *see* Pl.'s Mem. at 8, 14-15, that contention is simply wrong.   The letter was not issued by the Department itself, but rather by FedLoan Servicing, and it does not relate to any of the Plaintiffs in this action.   Thus, it plainly was not before the Department when making any of the challenged agency actions at issue in this litigation.   *See, e.g.*, *MD Pharm., Inc. v. DEA*, 133 F.3d 8, 15 (D.C. Cir. 1998) (agency properly excluded materials compiled in connection with party's first two applications for registration, where only party's fourth application was at issue in lawsuit); *Senior Res. v. Martinez*, No. Civ.A.01-0983 (CKK), 2001 WL 34807628, at *7 (D.D.C. May 31, 2001) (materials were properly excluded from administrative record where "they do not relate to the challenged conduct at issue in this litigation").   Moreover, it postdates the certification of the administrative record in this action by nearly a year.   *See* Def.'s Certification of Admin. R., ECF No. 15 (filed Apr. 24, 2017).   Indeed, contrary to Mr. Rudert's claim, the letter—as well as any other similar ECF responses from FedLoan Servicing to individual borrowers—should not have been released in response to Plaintiffs' Right-to-Know Law request to FedLoan Servicing because Plaintiffs did not request communications between FedLoan Servicing and borrowers. *See* Pl.'s Mem. at 11 (asking for FedLoan Servicing "communications . . . *with the Department of Education*" (emphasis added)); *id.* at 12 (asking for FedLoan Servicing "communications, both *internal* and *with the U.S. Department of Education*" (emphases added)).

a two-step analysis for determining qualification of private organizations for PSLF purposes. At step one, the Department asks whether a private organization provides qualifying public services, which it determines, in part, through the outright provision of services standard. Only once it is apparent that the organization does provide qualifying public services would the Department move to the second order question of whether the provision of such services was a primary purpose of the organization.

The Department's treatment of other private organizations at issue in this litigation bears this out. With respect to the ABA, there was no dispute that at least some ABA projects, such as ProBAR, where Ms. Quintero-Millan worked, directly provided public services, satisfying step one in the inquiry. However, the Department concluded that the ABA did not qualify because the provision of those public services was not the ABA's primary purpose. *See* AR 190-91; AR 193. Conversely, the Department concluded that the American Immigration Lawyers Association ("AILA") did not directly provide public interest law services, but only facilitated the provision of services by AILA member attorneys. AR 335. Because AILA did not qualify under step one of the analysis, the Department did not need to move on to consider AILA's primary purpose.[6]

Although in Ms. Radke's letter, FedLoan Servicing unnecessarily uses the phrase "primary purpose," it does not follow from the mere presence of that phrase that her eligibility for her employment at VVA was denied at step two of the inquiry instead of at step one. The letter itself explains that the denial is based on the absence of evidence that VVA "provides services directly to individuals with disabilities," Ex. 1, *i.e.*, the outright provision of services standard, *see* Mem. Op. at 38-39. In other words, the letter suggests that Ms. Radke's employment did not qualify

---

[6] Similarly, the Department also concluded that AILA did not provide qualifying public education services under the since-vacated "school-like setting" standard, and thus had no occasion to apply the primary purpose standard for those services either. *See* AR 335.

under the same straightforward application of the PSLF regulation that the Court upheld as to Mr.
Rudert. *See Johnson*, 266 F. Supp. 3d at 212-13 (newly discovered testimony did not warrant Rule
59(e) relief in employment dispute where the "new testimony is entirely consistent with the
defendant's proffered reason for [plaintiff's] termination"); *Habliston*, 251 F. Supp. 3d at 246
(denying Rule 59(e) motion where the "'new facts' do nothing to change" basis for Court's
conclusions). The use of the words "primary purpose" does not change the validity of the
conclusion that VVA did not directly provide a qualifying service, and appears instead to have
been erroneously used by FedLoan Servicing. *Cf. Vernal Enters., Inc. v. FCC*, 355 F.3d 650, 661
(D.C. Cir. 2004) (holding that "staff error" in granting fee-refunds to parties could not "bind [the]
agency" in future fee-refund requests "and force it, in effect, to continue such errors"); *Cmty. Care
Found. v. Thompson*, 318 F.3d 219, 227 (D.C. Cir. 2003) ("There is no authority for the proposition
that a lower component of a government agency may bind the decision making of the highest level
. . . [and] 'even if these cases were found to evince internal inconsistency at a subordinate level,
the [agency] itself would not be acting inconsistently.'" (quoting *Amor Family Broad. Grp. v.
FCC*, 918 F.2d 960, 962 (D.C. Cir. 1991)).

