**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICAN BAR ASSOCIATION, *et al.*, | ) |
| Plaintiffs, | ) |
| v. | ) Civil Action No. 16-2476-TJK |
| UNITED STATES DEPARTMENT OF EDUCATION, *et al.*, | ) |
| Defendants. | ) |

**PLAINTIFF JAMIE RUDERT'S REPLY IN SUPPORT OF HIS**
**MOTION TO ALTER OR AMEND THE JUDGMENT**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 2

I.  THE DEPARTMENT'S LETTER TO MS. RADKE PROVES IT APPLIED THE
    "PRIMARY PURPOSE" STANDARD TO REVOKE MR. RUDERT'S PSLF
    ELIGIBILITY AS A FORMER VVA EMPLOYEE .......................................................... 3

    A.  The Department Applied The "Primary Purpose" Standard To Revoke Ms.
        Radke's PSLF Eligibility ...................................................................................... 3

    B.  The Department Applied The "Primary Purpose" Standard To Deny PSLF
        Eligibility To All VVA Employees, Including Mr. Rudert .................................... 5

II. MR. RUDERT IS ENTITLED TO POST-JUDGMENT RELIEF ...................................... 11

    A.  Evidence Available Prior To Judgment Was Insufficient To Establish That
        The Department Denied Mr. Rudert's PSLF Employment Eligibility Due
        To The "Primary Purpose" Standard .................................................................. 11

    B.  The Newly Discovered Evidence Compels Reconsideration Of The
        Court's Ruling .................................................................................................... 15

CONCLUSION .................................................................................................................. 16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Computer Prof'ls for Soc. Responsibility v. U.S. Secret Serv.*,
  72 F.3d 897 (D.C. Cir. 1996) ................................................................................15

*FEC v. Legi-Tech, Inc.*,
  75 F.3d 704 (D.C. Cir. 1996) ................................................................................13

*Habliston v. FINRA Dispute Resolution, Inc.*,
  251 F. Supp. 3d 240 (D.D.C. 2017) ......................................................................14

*James Madison Project v. Dep't of Justice*,
  302 F. Supp. 3d 12 (D.D.C. 2018), *reconsideration denied in part*, 320 F.
  Supp. 3d 143 (D.D.C. 2018) ..................................................................................7

*Magliore v. Brooks*,
  844 F. Supp. 2d 38 (D.D.C. 2012) ........................................................................11

*Patton Boggs LLP v. Chevron Corp.*,
  683 F.3d 397 (D.C. Cir. 2012) ..............................................................................14

*Slate v. Am. Broad. Cos.*,
  12 F. Supp. 3d 30 (D.D.C. 2013) ..........................................................................13

*State of N.Y. v. United States*,
  880 F. Supp. 37 (D.D.C. 1995) ..............................................................................13

*United States v. Godines*,
  433 F.3d 68 (D.C. Cir. 2006) ................................................................................13

*Wilmina Shipping AS v. U.S. Dep't of Homeland Sec.*,
  75 F. Supp. 3d 163 (D.D.C. 2014) ........................................................................12

**Statutes**

Administrative Procedure Act, 5 U.S.C. § 500 *et seq.*...............................................2, 9

**Other Authorities**

34 C.F.R. § 685.219 ......................................................................................................5

Fed. R. Civ. P. 59(e) ................................................................................................3, 11

Fed. R. Civ. P. 60 ..........................................................................................................3

Fed. R. Civ. P. 60(b)(2)..................................................................................................................11

Fed. R. Civ. P. 60(b)(6)............................................................................................................11, 15

**INTRODUCTION**

The Department of Education's ("Department") Opposition to the present motion is consistent with the approach it has taken throughout the course of this litigation:  it asks the Court to engage in the willing suspension of disbelief.  As before, the Department urges the Court to disregard the plain import of highly probative evidence, divert blame to the Department's chosen contractor, and accordingly absolve the Department of responsibility for its harmful and unlawful actions.  But this time, the Department goes a step further.  It asks the Court to turn a blind eye to the Department's own prior admission and representation to this Court—*i.e.*, that it renders Public Service Loan Forgiveness ("PSLF") employment eligibility determinations according to its assessment of the borrower's employer, and not of the individual borrower.  The Court should not suspend its critical faculties.

