UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN BAR ASSOCIATION *et al.*,<br><br>*Plaintiffs*,<br>v.<br><br>UNITED STATES DEPARTMENT OF EDUCATION *et al.*,<br><br>*Defendants*. | Civil Action No. 16-2476 (TJK) |

## MEMORANDUM OPINION

Plaintiff Jamie Rudert seeks relief from the Court's decision to grant summary judgment against him and in favor of Defendants on his claims that the Department of Education violated the Administrative Procedure Act (APA) and the Fifth Amendment's Due Process Clause when it determined that loan payments he made while employed at Vietnam Veterans of America (VVA) did not qualify for loan forgiveness under the Public Service Loan Forgiveness (PSLF) Program. Rudert has moved to alter or amend the Court's judgment pursuant to Federal Rule of Civil Procedure 59(e) after obtaining new evidence—a letter issued by the Department to another former VVA employee—that he contends justifies this extraordinary remedy. However, he has not met the stringent requirements of Rule 59(e) because the new evidence would not have altered the Court's summary judgment decision. Accordingly, and for the reasons explained below, the Court will deny his motion.

## I.  Background

The Court's Memorandum Opinion, ECF No. 49 ("Mem. Op."), fully sets forth the factual background underlying Rudert's claims. Accordingly, only some relevant facts are recounted here.

Rudert began working at VVA, a 501(c)(19) not-for-profit organization that provides advocacy and support services to Vietnam veterans, in April 2012. ECF No. 17-2 ¶ 4; AR 315. While employed there, Rudert represented veterans with service-connected disability claims before the Board of Veterans' Appeals. ECF No. 17-2 ¶ 6. In July 2012, Rudert sought confirmation from the Department of Education (the "Department") that he would be eligible to participate in the PSLF Program while employed at VVA by submitting an Employment Certification Form (ECF). *Id.* ¶ 8. In response, he received a letter from FedLoan Servicing, which manages ECF submissions on behalf of the Department, indicating that his payments made while employed at VVA from April to June 2012 qualified for the PSLF Program. *Id.* About two years later, in October 2014, he received another letter confirming the same. *Id.* ¶ 10. Rudert departed VVA as Deputy Director in September 2015. *Id.* ¶ 11. Subsequently, FedLoan Servicing informed Rudert that, as of January 2015, he had made 30 qualifying payments while employed at VVA. *Id.* ¶ 10.

In early 2016, Rudert submitted another ECF, which covered the remainder of his loan payments while at VVA. *Id.* ¶ 12. He received a denial letter from FedLoan Servicing in April 2016 stating that, based on its "further research and after consulting with the Department," it "reversed [his] previously approved employment period" because VVA "does not provide a qualifying service." AR 282–83. After receiving that letter, Rudert sent a letter to the Department contesting the denial, AR 289, along with additional documentation that, he alleged, established that VVA "provides public service[s] for individuals with disabilities," AR 286. Subsequently, in June 2016, a congresswoman wrote to the Department on Rudert's behalf, inquiring about his eligibility for the PSLF Program. AR 320. In August 2016, the Department replied to the congresswoman in a letter confirming that VVA did not provide a qualifying

service because "while they facilitate the provision of disability-related services to Vietnam Veterans, they do not provide the services outright." AR 331. The Department also clarified that, although Rudert's initial ECF was "approved in error," the payments he made while employed at VVA did not qualify for the PSLF Program. *Id.*

Rudert, along with the American Bar Association and three other individual borrowers (collectively, "Plaintiffs"), then sued the Department and the Secretary of Education ("Defendants"). ECF No. 1. In their Motion for Summary Judgment, Plaintiffs argued that the Department illegally changed its interpretation of the PSLF regulation by adopting three new standards for assessing whether non-501(c)(3) not-for-profit organizations qualify as public service organizations under the PSLF Program. *See generally* ECF No. 17. According to Plaintiffs, the Department determined that loan payments made by Rudert while employed at VVA were ineligible for the PSLF Program based on its application of a new interpretation of its regulation—described as the Outright Provision of Services standard—under which the Department required qualifying organizations to provide disability-related services directly to the recipient or "outright." *Id.* at 32–33. Similarly, Plaintiffs alleged that payments made by the other three individual borrowers were wrongfully denied by operation of two other newly-applied interpretations: the Primary Purpose and School-Like Setting standards. *Id.* at 31–32. As relevant here, Plaintiffs alleged that, under the Primary Purpose standard, the Department required that a qualifying organization provide an otherwise qualifying public service as part of that organization's primary purpose.

On February 22, 2019, the Court entered summary judgment on behalf of Defendants as to Rudert's claims. ECF No. 48. In its accompanying Memorandum Opinion, the Court concluded Plaintiffs had not established that the Outright Provision of Services standard reflected

a new interpretation; rather, the record showed that the Department engaged in "a straightforward application of the regulation" when it issued the denial letter to Rudert.  Mem. Op. at 39.  In contrast, the Court concluded that the other two standards reflected new interpretations by the Department that it adopted in violation of certain APA requirements.  On that basis, it entered summary judgment on behalf of the other three individual borrowers and vacated those standards.  *See id.* at 39–44, 53.