Second, whatever FedLoan Servicing's misuse of that phrase may mean with respect to
*Ms. Radke's* ECF submission, it is far from evidence that the Department applied that standard to
*Mr. Rudert*. Although the PSLF regulation determines public interest jobs by looking to public
service organizations, and Ms. Radke and Mr. Rudert both worked at the VVA, the PSLF program
requires ECFs and applications be submitted by each borrower individually, and the Department
must determine each borrower's eligibility for loan forgiveness on an individual basis.
Necessarily, the Department's rationale for its eligibility determination as to a particular borrower
must stand or fall on the justification provided to that borrower. It makes little sense to extrapolate

from the mention of "primary purpose" in March 2018 to Ms. Radke that Mr. Rudert's denial, nearly two years earlier, must have been based on that standard.

That is particularly the case given that the Department has never purported, either in its August 2016 explanation, *see* AR 330-31, or in briefing, to have applied the primary purpose standard to Mr. Rudert, and indeed proffered a justification that the Court concluded was entirely consistent with the regulation, *see* Mem. Op. at 46.  By contrast, the Department expressly invoked the primary purpose standard in correspondence with the ABA, *see* AR 190-91 (citing absence of evidence "demonstrat[ing] that the primary purpose of the ABA is to provide 'public interest law services'"); AR 193 ("[W]e have not received documentation to date that shows ABA's primary purpose is to provide 'public interest law services' as defined in the PSLF regulations . . . ."), and as the Court noted, Mem. Op. at 31-32, acknowledged in briefing that it had applied that standard to Mr. Burkhart and Ms. Quintero-Millan, *see* Defs.' Mem. of P. & A. in Supp. of Mot. for Summ. J. at 27, ECF No. 22.  Similarly, the Department explained in correspondence to Ms. Voigt and in briefing that her tenure at AILA did not qualify because AILA's education activities were "not provided in a school or school-like setting."  AR 335; *see also* Defs.' Mem. in Supp. of Mot. for Summ. J. at 27.

To be sure, when deciding to consider extra-record evidence, the Court observed that the administrative record was opaque as to what interpretations of the PSLF regulation the Department had applied when it approved certain individual Plaintiffs' ECF submissions.  Mem. Op. at 50-53. But the Court never concluded—nor would there be any basis to conclude—that the standards the Department explicitly invoked were somehow a pretext for other, secret interpretations undergirding denials of ECF submissions.  The premise of the Court's ruling was that the Department's interpretation of the PSLF regulation was in flux, not that the Department

misrepresented its justification for denying borrowers' eligibility.  And any speculation to the contrary, without a factual basis, would be inconsistent with the presumption of regularity that is afforded government actions.  *See Riggs Nat'l Corp. & Subsidiaries v. Comm'r of Internal Revenue*, 295 F.3d 16, 21 (D.C. Cir. 2002) ("The presumption of regularity supports the official acts of public officers and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." (citation omitted)); *see also Paralyzed Veterans of Am. v. Sec'y of Veterans Affairs*, 345 F.3d 1334, 1349 (Fed. Cir. 2003) ("[G]overnment officials are presumed to act in good faith and with regularity.").

Thus, the entire premise of Mr. Rudert's motion is speculative.  The March 2018 letter to Ms. Radke does not demonstrate that Mr. Rudert's denial was based on the primary purpose standard that the Court vacated.  Accordingly, that document does not change the outcome before this Court, foreclosing Plaintiff's request for relief under Rule 59(e).  *See, e.g.*, *Roane v. Gonzales*, 832 F. Supp. 2d 61, 65 (D.D.C. 2011) (declining to grant reconsideration under Rule 59(e) where newly discovered evidence "would not necessarily have changed the decision"); *see also Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. De C.V.*, 247 F. Supp. 3d 76, 112 (D.D.C. Mar. 20, 2017) (same); *Int'l Ctr. for Tech. Assessment v. Leavitt*, 468 F. Supp. 2d 200, 208 (D.D.C. 2007) (same).

Indeed, if Mr. Rudert truly believes that he was denied eligibility for his employment at VVA on the basis of the primary purpose standard, then his choice to seek relief through the extraordinary vehicle of a Rule 59(e) motion is a curious one.  Denials of ECFs are not set in stone, and the Department has always advised borrowers to resubmit ECFs if they "can provide additional information to show that [their] employment qualifies."  AR 277 (Mr. Rudert's ECF response).  If Mr. Rudert believes VVA did directly provide services to individuals with disabilities but that he

was denied because the Department concluded that the provision of those services was not VVA's primary purpose, then the solution is simple—he need only submit evidence to the Department showing that VVA satisfies the outright provision of services standard for his prior employment at VVA to meet the qualifications for loan forgiveness (as the Department is not currently applying the primary purpose standard pursuant to the Court's order vacating that standard for procedural defects).   But if there is no evidence that VVA provides such services directly, then the Department's judgment should stand.   The fact that, instead of proffering that evidence in the ordinary course, Mr. Rudert has chosen to seek extraordinary post-judgment relief by asking the Court to find the Department bound to an interpretation that it has never purported to apply to his ECF submission, is telling.