Contrary to the Department's contention, Mr. Rudert's motion to alter or amend the judgment is not premised on "rank speculation."  (Opp'n at 1.)  Nor, for that matter, were his and the other Plaintiffs' claims so premised prior to judgment.  Indeed, in the prior proceedings, the Department effectively argued as much by repeatedly denying that it had ever changed its interpretations of the qualifying criteria listed in the PSLF program's governing regulation.  Evidence Plaintiffs discovered prior to judgment proved the Department's assertions to be false.  Likewise here, the evidence Mr. Rudert has discovered post-judgment confirms that the Department based its denial of his and other Vietnam Veterans of America ("VVA") employees' PSLF eligibility on an unlawfully adopted—and now vacated—interpretation.

The events have made clear that this is not an ordinary case.  From the outset, the Department opted not to defend the procedural soundness of its actions.  Instead, it simply and flatly denied that it ever took those actions.  Plaintiffs, including Mr. Rudert, consistently alleged that the Department had changed its interpretations of the PSLF qualifying criteria and based its

reversals of Plaintiffs' PSLF employment eligibility determinations (and revocation of past credited payments toward loan forgiveness) on those changed interpretations.  Despite the broad nature of Plaintiffs' challenge, the Department chose to proffer and certify an exceedingly limited administrative record that effectively shielded from full review its underlying decisionmaking relating to its changes of interpretation.  As a result, Plaintiffs were forced to conduct extensive fact-finding to confirm that the Department had made those changes.  But when confronted with such evidence, the Department took a surprising and different tack.  It maintained that its interpretations had remained unchanged, refused to acknowledge the truth of what the evidence revealed, and asked the Court simply to disregard the evidence.  The Court refused to do so, appropriately considered the extra-record evidence, and thus concluded that the Department had violated the basic requirements of the Administrative Procedure Act ("APA").  The Court should similarly reject the Department's latest attempts to suppress evidence of its unlawful actions.

To be sure, Mr. Rudert recognizes that a motion to alter or amend the judgment is to be pursued only in exceptional circumstances.  Such circumstances exist here.  The evidence Mr. Rudert has discovered since the Court entered judgment was unavailable to him earlier and directly affects the success of his claims.  Allowing the judgment against him to stand would contradict the Court's ruling with respect to other Plaintiffs whose employment eligibility the Department denied through its application of the same invalidated standard.  Mr. Rudert is therefore entitled to post-judgment relief.

## ARGUMENT

Distilled to its essence, the Department's Opposition relies on two baseline arguments:  (1) that its letter to former VVA employee Amanda Radke explaining the reason for retroactively denying her PSLF eligibility has no bearing on its decision with respect to Mr. Rudert; and (2) that Mr. Rudert is not entitled to post-judgment relief because he fails to satisfy the requirements for

obtaining such relief under Rules 59(e) and 60 of the Federal Rules of Civil Procedure.  Neither of these arguments withstands scrutiny.

## I.  THE DEPARTMENT'S LETTER TO MS. RADKE PROVES IT APPLIED THE "PRIMARY PURPOSE" STANDARD TO REVOKE MR. RUDERT'S PSLF ELIGIBILITY AS A FORMER VVA EMPLOYEE

Throughout this litigation, the Department has maintained and represented that it evaluates the PSLF employment eligibility of borrowers who work for private, non-501(c)(3) not-for-profit organizations on an employer- as opposed to borrower-specific basis.  Now, however, the Department suddenly seeks to reverse course in an unconvincing attempt to account for the differences in the stated reasoning behind its reversals of eligibility provided to Mr. Rudert and Ms. Radke.  Moreover, the Department avers that its use of the term "primary purpose" with respect to Ms. Radke's denial was the result of an "unnecessary" or "erroneous" insertion of that phrase by its PSLF servicer, FedLoan Servicing.  This is not the first time the Department has sought to disclaim responsibility for its actions by shifting blame in this manner, and just as before, the Department's arguments in this regard are entirely unpersuasive.