In the instant motion, Rudert seeks to alter or amend the Court's judgment based on new evidence purportedly showing that the Department relied upon the now-vacated Primary Purpose standard when it determined that the payments he made while employed at VVA did not qualify for the PSLF Program.  *See* ECF No. 50 ("Pl.'s Mot.").

## II.     Legal Standard

"Federal Rule of Civil Procedure 59(e) provides a limited exception to the rule that judgments are to remain final."  *Leidos, Inc. v. Hellenic Republic*, 881 F.3d 213, 217 (D.C. Cir. 2018).  Rule 59(e) motions to alter or amend a judgment are "discretionary and need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996).  "Rule 59(e) motions on the basis of new evidence are restricted to evidence that is 'newly discovered or previously unavailable despite the exercise of due diligence.'"  *Johnson v. District of Columbia*, 266 F. Supp. 3d 206, 211 (D.D.C. 2017) (quoting *Niedermeier*, 153 F. Supp. 2d at 29).  And a party moving for relief under Rule 59(e) has not met its burden if the new evidence "would not have changed [the Court's] outcome."  *Roane v. Gonzales*, 832 F. Supp. 2d 61, 65 (D.D.C. 2011); *see Odhiambo v. Republic of Kenya*, 947 F. Supp. 2d 30, 36 (D.D.C. 2013) (denying Rule 59(e) motion because the new proffered evidence would not have altered the court's decision).

4

Rule 59(e) motions "are disfavored and relief from judgment is granted only when the moving party establishes extraordinary circumstances." *Niedermeier v. Office of Baucus*, 153 F. Supp. 2d 23, 28 (D.D.C. 2001). "The strictness with which such motions are viewed is justified by the need to protect both the integrity of the adversarial process in which parties are expected to bring all arguments before the court, and the ability of the parties and others to rely on the finality of judgments." *U.S. Commodity Futures Trading Comm'n v. McGraw-Hill Cos.*, 403 F. Supp. 2d 34, 36 (D.D.C. 2005).

**III.    Analysis**

Rudert argues that the Court should alter or amend its judgment based on a March 2018 denial letter sent to another borrower, Amanda Radke, who was employed at VVA around the same time.[1] ECF No. 50-3. He contends that this "critical piece of evidence . . . would have been outcome determinative for [his claims] had it been discovered prior to the Court's entry of judgment." Pl.'s Mot. at 6. In the letter to Radke, the Department reversed its prior position and determined that loan payments made by her while employed at VVA did not qualify for the PSLF Program because the VVA "d[id] not provide a qualifying service for the PSLF program as its primary purpose." *Id.* The letter also noted that the Department "could find no evidence that [VVA] provide[d] services directly to individuals with disabilities as part of its primary purpose." *Id.* Rudert points to those statements as evidence that the Department, contrary to its representations, relied on the Primary Purpose standard in determining that VVA was not a

---

[1] The Court assumes that Radke's denial letter is new evidence that was "previously unavailable [to Rudert] despite the exercise of due diligence." *Johnson*, 266 F. Supp. 3d at 211. Rudert sets forth an extensive account of his efforts to obtain records related to the Department's denial of his ECF submission, Pl.'s Mot. at 8–15, and Defendants make no effort to contest his assertion that the letter was previously unavailable to him despite his exercise of due diligence; *see* ECF No. 53 ("Defs.' Opp'n"). Rather, Defendants argue, primarily, that the Radke denial letter "does not contradict the basis for the Court's decision" regarding Rudert's claims and thus does not require that the Court disturb its judgment. *Id.* at 9.

qualifying public service organization. Pl.'s Mot. at 5–6. And because the Department reaches PSLF-eligibility determinations based on the nature of a borrower's employer, rather than each borrower's specific duties while employed there, Rudert argues that the Department must have relied on that now-vacated standard when it denied the eligibility of Rudert's payments, as well. *See* ECF No. 54 ("Pl.'s Reply") at 5–6. For this reason, Rudert contends, the Court should treat his claims as it did the other individual borrowers and alter its prior judgment on Count I in favor of Defendants.[2]

The problem for Rudert, however, is that this new evidence would not have changed the Court's determination that Defendants were entitled to summary judgment on his claims, for three reasons.

First, Radke's letter can say little, on its own, about whether the Primary Purpose standard played a role in the Department's handling of Rudert's case two years earlier. It is true that in evaluating the parties' motions for summary judgment, the Court considered extra-record evidence that shed light on whether the Department, contrary to its representations, had always applied the standards at issue, or had adopted them in a way that violated the APA. But the language contained in one denial letter, even to a borrower employed by the same organization, is scant evidence from which the Court can divine the Department's reasoning in another case two years earlier.