### C.       Rule 59(e) Relief Is Unavailable Because Mr. Rudert Could Have Made This Argument Prior to Judgment.

Mr. Rudert's Rule 59(e) motion fails for the independent reason that he could have argued prior to judgment that, despite the Department's express reliance on the outright provision of services standard, the Department had secretly applied the primary purpose standard to his ECF submission.

The logic of Mr. Rudert's argument is that FedLoan Servicing's letter to Ms. Radke referenced "primary purpose" in connection with VVA and, ergo, the Court should conclude that the Department was also applying that standard to Mr. Rudert in April 2016.  As discussed above, that logic is flawed.  But regardless, that same flawed logic could have been premised on the February 23, 2017 email from a FedLoan Servicing employee to Department employee Ian Foss, which Plaintiffs already put before the Court.  *See* Mem. Op. at 33 (citing Pls.' Supp. Br., Ex. B, ECF No. 24-2).  In that email, the FedLoan Servicing employee expressed concerns about "recent changes to the letter for . . . Vietnam Veterans of America," and noted that in Mr. Foss's "response

to . . . three organizations," including VVA, he "referenced that the organization's 'primary purpose' has to be to provide one of the qualifying services."  Pls.' Supp. Br., Ex. B.; *see also* Mem. Op. at 33.

In other words, the February 23, 2017 email does everything that Mr. Rudert believes Ms. Radke's letter does.  Both documents use the "primary purpose" phrase when discussing VVA, which could have (erroneously) signaled to Plaintiffs that that standard was applied to VVA employees, including Mr. Rudert.  Indeed, both postdate Mr. Rudert's denial by many months, and neither references Mr. Rudert's ECF submission in any way.  Thus, if Ms. Radke's letter could be read to suggest that the Department had secretly applied the primary purpose standard to Mr. Rudert—even though it never purported to—then surely the February 23, 2017 email could have been read the same way.  Yet Plaintiffs never made that argument in their briefs.  *See* Pls.' Reply in Supp. of Mot. to Allow for Extra-Record Review at 1, ECF No. 32 (asserting that Department "changed the interpretation of 'public service for individuals with disabilities or the elderly' by requiring that such services be provided 'directly' or 'outright,'" and identifying primary purpose standard only as change in interpretation of "public interest law services"); *see also* Pls.' Mot. to Allow for Extra-Record Review, ECF No. 24.[7]  Having failed to make the argument prior to judgment, Plaintiff cannot rely on it to seek Rule 59(e) relief.  *See, e.g.*, *Habliston*, 251 F. Supp.

---

[7] At oral argument, Plaintiffs' counsel, for the first time, tentatively suggested that the primary purpose standard may have been applied to Mr. Rudert.  *See* Tr. at 48:23-49:10, ECF No. 46.  However, this belated assertion did not adequately raise the issue to the Court, as arguments raised for the first time at oral argument are forfeited.  *See, e.g.*, *Chamber of Commerce of U.S. v. EPA*, 642 F.3d 192, 210 (D.C. Cir. 2011) ("The petitioners' suggestion of vacatur is forfeited . . . as they raised it for the first time at oral argument."); *Ark Las Vegas Restaurant Corp. v. NLRB*, 334 F.3d 99, 108 n.4 (D.C. Cir. 2003) (plaintiff forfeited argument made at oral argument where it had not raised the argument in its briefs); *Innovator Enters., Inc. v. Jones*, 28 F. Supp. 3d 14, 28 n.6 (D.D.C. 2014) (refusing to consider argument "because it was raised for the first time at oral argument").

3d at 245 (Rule 59(e) motion "may not be used to . . . raise arguments or present evidence that could have been raised prior to the entry of judgment" (citation omitted)).

Mr. Rudert claims that he could not have argued on the basis of the February 23, 2017 email that the primary purpose standard was applied to him because the email "did not link" the primary purpose standard to the outright provision of services standard, so "Plaintiffs could not then have contended with certainty that Mr. Rudert's VVA eligibility had been rescinded because of the 'primary purpose' standard." Pl.'s Mem. at 13. But as discussed above, the outright provision of services standard and the primary purpose standard are distinct links in a conceptual chain. And, also as discussed above, Ms. Radke's letter still does not enable Mr. Rudert to "contend[] with certainty," *id.*, that the Department applied that standard to him.