### A.  The Department Applied The "Primary Purpose" Standard To Revoke Ms. Radke's PSLF Eligibility

The retroactive denial letter sent to Ms. Radke is unambiguous.[1]  In the letter, FedLoan Servicing explained that, "[a]fter further review, and *after consulting with the Department of*

---

[1] Despite acknowledging "the Court's ruling [granting] Plaintiffs' prior motions for extra-record review," (Opp'n at 6 n.3), the Department nonetheless suggests that the Court should disregard the letter to Ms. Radke because "it plainly was not before the Department when making any of the challenged agency actions at issue in this litigation" and "it postdates the certification of the administrative record[.]"  (Opp'n at 9 n.5).  The Court rejected these very same arguments in its ruling, holding that "extra-record review of documents not before the agency is precisely what the exceptions to the general rule in APA cases permit."  Mem. Op. at 51.  In any event, Mr. Rudert does not suggest that the letter to Ms. Radke specifically should have been included in the administrative record, but that the letter indicates on its face that the Department communicated with FedLoan Servicing about the standard to be used in considering the PSLF eligibility of VVA

*Education*, we determined that [Ms. Radke's prior] approval was issued in error because Vietnam Veterans of America does not provide a qualifying service for the PSLF program *as its primary purpose*." Ex. 1 to Radke Decl. (emphasis added).  The letter went on to specify that "we could find no evidence that Vietnam Veterans of America provides services *directly* to individuals with disabilities *as part of its primary purpose*." *Id.* (emphasis added).

The significance of this wording is two-fold.

First, on its face, the letter demonstrates that FedLoan Servicing reached its determination with the input and at the direction of *the Department*, as is the ordinary course regarding PSLF eligibility determinations for private, non-501(c)(3) not-for-profit organizations.  *See* Mem. Op. at 52 (noting the "integrated way in which ECFs are processed"); AR 160-61 (requiring that ECFs for "private organization[s] providing public services" be "escalate[d] to the Department for approval").  The Department's protestation that the letter "was not issued by the Department itself, but rather by FedLoan Servicing," (Opp'n at 9 n.5), is thus a red herring.

Second, the explanation provided in the letter demonstrates that, far from being "unnecessarily" or "erroneously" used, (Opp'n at 10-11), the "primary purpose" standard was the driving force behind the Department's decision to rescind Ms. Radke's eligibility for PSLF as a former VVA employee.  The letter *twice* states the Department's determination that VVA did not provide a qualifying service as its "primary purpose."  The first such statement does so plainly, without any reference whatsoever to the type of service under consideration.  The second statement elaborates, explaining that the Department "could find no evidence that [VVA] provides services directly to individuals with disabilities as part of its primary purpose."  Ex. 1 to Radke Decl.

_____

employment—precisely the types of communications Mr. Rudert's counsel sought in its public records requests.  *See* Mem. at 11-13.

Neither use of the term "primary purpose" suggests that the Department's choice of phrase was gratuitous, or that its consideration of whether the provision of services was the "primary purpose" of VVA was secondary. The Department now argues, for the first time, that it engaged in a "two-step analysis" in determining the PSLF eligibility of private, non-501(c)(3) not-for-profit organizations. (Opp'n at 9-10).[2] But, even giving the Department the benefit of the doubt on this point, by the Department's own admission, "*[o]nly once it is apparent that the organization does provide qualifying public services* would the Department move to the second order question of whether the provision of such services was a primary purpose of the organization." *Id.* at 10 (emphasis added). It necessarily follows, then, that the Department determined that VVA *did* provide qualifying public services, but subsequently determined that the provision of those services was not part of VVA's "primary purpose." It was this latter determination that prompted the Department to issue its denial letter to Ms. Radke.

**B.      The Department Applied The "Primary Purpose" Standard To Deny PSLF Eligibility To All VVA Employees, Including Mr. Rudert**

Throughout its summary judgment briefing, the Department adamantly represented that it renders PSLF employment eligibility determinations according to whether a borrower's employer qualifies as a "public service organization" under the program's governing regulation, 34 C.F.R. § 685.219, not according to an individual borrower's circumstances or job duties. *See* Defs.' Mot. for Summ. J. at 23-24 (ECF No. 22) (noting that the Department "made the decision to interpret the statutory phrase 'public service job' such that it would 'define the types of organizations that would qualify as eligible *employers* for purposes of [PSLF],' rather than the 'specific job types that might qualify,' and base eligibility for the forgiveness on the type of organization that employs

---

[2] The Department's actions in Plaintiff Burkhart's case appear to belie this claim. *See infra* at 9 n.4.