Second, Radke's letter is not even clear about how the Department reached its determination in her case. Some of the language in it is consistent with what the Department told Rudert. For example, Radke was effectively told that VVA "d[id] not provide a qualifying

---

[2] Because granting judgment in Rudert's favor on Count I would dispose of his remaining claims, he also seeks that the Court amend its judgment in favor of Defendants on Counts II–V and, instead, withhold judgment on those Counts. Pl.'s Mot. at 18.

service for the PSLF program" because it did not "provide[] services directly to individuals with disabilities . . . ." *See* ECF 50-3. The references to the Primary Purpose standard in the letter to Radke, awkwardly tacked onto two sentences, could well reflect the Department's decision to identify that standard in all denial letters following its incorporation of the standard into public guidance to borrowers. *See* Pl.'s Mot. at 7; Mem. Op. at 34. In short, the letter hardly elucidates precisely how the Department reached its decision in her case.

Third, and most importantly, even assuming that Radke's letter *could*, in theory, say something about Rudert's case, and the Department *did* determine that Radke's payments did not qualify for the reasons Rudert alleges, on this entire record, Radke's letter would still not show that Rudert's eligibility determination turned on the application of the Primary Purpose standard. To begin with, Defendants have never indicated that the Primary Purpose standard had anything to do with Rudert's case. The Department informed Rudert that it had reversed its determination because VVA "d[id] not provide a qualifying service."[3] AR 282; *see* Mem. Op. at 38–39. More specifically, as it explained in a subsequent letter, VVA did not provide a "public service for individuals with disabilities" because it did not "provide the services *outright*." AR 331 (emphasis added). Therefore, unlike the claims of the other three individual Plaintiffs, the relief that Rudert seeks would require the Court to conclude that the Department denied his eligibility

---

[3] Although Rudert correctly points out that Burkhart's denial letter *also* stated that his employer, the ABA, "d[id] not provide a qualifying service," ECF No. 54 at 9 n.4, the Department informed the ABA that its decision was based on its application of the Primary Purpose standard, AR 193. In contrast, the Department explained— and maintained throughout this litigation— that Rudert's case turned on its determination that VVA did not provide a qualifying public service because it did not provide *direct* public services for individuals with disabilities. *See* AR 331; ECF No. 22 at 28.

based on a standard entirely different than the one it purported to apply.[4] Moreover, there is no logical reason why the Primary Purpose standard need have played a role in Rudert's case. In fact, if the Department determined that the VVA did not provide any qualifying services outright, it need not have considered whether those (non-existent) services were provided "as part of its primary purpose." ECF No. 50-3. And that is precisely how the Department explains these standards interact. Defs.' Opp'n at 9–11.

Rudert also argues that the Court should grant him relief from its judgment because it is "manifestly unjust" in light of the newly available evidence.[5] Pl.'s Mot. at 15 (quoting *Good Luck Nursing Home, Inc. v. Harris*, 636 F.2d 572, 577 (D.C. Cir. 1980)). The D.C. Circuit has ordered such relief "[w]hen a party timely presents a previously undisclosed fact so central to the litigation that it shows the initial judgment to have been manifestly unjust." *Good Luck Nursing Home*, 636 F.2d at 577. However, for the reasons explained above, the new evidence submitted by Rudert does not meet this standard.[6] Moreover, because the Department "is not currently applying the [P]rimary [P]urpose standard pursuant to the Court's order," Defendants note that

---

[4] Indeed, because Defendants conceded that the challenged standards formed the basis of the Department's denial of each individual Plaintiff's eligibility, the Court never had to determine whether the Department, in fact, applied those standards to them. Mem. Op. at 31–32. Rather, the central inquiry in the Court's analysis was *when* and *by what process* the Department adopted the standards.

[5] Although Rudert raises this argument under Rule 60(b), courts in this Circuit also consider the "manifestly unjust" standard under Rule 59(e). *See Leidos*, 881 F.3d at 216. Under either rule, the Court's analysis in this case is the same.

[6] The parties also dispute whether Rudert's argument that the Department applied the Primary Purpose standard to him constitutes a "new legal theory that was available prior to judgment" such that he would be prohibited from raising it through a Rule 59(e) motion. Defs.' Opp'n at 14–16; Pl.'s Reply at 13–14; *see Patton Boggs LLP v. Chevron Corp.*, 683 F.3d 397, 403 (D.C. Cir. 2012) ("Rule 59(e) is not a vehicle to present a new legal theory that was available prior to judgment."). Because the Court will deny Rudert's motion for the reasons explained above, it need not address these arguments.

8

Rudert may seek reconsideration of his eligibility status by resubmitting an ECF Form for the payments at issue and showing that "VVA . . . directly provide[d] services to individuals with disabilities." Defs.' Opp'n at 13–14.  Given the Court's conclusion that the new evidence submitted would not change its decision, and the availability of this alterative avenue for relief, Rudert fails to establish that that Court's prior judgment is "manifestly unjust."

## IV.     Conclusion

For the reasons set forth above, the Court will, in a separate Order, deny Rudert's Motion to Alter or Amend the Judgment (ECF No. 50).

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: May 22, 2019