Further, Mr. Rudert's argument falls apart under scrutiny. Per his ECF submission, he believes that his employment with VVA qualifies as employment at an organization providing public interest legal services and services to individuals with disabilities. AR 268. The Department concluded that VVA was not the former on the basis of its funding source, AR 331, a conclusion Mr. Rudert has never contested. Plainly, then, the February 23, 2017 email could have led Mr. Rudert to (incorrectly) suspect that the juxtaposition of VVA and "primary purpose" might mean that the primary purpose standard was being applied to determine whether VVA provided services with individuals with disabilities. Thus, for the purposes of this motion, the February 23, 2017 email is materially indistinguishable from the letter to Ms. Radke, and Mr. Rudert's failure to raise this argument prior to judgment is fatal to his motion.

## II.   PLAINTIFF RUDERT IS NOT ENTITLED TO RELIEF FROM JUDGMENT UNDER RULE 60.

Mr. Rudert's alternative request for relief from judgment under Rule 60(b)(6) fails for the same reasons his Rule 59(e) request fails. Rule 60(b)(6) authorizes a district court to relieve a

party from final judgment for any of the reasons not specified elsewhere in Rule 60(b).  *See, e.g.*, *United States v. 8 Gilcrease Lane*, 668 F. Supp. 2d 128, 131 (D.D.C. 2009) (describing Rule 60(b)(6) as a "catch-all provision"), *aff'd*, 638 F.2d 297 (D.C. Cir. 2011).  However, that authority "should only be sparingly used," *Lightfoot v. District of Columbia*, 555 F. Supp. 2d 61, 70 (D.D.C. 2008) (citation omitted), and relief should be granted only where there are "'extraordinary circumstances' justifying the reopening of a final judgment," *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005); *see also Kramer v. Gates*, 481 F.3d 788, 792 (D.C. Cir. 2007) (plaintiff "must clear a very high bar to obtain relief under Rule 60(b)(6)").

For the same reasons Mr. Rudert is not entitled to relief under Rule 59(e), he is not entitled to relief under Rule 60(b)(6).  The letter received by Ms. Radke in March 2018 does not call into question the Court's conclusion that the outright provision of services standard was properly applied to Mr. Rudert in April 2016.  Accordingly, it does not raise an issue "so central to the litigation that it shows the initial judgment to have been manifestly unjust."  Pl.'s Mem. at 15 (quoting *Good Luck Nursing Home, Inc. v. Harris*, 636 F.2d 572, 577 (D.C. Cir. 1980)); *see also Stanford v. Potomac Elec. Power Co.*, Civ. A. No. 1:04-1461 (RBW), 2006 WL 1722329, at *4 (D.D.C. June 21, 2006) (denying Rule 60(b)(6) motion where new evidence "demonstrates, at best, a speculative inference" supporting plaintiff's claims); *cf. Comp. Prof'ls for Soc. Responsibility v. U.S. Secret Serv.*, 72 F.3d 897, 903 (D.C. Cir. 1996) (new evidence was "central to the litigation" where, had "the court . . . taken it into consideration, [it] would have affected the outcome").

Moreover, Mr. Rudert could have made this same argument prior to judgment based on the February 23, 2017 email.  His failure to do so precludes Rule 60(b)(6) relief.  *See, e.g.*, *West v. Holder*, 309 F.R.D. 54, 59 (D.D.C. 2015) ("'Re-litigating arguments or legal theories that could have been raised earlier do[es] not qualify as an 'extraordinary circumstance.'" (quoting *Lardner*

17

*v. FBI*, 875 F. Supp. 2d 49, 53 (D.D.C. 2012)); *Taitz v. Obama*, 754 F. Supp. 2d 57, 61 (D.D.C. 2010) ("[P]laintiff cannot use her Rule 60(b) motion to raise legal arguments that were available to her [before].").

## **CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiff Jamie Rudert's Motion to Alter or Amend the Judgment.

Dated:  April 11, 2019

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director

*/s/ Chetan A. Patil*
CHETAN A. PATIL (DC 999948)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box No. 883
Ben Franklin Station
Washington, DC 20044
Tel.: (202) 305-4968
Fax: (202) 616-8470
Email: chetan.patil@usdoj.gov

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 11, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notice of such filing to all parties.

 */s/ Chetan A. Patil*
CHETAN A. PATIL