the borrower") (emphasis added); Defs.' Reply at 13, 15 n.4 (ECF No. 31) (same).  Now, confronted with clear evidence that it applied the unlawfully adopted—and now invalidated— "primary purpose" standard to deny the PSLF eligibility of VVA employees, the Department falls back, once again, on attempting an unconvincing sleight of hand—*i.e.*, it seeks to conflate its ultimate determination about a borrower's eligibility for loan forgiveness with the predicate determination of whether the borrower's employer qualifies as a public service organization under the PSLF regulation.  *See* Opp'n at 11 (arguing that, "[a]lthough the PSLF regulation determines public interest jobs by looking to public service organizations, and Ms. Radke and Mr. Rudert both worked at the VVA, . . . the Department must determine each borrower's eligibility for *loan forgiveness* on an individual basis") (emphasis added).  But the Court has already seen through this trick and rejected the Department's argument.  Indeed, the Court correctly determined in holding that the Department's denial letters amount to final agency action that "this argument conflates *separate determinations* that the Department undertakes in connection with the PSLF Program."  Mem. Op. at 21 (emphasis added).  "That the Individual Plaintiffs have not submitted applications for loan forgiveness does not undercut the conclusion that, at the very least, the denial letters reflect the end of the Department's decisionmaking process concerning whether a borrower's employer qualifies as a public service organization[] . . . ."  *Id.* at 22.  The Department's suggestion that it somehow applied different standards in denying the PSLF employment eligibility of Mr. Rudert and Ms. Radke, who were employees of the same organization, is simply untenable and should not be credited by the Court.

The Department argues that the Court should refrain from concluding that it applied the "primary purpose" standard in Mr. Rudert's case because "the Department has never purported . . . to have applied the primary purpose standard to Mr. Rudert[.]"  (Opp'n at 12.)  But this argument

is unpersuasive for at least two reasons.  First, by the same logic, the Court should not have found that the Department changed any of the interpretations at issue in this case, since the Department "never purported" to have made those changes.  *See* Defs.' Mot. for Summ. J. at 29-30 (arguing that "there was no about face by the agency with respect to any policy or interpretation" and that "the Department's interpretation of the statute and the regulations has been consistent and unchanged"); Defs.' Reply at 17 (stating pointedly that "the Department did not change its interpretation of the PSLF regulations" and that its reversals did "not reflect changes in the way the Department interpreted its regulations").  Of course, the Court ***did*** correctly determine that the Department had in fact changed its interpretations based on the extra-record evidence Plaintiffs submitted.  Mem. Op. at 35, 37.

Second, as already explained, the Department's determinations regarding PSLF employment eligibility are, naturally, ***employer***-specific as opposed to ***borrower***-specific, given the organization-based approach specified in the regulation.  The very implication that the Department could be applying different standards to deny PSLF eligibility to borrowers employed by a single organization claiming to provide the same type of qualifying public services is troubling at best, and undermines any entitlement the Department now claims to a "presumption of regularity" with respect to its actions.  (Opp'n at 13.)  *See James Madison Project v. Dep't of Justice*, 302 F. Supp. 3d 12, 32 (D.D.C. 2018), *reconsideration denied in part*, 320 F. Supp. 3d 143 (D.D.C. 2018) ("In short, the presumption of regularity applies to 'actions taken or documents produced within a process that is *generally reliable*[,] . . . transparent, accessible, and often familiar.'"  (quoting *Latif v. Obama*, 677 F.3d 1175, 1207 (D.C. Cir. 2012) (Tatel, J., dissenting) (emphasis added))).

Tellingly, the Department opts simply to label Mr. Rudert's motion "speculative" rather than make any serious attempt to explain the motivations behind its actions in his case. The Department admits and acknowledges the Court's finding that the administrative record was insufficient to determine what standards the Department applied in reaching its reversal determinations, (Opp'n at 12), but now urges against consideration of extra-record evidence that reveals the standard it applied to employees of VVA. The timeline of events, with which the Department declines to engage, further highlights and underscores the import of that evidence.

As was the case with two of the other Individual Plaintiffs in this case, the Department originally informed Mr. Rudert that his employment qualified for PSLF purposes. *See* Mem. Op. at 12. In fact, Mr. Rudert twice received confirmation to this effect; after the first such notice, his loans were transferred to FedLoan Servicing, thereby beginning the counting and tracking of his qualifying payments toward loan forgiveness. *Id.* Later, as was also true of the other Individual Plaintiffs, the Department informed Mr. Rudert that it had reversed its determination regarding his employer's eligibility, and that his payment credits accumulated while employed at VVA no longer counted toward loan forgiveness. *Id.* at 12-13. Ms. Radke, who started working at VVA in July 2013 (approximately 15 months after Mr. Rudert joined the organization), submitted ECFs to the Department and likewise was informed that her VVA employment qualified for PSLF.[3] Radke Decl. ¶¶ 3, 6. She then left VVA in June 2015, approximately three months prior to Mr. Rudert's departure. *Id.* ¶ 7. Mr. Rudert received his denial notice in April 2016, after he submitted a new ECF to account for the remainder of his employment period with VVA. Mem. Op. at 12-13. This notice provided no explanation of the standard the Department used in issuing its reversal, and

---

[3] Ms. Radke's March 2018 denial letter states that FedLoan Servicing received her initial ECF on "August 24, 2012." Ex. 1 to Radke Decl. This appears to be a typographical error, as Ms. Radke did not begin working for VVA until July of the following year. Radke Decl. ¶ 3.

instead stated only that the Department was revoking Mr. Rudert's prior approved employment periods "because VVA 'does not provide a qualifying service.'"  *Id.* at 13.[4]  Meanwhile, Ms. Radke opted not to submit another ECF to account for the remainder of her employment with VVA, in part because she had heard about Mr. Rudert's denial.  Radke Decl. ¶¶ 10-11.

It was not until Mr. Rudert sought an explanation through the office of his U.S. Representative that the Department alluded to any reasoning behind its decision.  The explanation the Department provided in a letter to that office in August 2016 was that VVA did not provide services "outright" to disabled Vietnam veterans.  *See* Mem. Op. at 39; AR 330-31.  This term does not appear in the statute, the regulation, or any guidance or other public-facing materials set forth by the Department.  Given this, and the fact that he twice had been approved prior to his denial, Mr. Rudert reasonably concluded that the Department had changed its interpretation of the regulatory term "public service for individuals with disabilities and the elderly" to revoke VVA's status as a qualifying public service organization, and proceeded to challenge that change as improperly adopted under the APA.[5]  As this case was pending, Ms. Radke finally received her

---

[4] Also in 2016, Plaintiffs Burkhart and Quintero-Millan received letters informing them that their employment with the American Bar Association ("ABA") did not qualify for PSLF.  *See* AR 214-15 (Oct. 12, 2016 denial letter to Mr. Burkhart); AR 237-39 (Nov. 19, 2016 denial letter to Ms. Quintero-Millan).  Similar to the notice Mr. Rudert received, neither of these letters referenced the Department's application of the "primary purpose" standard.  *See* Mem. Op. at 41-42.  In fact, the letter to Mr. Burkhart stated that his employer "do[es] not provide a qualifying service" and referenced two possible qualifying services:  the provision of public interest legal services and the provision of public library services.  AR 214.  However, the Department revealed in its letters to the ABA that it had actually applied the "primary purpose" standard to deny PSLF eligibility to the ABA's employees.  *See* AR 190-91, 192-93.

[5] Mr. Rudert also had explained in his letter to the Department (via FedLoan Servicing) and in his letter to his U.S. Representative—both prior to the Department's issuance of its August 2016 letter—that he "provide[d] direct representation to veterans appealing their denied disability claims at no charge to the veteran," and that he "provide[d] legal assistance to hundreds of disabled veterans in appeals to the denial of their claims for benefits."  AR 288, 322.  The Department never once explained how the provision of these services failed to satisfy the supposed "outright" standard it applied to revoke Mr. Rudert's PSLF employment eligibility.  Indeed, the supporting

own denial letter in March 2018, but instead of repeating the rationale provided to Mr. Rudert, her letter indicated that the Department was "reversing [its] approval of the periods of employment associated with [VVA] and revoking credit for any payments made" during those periods because it "could find no evidence that [VVA] provides services directly to individuals with disabilities as part of its primary purpose." Ex. 1 to Radke Decl. As Mr. Rudert explained in his opening brief, during the period between the Department's issuance of its nondescript April 2016 denial notice to Mr. Rudert and Ms. Radke's receipt of her March 2018 letter, the Department solidified its adoption and application of the now-vacated "primary purpose" standard to all private, non-501(c)(3) not-for-profit organizations. (Mem. at 6-7.) It is not surprising that, once the Department had fully settled on this new standard, it modified the explanation provided to VVA employees for denying their PSLF employment eligibility.

In its Opposition, the Department declines to address this sequence of events. Instead, the Department simply argues that the reason provided to Mr. Rudert is consistent with that provided to Ms. Radke, and that the use of the term "primary purpose" in the letter to Ms. Radke was "unnecessary" or "erroneous." (Opp'n at 1, 10-11.) But for reasons already explained, *supra* 4-5, this contention lacks merit. Moreover, even assuming for the sake of argument that the Department was employing a borrower-specific lens in assessing Mr. Rudert's and Ms. Radke's

---

materials Mr. Rudert attached to his letters made abundantly clear that VVA provides direct services to veterans, regardless of whether that provision amounts to VVA's "primary purpose." *See, e.g.*, AR 308 (VVA Deputy Director of Veterans Benefits position description listing "providing substantive advice on claims, some claims work . . . [and] provid[ing] direct representation" to veterans among "[d]uties and [r]esponsibilities"); AR 312 (explaining that VVA Legal Services "provide[s] assistance to veterans seeking benefits and services from the government . . . working under the theory that a veteran representative should be an advocate for the veteran *rather than simply a facilitator*") (emphasis added). Thus, if all Mr. Rudert needed to do to prove his VVA employment satisfied the "outright" standard was to submit this sort of evidence, as the Department suggests, (Opp'n at 13-14), then the Department would have had no basis on which to deny him under this standard as an original matter.

10

PSLF employment eligibility, the Department fails to account for the fact that Ms. Radke's period of employment at VVA overlapped entirely with that of Mr. Rudert, and that they each provided the same services to disabled veterans. *See* Pls.' Mot. for Summ. J. at 7 (ECF No. 17) & Ex. B ¶¶ 4, 6-7, 11 (ECF No. 17-2); Radke Decl. ¶¶ 3-4, 7. There is simply no basis upon which to conclude that the Department applied one standard to Mr. Rudert and another standard to Ms. Radke, and the facts make it clear that the Department did not do so. The Department applied the "primary purpose" standard to both, and to all other VVA employees, when it rescinded VVA's eligibility as a public service organization.

## II.     MR. RUDERT IS ENTITLED TO POST-JUDGMENT RELIEF

Because the newly discovered evidence Mr. Rudert has uncovered proves that the Department rescinded the PSLF eligibility of his VVA employment pursuant to the since-vacated "primary purpose" standard, he is entitled to relief under Rule 59(e) and/or Rule 60(b)(6).[6] Mr. Rudert could not have made this argument in good faith prior to judgment because the evidence available at the time was insufficient to draw this conclusion. Mr. Rudert therefore satisfies the requirements to obtain relief at this juncture.

### A.     Evidence Available Prior To Judgment Was Insufficient To Establish That The Department Denied Mr. Rudert's PSLF Employment Eligibility Due To The "Primary Purpose" Standard

As previously explained, prior to when the Court issued judgment, the only record evidence of the standard the Department applied to Mr. Rudert was the Department's invocation of the "outright" or "directly" standard in its August 2016 letter and in its briefs in this case. (Mem. at

---

[6] The Department does not respond to, and thus concedes, Mr. Rudert's argument that Ms. Radke's denial letter is newly discovered evidence and that Mr. Rudert's and counsel's efforts to uncover similar evidence were reasonably diligent pursuant to the requirements of Rule 60(b)(2). *See* Mem. at 4-15; *Magliore v. Brooks*, 844 F. Supp. 2d 38, 43 (D.D.C. 2012) (court may treat party's failure to address or rebut an argument as concession of the issue).

10.)  Accordingly, Mr. Rudert reasonably focused on this explanation in his challenge, and counsel sought records evidencing the Department's adoption and application of this new standard.  Mr. Rudert had already left VVA and was not aware that any former colleagues later received denial letters, much less that any reasoning articulated in those letters expanded upon the reason the Department had provided him. [7]  FedLoan Servicing did eventually provide a single email suggesting the Department was applying the "primary purpose" standard to VVA, but for reasons already explained, (Mem. at 13-14), the information in the email was insufficient to deduce that the Department had applied the "primary purpose" standard when it denied Mr. Rudert.  It was possible, for example, that the email's reference to "primary purpose" in relation to VVA had simply been a mistake (as the Department now unconvincingly attempts to argue in connection with Ms. Radke's denial letter), as standing alone, it did not appear to comport with the explanation previously provided to Mr. Rudert.  Alternatively, the Department could have been applying the "primary purpose" standard to deny a claimed qualifying service other than "public service for individuals with disabilities," the service Mr. Rudert claimed.  This ambiguity would have rendered too tenuous any attempt to draw a conclusion regarding Mr. Rudert, particularly in a summary judgment proceeding, where "the court must 'view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion.'" *Wilmina Shipping AS v. U.S. Dep't of Homeland Sec.*, 75 F. Supp. 3d 163, 167 (D.D.C. 2014) (quoting *Scott v. Harris*, 550 U.S. 372, 378 (2007)) (internal quotation marks and citation omitted).

The Department's denial letter to Ms. Radke provided the first direct connection between the Department's application of the "outright" or "directly" standard and the application of the

---

[7] In fact, as Mr. Rudert's original denial notice provided no detailed explanation, *see supra* at 8-9, it would not have been unreasonable to assume that any subsequent notices to his former colleagues, if they existed, would be similarly devoid of reasoning.

"primary purpose" standard.  The February 23, 2017 email does not "do[] everything that Mr. Rudert believes Ms. Radke's letter does," (Opp'n at 15), because the former makes no mention whatsoever of the "outright" or "directly" standard.  In this regard, the Department's contention that Mr. Rudert belatedly seeks to set forth a new legal argument or theory, (*id.* at 15-16), is misplaced.[8]  Mr. Rudert's legal argument—that the Department unlawfully adopted and applied a changed interpretation of the PSLF regulation's qualifying criteria to revoke his eligibility as a former VVA employee—remains entirely unchanged.  The intervening event that prompts him to seek reconsideration of the Court's judgment is the discovery of new evidence confirming the details of that change, which the Court found not to have occurred based on the evidence available prior to judgment.  *See Slate v. Am. Broad. Cos.*, 12 F. Supp. 3d 30, 34 (D.D.C. 2013) ("*Absent . . . new evidence*, the law is well-settled that litigants may not use Rule 59(e) either to repeat unsuccessful arguments or to assert new but previously available arguments.") (emphasis added); *State of N.Y. v. United States*, 880 F. Supp. 37, 38 (D.D.C. 1995) (Rule 59(e) motion "must address *new evidence* or errors of law or fact and cannot merely reargue previous factual and legal

---

[8] Likewise, the Department's argument that Mr. Rudert's counsel "forfeited" the argument that the Department may have applied the "primary purpose" standard against him by raising this possibility "for the first time" at oral argument in response to a question from the Court, (Opp'n at 15 n.7), is unavailing.  As a threshold matter, waiver of this sort almost categorically occurs in the appellate context, rather than at the district court phase of litigation, and the Department's position ignores the fact that the evidence supporting the contention that it applied the "primary purpose" standard to Mr. Rudert was unavailable until after the Court entered judgment.  In any case, the contention is a factual one that does not change Mr. Rudert's legal theory, and is consistent with the facts underlying claims made by other Plaintiffs in this case.  For this reason, the Department cannot plausibly claim to have been prejudiced, and the guiding principles of waiver are not applicable.  *Cf. United States v. Godines*, 433 F.3d 68, 70 (D.C. Cir. 2006) (considering argument made for the first time at oral argument where a change in law occurred following the completion of briefing and the court had "not afforded the parties the opportunity to submit supplemental briefing on the issue"); *FEC v. Legi-Tech, Inc.*, 75 F.3d 704, 707 (D.C. Cir. 1996) (finding no abuse of discretion where district court allowed party to raise supplemental authority as the functional equivalent of a new *legal claim* where there was no prejudice to the non-moving party).

assertions") (internal quotation marks and citation omitted) (emphasis added).  The cases on which the Department relies to argue that Mr. Rudert impermissibly seeks to advance a "new legal theory" are simply inapposite.  *See Patton Boggs LLP v. Chevron Corp.*, 683 F.3d 397, 403 (D.C. Cir. 2012) (affirming district court's denial of Rule 59(e) motion where, unlike Mr. Rudert, movant "d[id] not argue that any" permissible grounds for such a motion, including the availability of new evidence, applied); *Habliston v. FINRA Dispute Resolution, Inc.*, 251 F. Supp. 3d 240, 245-46 (D.D.C. 2017) (denying Rule 59(e) motion where movants "simply repeat[ed]" prior arguments and contended they had "new facts," but failed "even [to] attempt[] to argue that they did not have access to these 'facts'" prior to judgment).

When the Court issued its judgment against Mr. Rudert, it understood the evidence to show only that the standard the Department applied to deny the PSLF eligibility of his VVA employment was the purported "outright" or "directly" requirement, which the Court deemed "to reflect a straightforward application of the regulation to Rudert's case."  Mem. Op. at 38-39.  The letter to Ms. Radke reveals that this understanding was based on incomplete information, as it demonstrates that the Department in fact found that VVA *does* provide services directly to the disabled, but just not as VVA's "primary purpose."  *See supra* at 5.  This explanation makes sense, as the Department approved ECFs submitted by Mr. Rudert, Ms. Radke, and presumably other VVA employees, before it started denying them.  The only explanation the Department has heretofore provided for its reversal of position regarding VVA—while providing no evidence in support—is that FedLoan Servicing issued the prior approvals "in error."  *See* Defs.' Mot. for Summ. J. at 10.  This is the same explanation the Department provided regarding the other Plaintiffs in this case, and that the Court rejected in light of the extra-record evidence it considered.  *See* Mem. Op. at 31-35.  The new evidence Mr. Rudert brings forward reveals that the impetus behind the Department's shift

regarding VVA was an actual change in interpretation of the PSLF regulation—indeed, it was the same change on which the Department relied to deny PSLF employment eligibility to two of the prevailing Plaintiffs in this case.

> **B.     The Newly Discovered Evidence Compels Reconsideration Of The Court's Ruling**

Because the new evidence proves the Department changed its interpretation of the PSLF regulation's qualifying criteria to deny Mr. Rudert's eligibility as a former VVA employee, the Court should revise its holding that it "cannot conclude, 'as a factual matter,' that the Department 'changed its past position . . . .'" Mem. Op. at 39 (quoting *United Student Aid Funds, Inc. v. King*, 200 F. Supp. 3d 163, 170 (D.D.C. 2016)).  The letter to Ms. Radke constitutes the "additional supporting evidence" that the Court held was necessary to determine otherwise.  *Id.*

The Department's arguments that Mr. Rudert is not entitled to Rule 60(b)(6) relief rely entirely on its position that the denial letter to Ms. Radke does not implicate the Department's decisionmaking with respect to Mr. Rudert, and that Mr. Rudert supposedly could have made the same argument prior to judgment.  (Opp'n at 16-18.)  For reasons explained above, these arguments are unconvincing and should be rejected.  To the extent the Court agrees that the Department applied the "primary purpose" standard to revoke VVA's status as a PSLF-qualifying public service organization, the Court should amend its judgment and find in favor of Mr. Rudert. The reason for this is simple, as the Court has already vacated precisely this same standard, as well as the denial letters issued to the other Plaintiffs based on this standard.  Mem. Op. at 53.  Quite clearly, the letter to Ms. Radke, which proves the Department applied the same unlawful standard to employees of VVA, is "central to the litigation[,] and if the court had taken it into consideration, the new evidence would have affected the outcome."  *Computer Prof'ls for Soc. Responsibility v. U.S. Secret Serv.*, 72 F.3d 897, 903 (D.C. Cir. 1996) (internal quotation marks omitted).  To

disregard this new evidence would be inconsistent with the Court's prior holding with respect to the "primary purpose" standard, and would be fundamentally unjust to Mr. Rudert and other former and current VVA employees.

## CONCLUSION

For the foregoing reasons, Plaintiff Jamie Rudert respectfully requests that the Court grant his Motion to Alter or Amend the Judgment and order the requested relief.


Dated:  April 18, 2019

Respectfully submitted,

 _/s/ Chong S. Park_

Chong S. Park (D.C. Bar No. 46050)
John T. Dey (D.C. Bar No. 1029475)
ROPES & GRAY LLP
2099 Pennsylvania Avenue, NW
Washington, D.C. 20006
(202) 508-4600
Chong.Park@ropesgray.com

_Attorneys for Plaintiffs_

**CERTIFICATE OF SERVICE**

I hereby certify that on this 18th day of April, 2019, I electronically filed the foregoing with the Clerk of the Court using the Court's electronic filing system, which will send a notice of electronic filing to all Counsel of Record.

                                           */s/     Chong S. Park*

                                           Chong S. Park